No. Added
1 to a.

6
4/7/01

# ORIGINAL

# In the United States District Court for the Middle District of Pennsylvania

GREENE/GUILFORD ENVIRONMENTAL
ASSOCIATION, a non-profit corporation incorporated
under the laws of the Commonwealth of Pennsylvania,
CITIZENS FOR PLANNED COMMUNITY GROWTH,
an unincorporated association organized under the laws of
the Commonwealth of Pennsylvania, PAUL B. AMBROSE,
JOHN G. ENDERS, CHARLES F. RAHAUSER,
BETSY RAHAUSER, DOUGLAS A. WARNOCK, U.X
VAGNERINI, THOMAS W. BUNDY, STEPHEN P.
BUCHER, ROGER J. ROBERTSON, JAMES A.
STRITE, JR., DAVID A. GUTHRIE

:
:
:
:
:
:
:
:
:
:
:
:
:

Civ. No. 1:CV-01-0910

(Judge Rambo)

v.

KEN WYKLE, Administrator, Federal Highway
Administration, ROBERT GATZ, Federal
Highway Administration.

:
:
:
:

FILED
HARRISBURG, PA

JUN 0 6 2001

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

## AMENDED COMPLAINT

### Introductory Statement

This Complaint is being filed to remedy numerous violations of state and federal law committed by the Defendant Federal Highway Administration ("FHWA") during that agency's development and approval of the project known as "Exit 7" - an Interstate 81 exit interchange proposed for construction near Chambersburg, Pennsylvania.

-1-

# I. PARTIES

1. Defendant Ken Wykle [hereinafter "Wykle"] is the Administrator of the Federal Highway Administration [hereinafter "FHWA"] and is responsible for its compliance with the requirements of the Federal-Aid Highway Act, 23 U.S.C. §101 et seq., the National Environmental Policy Act, 42 U.S.C. §4321 et seq., and §§106 and 110 of the National Historic Preservation Act, 16 U.S.C. §470, in connection with highway projects. References to Defendant Wykle include his predecessors, successors, and subordinates. Wykle is being sued in his official capacity as Administrator of the FHWA.

2. Defendant Robert Gatz [hereinafter "Gatz"] exercises authority to approve Final Environmental Impact Statements regarding highway projects on behalf of the Federal Highway Administration. References to Gatz include his predecessors, successors, and subordinates. Gatz is being sued in his official capacity with the Federal Highway Administration.

3. Plaintiff Greene/Guilford Environmental Association is a non-profit corporation incorporated under the laws of the Commonwealth of Pennsylvania. The mailing address for the Association is 1465 Walker Road, Chambersburg, Pennsylvania 17201. Many of the members of the Plaintiff organization reside in Greene Township, Franklin County, Pennsylvania.

4. Plaintiff Citizens for Planned Community Growth is an unincorporated association organized under the laws of the Commonwealth of Pennsylvania. The purpose of the organization is to promote managed and planned growth which has the support of the communities impacted by that development. The mailing address for the Association is 1240 Wilson Avenue, Chambersburg, Pennsylvania 17201.

5. Plaintiff Paul B. Ambrose serves as an elected Township Supervisor of Greene Township, a Franklin County municipality which has opposed the construction of the exit interchange for the past thirteen years. Plaintiff Ambrose resides at 1872 Philadelphia Avenue, Chambersburg, Pennsylvania 17201. He is suing in his individual capacity.

6. Plaintiff John G. Enders resides at 3393 Braemar Drive, Chambersburg, Pennsylvania 17201. Plaintiff Ender's residence is in Greene Township, Franklin County.

7. Plaintiffs Charles F. and Betsy Rahauser reside at 220 Norland Avenue, Chambersburg, Pennsylvania 17201.

8. Plaintiff Douglas A. Warnock resides at 1240 Wilson Avenue, Chambersburg, Pennsylvania 17201.

9. Plaintiff U.X. Vagnerini resides at 65 Norland Avenue, Chambersburg, Pennsylvania 17201.

10. Plaintiff Stephen P. Bucher resides at 1465 Walker Road, Chambersburg, Pennsylvania 17201 within Greene Township, Franklin County, Pennsylvania.

11. Plaintiff Thomas W. Bundy resides at 2497 Grand Point Road, Chambersburg, Pennsylvania 17201 within Greene Township, Franklin County, Pennsylvania.

12. Plaintiff Roger J. Robertson resides at 1668 Walker Road, Chambersburg, Pennsylvania 17201.

13. Plaintiff James A. Strite, Jr. resides at 1455 Ragged Edge Road, Chambersburg, Pennsylvania 17201.

14. Plaintiff David A. Guthrie resides at 1626 Walker Road, Chambersburg, Pennsylvania 17201.

15. All of the Plaintiffs have standing to bring this action because they have participated in the administrative proceedings for this project and because they will be adversely impacted by the construction of the proposed Interchange at the Walker Road location for the exit - which is the Defendant's "Selected" location for the interchange. In addition, each Plaintiff has standing to bring this action specifically because:

(1) Each Plaintiff submitted either written or oral testimony - or both - to the highway agencies on the Draft Environmental Impact Statement and other documents which have been prepared and approved by the Defendants. Almost all of the Plaintiffs submitted comments to the appropriate agencies at every opportunity to submit comments. Several individual members, Directors, and/or Officers of each organizational-Plaintiff have submitted comments on the project.

