ORIGINAL
2 to cr w/o

# In the United States District Court for the Middle District of Pennsylvania

GREENE/GUILFORD ENVIRONMENTAL  
ASSOCIATION, a non-profit corporation incorporated  
under the laws of the Commonwealth of Pennsylvania,  
CITIZENS FOR PLANNED COMMUNITY GROWTH,  : Civ. No. 1:CV-01-0910  
an unincorporated association organized under the laws of  
the Commonwealth of Pennsylvania, PAUL B. AMBROSE, :   (Judge Rambo)  
JOHN G. ENDERS, CHARLES F. RAHAUSER,  
BETSY RAHAUSER, DOUGLAS A. WARNOCK, U.X  
VAGNERINI, THOMAS W. BUNDY, STEPHEN P.  
BUCHER, ROGER J. ROBERTSON, JAMES A.  
STRITE, JR., DAVID A. GUTHRIE

v.

KEN WYKLE, Administrator, Federal Highway  
Administration, ROBERT GATZ, Federal  
Highway Administration.

FILED  
HARRISBURG  
AUG 3 1 2001  
MARY E. D'ANDREA, CLERK  
Per_____  
     DEPUTY CLERK

## PLAINTIFFS' MOTION FOR LIMITED DISCOVERY IN ADDITION TO THE ADMINISTRATIVE RECORD

AND NOW, come the Plaintiffs in the above captioned case and request that this Court allow the Plaintiffs to proceed to conduct limited discovery in addition to the administrative record being prepared for the S.R. 0081, Section 001 highway project known as "Exit 7" for the following reasons:

-1-

1. Count One of the Plaintiffs' Amended Complaint alleges that the Defendant agency -- and its agent for purposes of the National Environmental Policy Act (NEPA) environmental review requirements -- violated the Act by "predetermining" the location of the interstate interchange prior to complying with applicable federal laws.

2. Plaintiffs possess documents, including letters from then-Secretary of the Pennsylvania Department of Transportation Howard Yerusalim, which prove that the project location was "predetermined" years before the Defendant had complied with the National Environmental Policy Act (NEPA) and other applicable federal laws. Those documents also reveal that high-ranking agency officials holding positions which exercised direct managerial control over the planning and design process for the proposed interchange were directed by the Secretary to "predetermine" the location for the interchange. (*See* Attachment One-A, One-B, and One-C to this Motion).

3. Plaintiffs possess documents which reveal that PennDOT personnel hosted at least one meeting with members of the Chambersburg business community -- years before environmental and historic reviews were prepared for the project -- at which agency personnel actively promoted the siting of the interchange at the predetermined location. (*See* Attachment Two to this Motion).

4. To determine the further and true extent of the predetermination of the location of the highway interchange, and to further supplement the Plaintiff's "predetermination" claim, the Plaintiffs request that this Court authorize the Plaintiffs to engage in limited discovery.

5. Those public officials and individuals subject to document production requests and/or oral depositions would include, but not be limited to (subject to materials and testimony discovered during this process), the following individuals listed in this Motion.

6. Ex-Pennsylvania Secretary of Transportation Howard Yerusalim, to determine the extent of his instructions to Pennsylvania Department of Transportation ("PennDOT") personnel to predetermine the highway interchange following his letters to Representative Bud Shuster in 1992 - two years prior to the completion of the Draft Environmental Impact Statement for the project. Such discovery would seek to determine the extent of Yerusalim's actions in ordering and influencing predetermination decisions made by subordinate PennDOT employees and FHWA personnel. Such discovery would seek documents and materials from Yerusalim's files which pertain to the exit interchange which is the subject of these proceedings.

7. Ex-U.S. Representative Bud Shuster, to determine the extent of his communications with Howard Yerusalim, following his exchange of letters to Yerusalim in 1992 - two years prior to the completion of the Draft Environmental Impact Statement for the project. Such discovery would also seek to determine the extent of ex-U.S. Representative Bud Shuster's communications with other public officials, meetings with other public officials and organizations, and communications and documents in ex-U.S. Representative Bud Shuster's files which may not be part of the Administrative Record in these proceedings. Such discovery would seek an oral deposition of Mr. Shuster and document production requests focused upon his personal and official files relevant this interchange project.