(2) Each Plaintiff physically resides in or near the Project Study area used to study the environmental impacts resulting from the project. Several individual members, Directors, and Officers of each of the organizational-Plaintiffs also reside in or near the Project Study area.

(3) All of the Plaintiffs, and almost all of the members of the organizational-Plaintiffs will be adversely impacted by the construction of an Interchange at the Walker Road location. That adverse impact includes the destruction of agricultural land in active production, the destruction of two Agricultural Security Areas (ASA's), the creation of increased traffic congestion on local roads traveled by the Plaintiffs, aesthetic damages, and other injuries both economic and non-economic.

(4) Several plaintiffs have been recognized as "consulting parties" under Section 106 of the National Historic Preservation Act (NHPA) and have submitted comments on the adverse impact to historic resources which will be caused by the construction of the Interchange at the Walker Road location.

-4-

16. Each individual and organizational Plaintiff in this action qualifies as a "party" under the "net worth" provisions of the Equal Access to Justice Act, 28 U.S.C.A. §2412.

## II. JURISDICTION OF THIS COURT

17. The jurisdiction of this court is conferred by and invoked pursuant to federal question jurisdiction under 28 U.S.C. §1331 as the causes of action contained herein arise under federal statutes.

18. The jurisdiction of this court is also conferred by and invoked pursuant to the Administrative Procedure Act, 5 U.S.C. §702 and §704.

19. The jurisdiction of this court is also conferred by and invoked pursuant to 28 U.S.C. §1346 by virtue of the naming of an agency of the United States Government as a defendant to this action.

20. Venue is properly laid in the United States District Court for the Middle District of Pennsylvania in that persons and actions which are the subject matter of the suit, reside and have occurred herein, respectively.

21. All references in this complaint to violations of the National Environmental Policy Act ("NEPA") should be deemed to be references to violations of both the Act itself (42 U.S.C.A. §4321 et seq.) and also of the Council on Environmental Quality (CEQ) regulations which implement the provisions of the Act (Title 40, Chapter 5 of the Code of Federal Regulations). In addition, all of the individual Plaintiff-Verifications and accompanying Exhibits attached to the original Complaint are hereby incorporated into this Amended Complaint.

-5-

### III.  STATEMENT OF THE CLAIM

#### A.  Background

22. On April 2, 1987, the United States Congress adopted the Surface Transportation and Uniform Relocation Assistance Act (STURAA). As part of this legislation, Congress appropriated $5.2 million for a "demonstration project", which would "demonstrate[] how construction of an interchange on a north-south interstate route [would] provide access to Chambersburg, Pennsylvania, and relieve traffic congestion on an existing interchange on such interstate route." Pub. L. No. 100-17, §149(a)(74), 101 Stat. 132, 192 (April 2, 1987). Funding for such a "demonstration project" was secured through the efforts of Representative Bud Shuster for his home Congressional District.

23. In May of 1994, a Draft Environmental Impact Statement ("DEIS") was approved by the Defendants. That document selected an Interchange at Walker Road as the "Preferred Alternative."

24. In May of 1995, a Final Environmental Impact Statement (FEIS) was approved by the Defendants. That document selected an Interchange at Walker Road as the "Selected Alternative."

25. In November, 1995, U.S. Representative Bud Shuster inserted language into the National Highway System Designation Act of 1995 which authorized the federal monies apportioned for the demonstration project to be spent on any other alternative highway projects in five counties located within his Congressional District. That legislation provided in relevant part that "the Secretary shall carry out . . . projects in the counties of Bedford, Blair, Centre, Franklin, and Huntingdon, Pennsylvania" using the funds previously earmarked for the proposed interchange project. Pub. L. No. 100-17, §149(a)(74), 101 Stat. 132, 192 (April 2, 1987), as amended by Pub. L. No. 104-59, §340(c), 109 Stat. 568, 607 (Nov. 28, 1995).

26. On June 4, 1998, PennDOT and the FHWA unveiled a completely revised design for the construction of the proposed interchange at a new location. The new design contemplates moving the proposed exit interchange 1,400 feet south of Walker Road by demolishing the existing Walker Road overpass, building a new overpass, reconstructing and redesigning the local road network feeding the proposed Interchange, and feeding traffic directly onto Township roads unable to accommodate interchange traffic.

27. On March 24th and 25th, 1999, the Record of Decision ("ROD") for the Interstate 81 Interchange Project was signed by David Lawton of the Eastern Resource Center of FHWA and Ronald W. Carmichael, Division Administrator, FHWA, Pennsylvania Division.

28. On May 10, a Chambersburg area farm couple sued the Pennsylvania Department of Transportation ("PennDOT") in Commonwealth Court to force the agency to comply with State agricultural lands protection laws.