8. Ex-President and ex-Chairman of the Greater Chambersburg Chamber of Commerce Charles E. Nelson, a participant in a meeting on September 21, 1990 with PennDOT Officials from Engineering District 8-0 (the District in which the Exit is proposed for construction), and Ann Eppard, then-U.S. Representative Bud Shuster's Chief of Staff. That meeting was held four years prior to the completion of the Draft Environmental Impact Statement for the project. Such discovery would seek documents and materials from Mr. Nelson's and Ms. Eppard's files. Such discovery would seek information from Mr. Nelson and Ms. Eppard concerning other meetings and communications with PennDOT and FHWA personnel concerning the agencies' predetermination of the interchange project. Such discovery would involve document production requests and oral depositions of both Mr. Nelson and Ms. Eppard.

9. Then-Executive Director of the Greater Chambersburg Chamber of Commerce David G. Sciamanna, who, upon information and belief, was present at the meeting of September 21, 1990 with PennDOT Officials, Mr. Nelson, and Ms. Eppard. Such discovery would seek documents and materials from Mr. Sciamanna's files which are relevant to the predetermination claim advanced by the Plaintiffs and would seek through an oral deposition information relevant to the other meetings and communications with PennDOT and FHWA personnel which concern the agencies' predetermination of the location of the proposed exit interchange.

10. Mr. William Moyer, the Deputy Secretary for Highway Administration at PennDOT, who was directed by then-Secretary of Transportation Yerusalim - through circulation of the Yerusalim/Shuster letters in 1992 - to predetermine the location of the interchange. Such discovery would seek documents in Mr. Moyer's official and personal files relevant to the interchange.

11. Mr. Wayne Kober, the Director of the Bureau of Environmental Quality - the Bureau responsible for overseeing compliance with the National Environmental Policy Act requirements for Environmental Impact Statements prepared by PennDOT - who was directed by then-Secretary of Transportation Yerusalim - through circulation of the Yerusalim/Shuster letters in 1992 - to predetermine the location of the interchange. Such discovery would seek documents in Mr. Kober's official and personal files relevant to the interchange.

12. Mr. Barry Hoffman, the District Engineer for the PennDOT region in which the exit is proposed for construction, who was directed by then-Secretary of Transportation Yerusalim - through circulation of the Yerusalim/Shuster letters in 1992 - to predetermine the location of the interchange. Such discovery would seek documents in Mr. Hoffman's official and personal files relevant to the interchange.

13. Mr. James McCarron, the Director of Communications for PennDOT, who was directed by then-Secretary of Transportation Yerusalim - through circulation of the Yerusalim/Shuster letters in 1992 - to predetermine the location of the interchange. Such discovery would seek documents in Mr. McCarron's official and personal files relevant to the interchange.

14. Mr. Robert Mustin, the Director of Legislative Affairs for PennDOT, who was directed by then-Secretary of Transportation Yerusalim - through circulation of the Yerusalim/Shuster letters in 1992 - to predetermine the location of the interchange. Such discovery would seek documents in Mr. Mustin's official and personal files relevant to the interchange.

15. Mr. Gerald Fritz, the Director of the Center for Program Development and Management, who was directed by then-Secretary of Transportation Yerusalim - through circulation of the Yerusalim/Shuster letters in 1992 - to predetermine the location of the interchange. Such discovery would seek documents in Mr. Fritz's official and personal files relevant to the interchange.

16. Mr. Thomas TenEyck, the Director of the Bureau of Transportation Systems Performance, who was directed by then-Secretary of Transportation Yerusalim - through circulation of the Yerusalim/Shuster letters in 1992 - to predetermine the location of the interchange. Such discovery would seek documents in Mr. TenEyck's official and personal files relevant to the interchange.

17. Mr. Dennis Lebo, the Special Assistant to the Deputy Secretary for Planning, who was directed by then-Secretary of Transportation Yerusalim - through circulation of the Yerusalim/Shuster letters in 1992 - to predetermine the location of the interchange. Such discovery would seek documents in Mr. Lebo's official and personal files relevant to the interchange.

18. Mr. Manuel Marks, the Division Administrator of the Federal Highway Administration, to determine the extent of his involvement in PennDOT's predetermination of the location of the proposed exit interchange. Such discovery would seek additional documents and materials from Mr. Marks' official and personal files relevant to the interchange.