29. On October 19, 2000, the Pennsylvania Supreme Court affirmed the Commonwealth Court's ruling that PennDOT was required to seek the approval of a special agricultural lands condemnation approval Board prior to taking land for the construction of the interchange.

30. From May 9 to May 11, 2001, the State's Agricultural Lands Condemnation Approval Board (ALCAB) convened a hearing to consider the proposed condemnation.

31. A decision by the Board to deny the proposed condemnation would have resulted in a cancellation of the project at the proposed location.

# COUNT ONE

### Defendants Violated the National Environmental Policy Act (NEPA) By Blatantly Pre-Determining the Location of the Proposed Highway Interchange Prior to the Completion of the Environmental Studies

32. The Plaintiffs hereby reallege and incorporate by reference the background facts and allegations contained in the body of this Complaint above as if fully set forth herein.

33. All claims set forth within this Count should be deemed to include all subsidiary claims which can reasonably be inferred from the allegations contained herein.

34. The Defendant Federal Highway Administration and the Pennsylvania Department of Transportation violated the National Environmental Policy Act ("NEPA") by predetermining the location of the exit interchange prior to the completion of any environmental studies for the project.

35. The Defendant Federal Highway Administration violated NEPA by issuing a Record of Decision ("ROD") for the project after becoming aware of a series of correspondences and meetings in which PennDOT personnel predetermined the location of the proposed interchange prior to the completion of any environmental studies.

36. The Defendant Federal Highway Administration violated NEPA by releasing federal monies for prefinal and final design activities for the interchange prior to the completion of the Final Environmental Impact Statement.

37. The Defendant Federal Highway Administration's approval of the Draft and Final Environmental Impact Statements was arbitrary and capricious because the agencies predetermined the location of the exit interchange prior to the completion of environmental studies examining alternatives to the project.

38. Statements made and actions taken by then-Pennsylvania Secretary of Transportation Yerusalim predetermining the location of the Exit Interchange - prior to the completion of the environmental and historic resource studies for the project - establishes a *prima facie* case of classic predetermination which violated the letter and spirit of NEPA.

39. Yerusalim's predetermination of the location of the interchange was communicated to high-ranking PennDOT officials holding a variety of positions within the agency who exercised direct managerial control over the planning and design process for the proposed interchange.

40. The Defendant Federal Highway Administration violated NEPA by issuing a Record of Decision ("ROD") for the exit interchange project after the project's location had been predetermined.

41. The Defendant Federal Highway Administration acted in an arbitrary and capricious manner in issuing an ROD for the exit interchange project after the project's location had been predetermined.

42. The Defendant Federal Highway Administration violated 40 CFR §§1500.1, 1500.2, 1502.2, 1502.5, and 1506.1 by predetermining the location of the project prior to the completion of environmental studies for the project.

## COUNT TWO

### Defendants Violated Their Own Regulations and Ignored Their Own Contrived Project Need By Completely Ignoring the Conflict Between Construction of the Interchange and Greene Township's Comprehensive Land-Use Plan

43. The Plaintiffs hereby reallege and incorporate by reference the background facts and allegations contained in the body of the Complaint above as if fully set forth herein.

44. All claims set forth within this Count should be deemed to include all subsidiary claims which can reasonably be inferred from the allegations contained herein.

45. The proposed exit interchange bridge and almost all parts of the proposed interchange ramps would be physically located within Greene Township, Franklin County.

46. Greene Township's Comprehensive Land Use Plan explicitly opposes the construction of the Exit 7 Interchange at the Walker Road location as part of its ongoing planning process which seeks to preserve agricultural lands and prevent sprawl within the Township.

47. Greene Township has opposed the construction of the interchange at the proposed location for the past thirteen (13) years, spending over $800,000 to protect its agricultural and historic resources.

48. Defendant FHWA violated the agency's own Policy Statements by overriding Greene Township's Comprehensive Land Use Plan and by issuing an ROD for the construction of the interchange in Greene Township.

49. Defendant FHWA and the Pennsylvania Department of Transportation violated PennDOT's *Transportation Project Development Process: Environmental Impact Statement Handbook* by approving the construction of the interchange inconsistent with "existing and planned community land use that could interact with transportation facilities."

50. The ROD issued by the Defendants for the proposed exit interchange states that one of the primary "Project Needs" for the proposed exit interchange is to "adhere to comprehensive plans of area municipalities."

51. The proposed interchange does not adhere to the Comprehensive Land Use Plan of Greene Township and thus fails to meet Project Need.

52. Throughout its studies, and most recently in its testimony in front of the Agricultural Lands Condemnation Approval Board (ALCAB), PennDOT maintains that the proposed interchange fulfills the Project Need.

53. Defendant FHWA's approval of PennDOT's Point of Access Studies violates the legal requirement that new points of access be consistent with local Comprehensive Land Use Plans. 63 Fed. Reg. 7045 (February 11, 1998).