19. Mr. Robert Meuser, P.E., ex-District Engineer for PennDOT, who was PennDOT's representative at a meeting held in late-July of 1990 with representatives of the Greater Chambersburg Chamber of Commerce at which Ann Eppard and PennDOT's Mueser suggested that the Chamber develop and institute a particular strategy to consolidate support for the exit interchange at the Walker Road location. Such discovery would seek documents and materials from Mr. Meuser to determine the extent of the predetermination of the interchange, and would seek information from Mr. Meuser concerning the content, number, and extent of meetings held to consolidate support for the interchange at the Walker Road location.

20. Guilford Township, Franklin County Supervisors, who may have been involved in meetings similar to those held between the Greater Chambersburg Chamber of Commerce and PennDOT to discuss the consolidation of support for an exit interchange at the Walker Road location. Such discovery would be limited to a request for document production to determine whether meetings were held - or communications exchanged - to further predetermine the location of the interchange. If meetings were held, the Plaintiffs reserve the right to request that this Court grant the Plaintiffs the ability to take oral depositions of the Guilford Township Supervisors focused on determining the content of such meetings.

21. Chambersburg Borough Councilpersons, who may have been involved in meetings similar to those hosted by the Greater Chambersburg Chamber of Commerce with PennDOT to discuss the consolidation of support for an exit interchange at the Walker Road location. Such discovery would be limited to a request for document production to determine whether meetings were held - or communications exchanged - to further predetermine the location of the interchange. If meetings were held, the Plaintiffs reserve

the right to request that this Court grant the Plaintiffs the ability to take oral depositions of the Chambersburg Borough Councilmembers focused on determining the content of such meetings.

22. Former Governor Robert P. Casey - and the administrators of his public records at the Pennsylvania State University and the Pennsylvania State Archives - to obtain transportation-project related documents transferred by Governor Casey to the University and/or the Archives in 1995. Specifically, the Plaintiffs seek review of the contents of Box #9, File Numbers 10 and 14 of Casey's "General Subject" files, referred to as the "Transportation" file and the "Transportation - Highway Construction" file, respectively. Marked as "Restricted" files, the documents within these files are not accessible to the Plaintiffs by other methods. In the July 6, 1992 communication between then-Secretary of Transportation Howard Yerusalim and ex-U.S. Representative Bud Shuster, the Secretary wrote that "I will personally guarantee the Governor's and my full attention to the completion of this project." Communications contained within the Governor's files may further delineate the degree to which the location of the interchange was predetermined.

THEREFORE, the Plaintiffs respectfully request that this Court GRANT the limited discovery sought by the Plaintiffs in this case as outlined in this Motion.

Respectfully Submitted this 30th Day of <u>August</u>, 2001,

_____
Thomas Alan Linzey, Esq.
Community Environmental Legal Defense Fund (CELDF)
2859 Scotland Road
Chambersburg, Pennsylvania 17201
(717) 709-0457
(717) 709-0263 (fax)

## Certificate of Non-Concurrence

Concurrence on this Motion from the Defendants Wykle and Gatz was sought prior to, and during, the Conference Call held with Judge Rambo on July 20, 2001. During that Conference Call, Defendants Wykle and Gatz clearly indicated that they would oppose any request by the Plaintiffs to discover extra-record evidence.

## CERTIFICATE OF SERVICE OF PROCESS

I, Thomas Linzey, hereby swear and affirm that I have served the accompanying MOTION and the MEMORANDUM OF LAW in support of that Motion on the Parties identified below by the following method:

**Pre-Paid First Class U.S. Mail**

The following individuals were served with the MOTION and MEMORANDUM:

Anne K. Fiorenza, Esq.
Martin Carlson, Esq.
Acting U.S. Attorney for the Middle District of Pennsylvania
Suite 217, Federal Building
228 Walnut Street
Harrisburg, Pennsylvania 17108-1754

Kenda Jo Gardner, Esq.
Office of Chief Counsel
Pennsylvania Department of Transportation
P.O. Box 8212
Harrisburg, Pennsylvania 17105-8212

Signed,

_____
Thomas Alan Linzey, Esq.
Community Environmental Legal Defense Fund (CELDF)
2859 Scotland Road
Chambersburg, Pennsylvania 17201

Dated this ____ Day of August, 2001