54. The failure to adhere to Greene Township's Comprehensive Plan eliminates one of the Defendants' primary stated Needs for the project, and thus alters the analysis of alternatives necessary for the environmental studies prepared for the project.

55. PennDOT's failure to explain the inconsistency between local land use plans and the needs for the project; and the Defendant FHWA's approval of the resulting Draft and Final Environmental Impact Statements, violate the National Environmental Policy Act and its implementing regulations at 40 CFR §1502.16 and §1506.2.

## Count Three

### Defendants Violated the National Environmental Policy Act (NEPA) By Failing to Prepare a Supplemental Environmental Impact Statement Containing New Environmental and Farmland Impact Analysis Following a Ruling By the Pennsylvania Supreme Court That Such Impacts Were Greater Than Those Examined in the Final Environmental Impact Statement (EIS)

56. The Plaintiffs hereby reallege and incorporate by reference the background facts and allegations contained in the body of this Complaint above as if fully set forth herein.

57. All claims set forth within this Count should be deemed to include all subsidiary claims which can reasonably be inferred from the allegations contained herein.

58. The Draft Environmental Impact Statement approved by the Defendants in 1994 admitted that approval from the Agricultural Lands Condemnation Approval Board (ALCAB) would be necessary for the condemnation of farmland for the proposed interchange.

59. The Point of Access Report approved by the Defendants in January of 1995 admitted that PennDOT was legally required to obtain approval from the ALCAB prior to condemning the farmland necessary for the construction of the proposed interchange.

60. The Final Environmental Impact Statement prepared and approved by the Defendants abruptly reversed those earlier planning decisions by the Defendants that ALCAB approval was necessary for the condemnation of farmland for the proposed Interchange project. The FEIS claimed that

> Although productive agricultural farmland and Agricultural Security Areas will be involved with any of the Build Alternatives, a hearing with the Agricultural Lands Condemnation Approval Board (ALCAB) will not be necessary. Project improvements constrained by the position and location of existing highways (e.g. interchanges of existing facilities) are a stated exception to ALCAB jurisdiction.

61. On August 30, 1999, in a suit filed by area farmers, the Pennsylvania Commonwealth Court issued a permanent injunction against PennDOT, prohibiting the condemnation of a farm couple's farmland prior to the approval of the proposed condemnation by the ALCAB.

62. On October 19, 2000, the Pennsylvania Supreme Court - in a *per curiam* opinion - affirmed the ruling of the Commonwealth Court and permanently prohibited PennDOT from condemning the Whites' farmland prior to submission of the proposed condemnation to the ALCAB.

63. Those rulings of the Pennsylvania Commonwealth and Supreme Courts held that the couple's farmland qualified as high quality farmland protected by State law, subject to the requirement of special condemnation approval by the special Board.

64. Other alternatives to the Selected Alternative exist which would not result in the condemnation of productive farmland within protected Agricultural Security Areas. Those alternatives were arbitrarily dismissed by PennDOT and the Defendant FHWA based on a number of factors, including the impact of those alternatives on farmland in the region.

65. The standard used by ALCAB to approve the taking of farmland is not currently reflected in the analysis of alternatives within the environmental studies completed for the proposed Interchange. The heightened standard imposed by ALCAB review forces the highway agencies to show that no other "reasonable and prudent" alternative exists to the condemnation of farmland.

66. Reviewers of the environmental studies, and the Defendants themselves, were unable to fully evaluate the alternatives to the construction of the Preferred Interchange because PennDOT's assumptions concerning ALCAB review were wholly without any legal foundation, and their conclusions concerning the inapplicability of the heightened legal standard for condemnation were overturned by the Pennsylvania Supreme Court.

67. A Supplemental Environmental Impact Statement (SEIS) was never prepared by PennDOT and submitted to the Defendant FHWA for approval to update the agricultural studies completed for the 1995 Final Environmental Impact Statement.

68. The Defendants acted in an arbitrary and capricious manner by failing to require the preparation of a Supplemental Environmental Impact Statement after the rulings by the Pennsylvania Commonwealth and Supreme Courts that impacts to agricultural land were greater than those analyzed in the environmental impact studies.

69. The Defendants violated 40 CFR §1502.14 and 40 CFR §1500.2 by failing to integrate the heightened legal standard for condemnation of farmland into the environmental studies prepared for the proposed interchange.

-13-

70. In 2000, PennDOT admitted that the environmental resource studies, the Farmlands Assessment Studies, and technical information needed to be updated to reflect "changes that have occurred in the area encompassing Greene Township and Guilford Township since previous studies conducted in 1995."

## COUNT FOUR

Defendants Violated the National Environmental Policy Act (NEPA)
and the National Historic Preservation Act (NHPA) by Selecting
a Stunted Study Area for Historic Resources, Thus Arbitrarily Ignoring the Impact
of the Interchange on Area Historic Buildings and Resources

71. The Plaintiffs hereby reallege and incorporate by reference the background facts and allegations contained in the body of this Complaint above as if fully set forth herein.

72. All claims set forth within this Count should be deemed to include all subsidiary claims which can reasonably be inferred from the allegations contained herein.

73. 49 U.S.C. §303 and 24 U.S.C. §138 prohibit the Defendants from approving any highway project which requires the use of any land from an historic site of national, state, or local significance unless (1) there is no feasible and prudent alternative to the use of such land, and (2) the project includes all possible planning to minimize harm to the historic site resulting from such use.

74. 71 P.S. §512(15) proscribes PennDOT from using historic lands for proposed highway projects without making the requisite findings as required by federal law.

75. 36 C.F.R. §800.4(b) requires that the Defendants "make a reasonable and good faith effort to identify historic properties that may be affected by the undertaking."

76. 36 C.F.R. §800.2(b) requires that the highway agencies delineate an "area of potential effects" which encompasses "the geographic area or areas within which an undertaking *may* cause changes in the character or use of historic properties." (emphasis added).

77. The Defendants arbitrarily constricted the "area of potential effects" to eliminate their statutory responsibility to review all adverse impacts to historic properties. The "area of potential effects" selected by PennDOT only includes historic areas and buildings within one hundred yards of the proposed Interchange.

78. The "area of potential effects" was delineated by PennDOT as a geographical fragment of the "Project Study Area" chosen by PennDOT for traffic and environmental studies. The selection of that fragment for historic resource review enabled the agency to arbitrarily avoid consideration of certain historic resources.

79. Historic properties located on Franklin Farm Lane (a feeder and collector road for the proposed interchange) included within the "Project Study Area" were arbitrarily excluded from review by the arbitrary delineation of the "area of potential effects."

80. The Patrick Gass House, located on Franklin Farm Lane, is less than one mile away from the proposed exit interchange location and is listed on the National Register of Historic Places. The historic building will be impacted by traffic, development, and other direct and indirect impacts produced as a result of the construction of an exit interchange at Walker Road.

81. The Franklin County Poor House, located on Franklin Farm Lane, is less than one mile away from the proposed interchange location and has been deemed to be eligible for the National Register of Historic Places. The historic building will be impacted by traffic, development, and other direct and indirect impacts produced as a result of the construction of an Interchange at Walker Road.

-15-

82. Both the Gass House and the Franklin County Poor House are located on Franklin Farm Lane - a two lane roadway which intersects with both U.S. Route 30 and Walker Road at unsignalized intersections. Lane widths along the road vary between ten and eleven feet, with shoulder widths of only one to two feet, and a posted speed limit of 35 miles per hour.

83. The delineation of the "area of potential effects" arbitrarily eliminated the Defendants' responsibility to examine adverse impacts to the Franklin County Poor House and the Patrick Gass House.

84. Traffic Studies prepared by the Pennsylvania Department of Transportation and by Greene Township reveal that construction of the interchange will result in substantially greater traffic volumes on Franklin Farm Lane.

85. On May 10, 2001, in a hearing conducted by the Agricultural Lands Condemnation Approval Board, PennDOT's Cultural Resources expert testified under oath that the highway agencies' environmental planning documents never considered the impact of the interchange on either the Poor House or the Gass House.

86. PennDOT's elimination of its consideration of impacts on the Gass House and the Franklin County Poor House is a violation of the National Historic Preservation Act, the National Environmental Policy Act, and was arbitrary and capricious. The Defendant FHWA's approval of PennDOT's failure to consider those impacts is arbitrary and capricious.

87. The construction of the proposed Interchange at the Walker Road location will result in adverse impacts to a number of historic resources. Adverse impacts will include, but not be limited to, damage to the limestone and mortar construction resulting from traffic vibrations, noise, and exhaust fumes. Those adverse impacts will also negatively impact a Trout Nursery located on Franklin Farm Lane.

-16-

88. The highway agencies were alerted to the presence of these historic properties as early as June 4, 1990 by Franklin County's official Historical Society. The Defendant never replied to communications sent by this organization.

89. In communications sent at various times in 1994, 1995, and 1998, local historic preservation organizations alerted the highway agencies to the existence of these properties. The Defendant never replied to these communications.

90. PennDOT's arbitrary selection of the "area of potential effects" violates PennDOT's own internal requirements as set forth in a guidance document entitled "Checklist for Memorandums of Agreement for Adverse Effects and Criteria of Effects Reports for Adverse Effects" dated June 15, 1998 (Strike-Off Letter 440-98-18).

91. The Defendants violated the National Environmental Policy Act and the National Historic Preservation Act by failing to ensure that impacts to historic resources in the project study area were reviewed and analyzed.

92. The Defendants acted in an arbitrary and capricious manner by issuing the Record of Decision (ROD) for the project in the absence of any studies concerning impacts to the historic resources located along Franklin Farm Lane.

93. The Defendants acted in an arbitrary and capricious manner by approving the designation of the "area of potential effects", arbitrarily drawn by PennDOT to relieve the agency of its obligation to study impacts to historic resources in the project study area.

# COUNT FIVE

**Defendants Violated the National Environmental Policy Act (NEPA) By Refusing
to Examine the Impact of the Interchange on Local Roadways - Thus Illegally
Segmenting the Complete Project**

94. The Plaintiffs hereby reallege and incorporate by reference the background facts and allegations contained in the body of this Complaint above as if fully set forth here.

95. All claims set forth within this Count should be deemed to include all subsidiary claims which can reasonably be inferred from the allegations contained herein.

96. In an "Early Coordination Form" regarding the project, PennDOT acknowledged that an interchange at Walker Road would require the major reconstruction of local roads - Mower Road to Route 30, the realignment of Kohler Road, and the reconstruction of portions of Kohler Road and Grand Point Road.

97. In PennDOT's Preliminary Alternatives Report dated May 1990, the agency explained that "[t]he proposed interchange ties into local roads. The geometry and pavement structure of these roads are not adequate to handle future traffic volumes."

98. On August 2, 1993, Defendant FHWA admitted that

> [i]t appears from the data presented in the DEIS as well as field views conducted by FHWA Staff, that the roadway network from the interchange locations in Chambersburg will require upgrading and/or construction of new roadways in order to adequately address the demonstration of provided [sic] access to Chambersburg and to meet the Federal Point of Access requirements. Because these improvements are a direct requirement of this project, the commitment to construct these improvements must be obtained and the impacts of such improvements addressed in the DEIS.

99. These concerns were underscored in a letter sent from the Defendant FHWA to PennDOT on September 29, 1994, in which the FHWA stated that

> Decisions and commitments must be made regarding which roads will be improved and the financial responsibility for the work. We cannot complete the proposed interchange only to create an intolerable condition on the local connecting roads. The additional environmental impacts, if significant, will require the preparation of a Supplemental Draft Environmental Impact Statement, and/or Draft Section 4(f) Statement.

> The proposed Walker Road interchange causes changes in traffic patterns that require local roadway improvements if the network is to function safely and efficiently. The capacity of the local network must be improved either through the construction of the Norland Avenue extension or significant improvements to existing roads such as Kohler Road, Mower Road, and Ragged Edge Road. Walker Road east and west of I-81 warrants study regardless of the Norland Avenue Extension issue.

> The DEIS for this project was advanced without inclusion of a Draft Section 4(f) Evaluation because of the lack of direct takes from the involved historic properties by the preferred alternative. However, the necessary local road improvements, particularly the Norland Avenue Extension, may produce both Section 106 and Section 4(f) impacts. Therefore, it is prudent to delay further determination of effect actions until the necessary local road impact study has progressed sufficiently to give definition to these impacts.

100. Following the complete redesign and relocation of the proposed exit interchange in mid-1998, the Defendants failed to prepare any traffic studies which studied the resulting impact of the newly redesigned Interchange on local road networks.

101. The newly designed Interchange, with the elimination of the existing Walker Road overpass bridge, would feed traffic directly onto Franklin Farm Lane, instead of feeding traffic onto Walker Road and onto Franklin Farm Lane.

102. The newly designed Interchange creates greater, additional impacts to Franklin Farm Lane from the greater flow of traffic onto that road.

-19-

103. Franklin Farm Lane is not adequately constructed to handle greater traffic flow. As recognized in the Final Environmental Impact Statement, the road is a "two lane roadway, intersecting with both U.S. Route 30 and Walker Road at unsignalized intersections. Lane widths along the alignment vary between ten and eleven feet with shoulders [sic] widths of only one to two feet and a posted speed limit of 35 miles-per-hour."

104. The 1995 and 1998 Traffic Studies completed by PennDOT's consultants used the extension of Norland Avenue from the Borough of Chambersburg to the Interchange location as an integral part of predicting future traffic flows.

105. In the Final Environmental Impact Statement, the Defendants failed to review the Norland Avenue Extension project as a "Major Action Proposed by Government Agencies and Others in the Same Geographic Area." No mention of the Project was made within the document.

106. The Defendants violated their own regulations, and the regulations promulgated under the authority of the National Environmental Policy Act, by failing to review the impacts of the proposed exit interchange on the local road network.

107. The Defendants violated their own regulations, and the regulations promulgated under the authority of the National Environmental Policy Act, by failing to review the impacts of the newly designed exit interchange on the local road network.

108. The Defendants violated the regulations promulgated under the authority of the National Environmental Policy Act by failing to examine the cumulative, connected, direct, and indirect impacts of the proposed exit interchange with the extension of Norland Avenue and necessary upgrades to local road networks.

109. The Defendants violated 23 CFR §771.111(f)(2) by failing to ensure that the interchange would be a "reasonable expenditure even if no additional transportation improvements in the area are made."

110. The Defendant violated its own regulations by failing to examine the impact of new interstate access on local feeder roads. 55 Fed. Reg. 42670, 42672 (October 22, 1990).

# COUNT SIX

### Defendants Violated the National Environmental Policy Act by Refusing to Issue a Supplemental Environmental Impact Statement Following the Complete Re-Design and Relocation of the Proposed Interchange and in Response to Significant Changes to Land-Use Surrounding the Kriner Road Alternative Interchange Location

111. The Plaintiffs hereby reallege and incorporate by reference the background facts and allegations contained in the body of this Complaint above as if fully set forth herein.

112. All claims set forth within this Count should be deemed to include all subsidiary claims which can reasonably be inferred from the allegations contained herein.

113. Under the newly designed Interchange, traffic from the proposed exit interchange would no longer feed onto both Walker Road and Franklin Farm Lane on one side of Interstate 81; but instead, would be directed entirely onto Franklin Farm Lane.

114. Historic resources, including the Gass House and the Franklin County Poor House, which are situated on Franklin Farm Lane, will be adversely impacted by additional traffic volumes. Given PennDOT's failure to examine these resources in its initial historic resources survey, the greater adverse impact of larger amounts of traffic has not been properly examined by the Defendants.

-21-

115. Local road upgrades, acknowledged as necessary by the Defendants from the inception of the project, become even more inevitable given the increased volume of traffic projected to flow directly onto Franklin Farm Lane from the newly designed, proposed exit interchange.

116. Demolition and replacement of the Walker Road overpass bridge adds increased time, resources, costs, and engineering to the proposed Interchange.

117. The newly designed proposed exit interchange will remove land from two Agricultural Security Areas (ASA's) for the construction of the interchange.

118. The newly designed proposed exit interchange may take lands within a protected Rural Historic District for necessary upgrades to local roads to handle exit interchange traffic. Such a 4(f) "taking" of a historic resource required the preparation of a Supplemental Environmental Impact Statement to make a showing that no other "feasible and prudent" alternative existed to the taking.

119. Failure to prepare a Supplemental Environmental Impact Statement due to the complete redesign and relocation of the Interchange prevents a full analysis of different alternative locations for the proposed interchange.

120. Since the approval of the original environmental studies, Guilford Township - one of the Townships within which the interchange would be situated - has adopted zoning regulations which encourage commercial and industrial development near the Kriner Road Alternative - one of the Alternatives briefly examined within the Defendants' environmental studies.

121. The original projections for the growth of the Chambers-5 Business Park at the Kriner Road Alternative have proven to be extremely conservative, and the Business Park's attraction of truck traffic for that growth represents a significant change which must be reflected in updated environmental studies.

122. An intersection near the Kriner Road Alternative currently operates at Level of Service "F" and relief of that congestion would occur with the construction of the interchange project at the Kriner Road Alternative.

123. The agency's failure to prepare a Supplemental Environmental Impact Statement (SEIS) to reflect the changes in the Kriner Road Alternative (Alternatives B and B-1) was a violation of the National Environmental Policy Act and its implementing regulations.

124. The Defendant violated the National Environmental Policy Act by approving PennDOT's preparation of a "Re-Evaluation" in January of 1999, instead of requiring PennDOT to prepare a publicly circulated Supplemental Environmental Impact Statement to address the entirely new design of the interchange and the significant new impacts which would result from the construction of the proposed interchange.

## COUNT SEVEN

### Construction of the Interchange at the Predetermined Location Fails to Meet Congressionally Determined Goals of the Demonstration Project as Originally Funded and Thus, Constitutes a Misuse of Federal Funds

125. The Plaintiffs hereby reallege and incorporate by reference the background facts and allegations contained in the body of this Complaint above as if fully set forth herein.

126. All claims set forth within this Count should be deemed to include all subsidiary claims which can reasonably be inferred from the allegations contained herein.

127. Four years after the initial funding of the project, the Defendants still had not identified a Need for the proposed Interchange project.

128. Throughout the study process, PennDOT and Defendant FHWA attempted to identify a Project Need which could only be satisfied by their Selected alternative, which had been predetermined by PennDOT officials.

129. The Selected Alternative - the construction of an Interchange at the Walker Road location - does not fulfill the Congressionally determined goals contained within the Surface Transportation and Uniform Relocation Assistance Act of 1987 because construction of the Interchange would not relieve traffic congestion on an existing interchange.

130. Under PennDOT's own traffic studies, the projected Level of Service (LOS) at the Route 30 Exit Interchange of Interstate 81 in 2016 - without the construction of the Interchange at the Walker Road location - is at LOS "B" or "C", and therefore, is not a congested interchange.

131. By contrast, the Interstate 81 Interchange with Wayne Avenue (just South of the Route 30 Interchange) will function at unacceptable levels of service in 2016.

132. PennDOT exceeded its authority under the funding legislation by ignoring the specific command to "relieve traffic congestion on an existing interchange" and by re-focusing the project scope to include alleviating future traffic volumes throughout the Chambersburg area.

133. The highway agencies failed to consider the effect of the Township-established weight limit - imposed on secondary roads surrounding the proposed Walker Road interchange - on the ability of the proposed exit interchange to re-direct an appreciable number of vehicles from the Interstate.

134. The highway agencies have admitted that one of the primary Needs for construction of the Interchange at the Walker Road location is to enable economic development to occur in that location.

-24-

135. The Congressional authorization for the funding of the Interchange project did not use "economic development" in the legislation as one of the project Needs.

136. On May 10 and 11, 2001, in a hearing convened by the Agricultural Lands Condemnation Approval Board (ALCAB), PennDOT traffic consultants testified under oath that no congestion existed on the ramps of the interchange located at the intersection of Interstate 81 and Route 30.

137. No traffic congestion exists on the existing Interchange at Route 30 and Interstate 81, and therefore an Interchange constructed at the Walker Road location cannot, on its face, relieve congestion "on an existing Interchange". Thus, the Defendants' proposed exit interchange does not satisfy the minimal requirements imposed by the Congressional authorization.

## COUNT EIGHT

### The Defendants Violated the National Environmental Policy Act (NEPA) by Refusing to Examine the Range of Alternatives Created by the Substantial Amendment of Congressional Authorization of the Project

138. The Plaintiffs hereby reallege and incorporate by reference the background facts and allegations contained in the body of this Complaint above as if fully set forth herein.

139. All claims set forth within this Count should be deemed to include all subsidiary claims which can reasonably be inferred from the allegations contained herein.

140. Congressional amendment of the authorizing funding language for the Interstate Interchange in 1995, which expanded the list of projects to which the federal monies could be applied, created a responsibility on the part of the Defendants to examine a wider range of alternatives for the project.

-25-

141. The Defendants refused to examine a wider scope of alternatives to the proposed Interchange even though the Record of Decision (ROD) for the Interchange project had not yet been signed or issued at the time of the Shuster amendment to the original Congressional authorization.

142. The Defendants violated the National Environmental Policy Act (NEPA) and its supporting regulations by failing to re-examine a full range of reasonable alternatives, which were created by the Congressional amendment to the original funding authorization for the Exit Interchange.

143. The Defendants violated the National Environmental Policy Act (NEPA) and its supporting regulations by failing to prepare either new environmental studies or a Supplemental Environmental Impact Statement (SEIS) in response to this Congressional amendment.

## IV. DEMAND FOR JUDGMENT OF RELIEF

Plaintiffs request that this court grant the following relief:

(a) That this Court declare that the agency decisionmaking, including but not limited to the Record of Decision (ROD), the Final Environmental Impact Statement (EIS), and other approvals, failed to comply with the National Environmental Policy Act (NEPA), the Administrative Policy Act (APA), and the National Historic Preservation Act (NHPA);

(b) That this Court declare that the Plaintiffs will be adversely affected by the Project;

(c) That this Court remand the matter for the preparation of a new Record of Decision (ROD) following the preparation of an objective, properly executed and reviewed Environmental Impact Statement (EIS) which does not pre-determine the location or construction of the Interchange project and which includes the impact of the project on farmland and historical resources within the Project Study Area, as delineated on maps within the environmental impact statements;

(d) That, in the alternative, if this Court deems that the preparation of a Supplemental Environmental Impact Statement (SEIS) would be sufficient to eliminate the defects contained in the existing environmental studies, that the Supplemental Environmental Impact Statement (SEIS) be prepared and reviewed according to the National Environmental Policy Act (NEPA) and the National Historic Preservation Act (NHPA); and that such Supplemental Statement shall objectively review alternative locations for the proposed exit interchange project and include the impact on farmland and historical resources within those alternative project areas as well as the Project Study Area;

(e) That this Court, in its discretion, award reasonable attorney's fees, expert witness fees and court costs to plaintiffs as provided through the Equal Access to Justice Act, 28 U.S.C. §2412 (b), and (d); or 42 U.S.C. §1988; and

(f) Such further and additional relief as this court deems to be appropriate.

I hereby swear and affirm that the facts in the accompanying Amended Complaint are true and correct to the best of my knowledge.

Signed,

Thomas Alan Linzey, Esq.
Community Environmental Legal Defense Fund (CELDF)
2859 Scotland Road
Chambersburg, Pennsylvania 17201
(717) 709-0457
(717) 709-0263 (fax)

## AFFIDAVIT OF SERVICE OF PROCESS

I, Thomas Linzey, hereby swear and affirm that I have served the AMENDED

COMPLAINT on the Parties identified below by the following method:

## FIRST CLASS U.S. MAIL PRE-PAID

The following individuals were served with the AMENDED COMPLAINT:

Ken Wykle and Robert Gatz
Federal Highway Administration (FHWA)
228 Walnut Street
Room 558
Harrisburg, Pennsylvania 17101-1720

Attorney General John Ashcroft
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

Martin Carlson, Esq. (via Hand Delivery)
Acting U.S. Attorney for the Middle District of Pennsylvania
Suite 217, Federal Building
228 Walnut Street
Harrisburg, Pennsylvania 17108-1754

I swear and affirm that service of the AMENDED COMPLAINT was completed this

_____6th_____ Day of June, 2001.

Signed,

Thomas Alan Linzey, Esq.
Community Environmental Legal Defense Fund (CELDF)
2859 Scotland Road
Chambersburg, Pennsylvania 17201