

# In the United States District Court for the Middle District of Pennsylvania

GREENE/GUILFORD ENVIRONMENTAL
ASSOCIATION, a non-profit corporation incorporated
under the laws of the Commonwealth of Pennsylvania,
CITIZENS FOR PLANNED COMMUNITY GROWTH,
an unincorporated association organized under the laws of
the Commonwealth of Pennsylvania, PAUL B. AMBROSE,
JOHN G. ENDERS, CHARLES F. RAHAUSER,
BETSY RAHAUSER, DOUGLAS A. WARNOCK, U.X
VAGNERINI, THOMAS W. BUNDY, STEPHEN P.
BUCHER, ROGER J. ROBERTSON, JAMES A.
STRITE, JR., DAVID A. GUTHRIE

       :   Civ. No. 1:CV-01-0910

       :   (Judge Rambo)

v.

KEN WYKLE, Administrator, Federal Highway
Administration, ROBERT GATZ, Federal
Highway Administration.

**FILED**
**HARRISBURG**

AUG 3 1 2001

MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

## Attachments To Plaintiffs' "Motion for Limited Discovery in Addition to the Administrative Record" and Supporting Brief

| ROUTING | INI. | DATE | INFO | ACT |
|---------|------|------|------|-----|
| DIST. ENGR. | | 7/14 | | |
| ADE · Design | | 7/15 | ✓ | |
| ADE · Const. | | | | |
| ADE · Maint. | | | | |
| Per. Analyst | | | | |
| Fiscal | | | | |
| CRC | | | | |
| LLH JTC | | 7/16 | | |
| | | | | |
| Secy. | | | | |
| File | | | | |

July 6, 1992

Honorable Bud Shuster
U.S. House of Representatives
2188 Rayburn House Office Building
Washington, DC  20515

Dear Congressman Shuster:

    This letter is in response to your inquiries regarding Exit 7 on Interstate 81 in Franklin County.  This project has been in the works for many years and we have been working to build it since 1987.

    PennDOT is committed to pursuing construction of Exit 7 at or near Walker Road to service and promote economic development in the area.  It is our intention to satisfy the environmental requirements and to work with you and local interests to complete this project promptly.  I will personally guarantee the Governor's and my full attention to the completion of this project.

    We plan to expedite this project.

                    Sincerely,

                    Howard Yerusalim

                    Howard Yerusalim, P.E.
                    Secretary of Transportation

**ATTACHMENT ONE - A**

5000/LMK/mdw
bc:  Secretary's Reading File
     Governor's Washington Office
     Mr. William Moyer
     Mr. Wayne Kober
     **Mr. Barry Hoffman, District 8-0**
     Mr. James McCarron
     Mr. Robert Mustin
     Mr. Gerald Fritz
     **Mr. Thomas TenEyck**
     Mr. Dennis Lebo

| ROUTING | INI. | DATE | |
|---|---|---|---|
| DIST. ENGR. | | | |
| ADE - Design | | | |
| ADE - Const. | | | |
| ADE - Maint. | | | |
| Proj. Analyst | | | |
| Legal | | | |
| | | | |

July 14, 1992

Honorable Bud Shuster
U.S. House of Representatives
2188 Rayburn House Office Building
Washington, D.C.  20515

Dear Congressman Shuster:

    Thank you for your letter of July 13, 1992, concerning the status of the
Walker Road alternative of proposed Exit 7 on Interstate 81 in Franklin
County.

    We share your concerns regarding the progress on this project.  Since the
study began in October, 1988, we have completed the traffic studies and
performed preliminary environmental studies of the project.  The preliminary
environmental studies were conducted throughout the 16-square mile study area
and included investigations of a range of potential impacts including
the following:  agricultural areas, wetlands, threatened and endangered
species, noise and air quality, nearby businesses and residences, hazardous
waste sites, national register buildings and properties, known archeological
sites and local economic effects.  A preliminary alternatives report which
included the results of the traffic and environmental studies and their impact
on each of the five alternatives was prepared and made available for public
inspection in June, 1990.

    We are now restructuring the project scope by focusing on the objective
to provide access to developing land adjacent to Walker Road.  We will make
sure our consultant fully understands the development potential at this
location.  We will also pursue the elimination of the direct connection of
Walker Road relocated to Kohler Road and are investigating the need to upgrade
and expand local roads in conjunction with the interchange, including a
proposed connection between Walker Road and Fifth Avenue.

    PennDOT is committed to pursuing construction of Exit 7 at or near Walker
Road to service and promote economic development in the area.  Our detailed
environmental studies are now underway, and field work in the area could begin
later this month.  The detailed environmental studies will investigate all of
the issues we considered in our preliminary environmental studies but to a
greater detail.  Additionally, there are several tasks we will perform that
have not been considered earlier.  They include Phase I archeological
excavations, in which small pits are dug to investigate the presence of
Historic or Prehistoric artifacts; a historical structures survey, a study of

buildings that may have historic significance and be eligible for the National Register; a detailed noise analysis, including the monitoring of noise along the Interstate and nearby roads; and a subsurface exploratory program which includes exploration of the soils and rock below the location of the proposed ramps and access roads.  In addition, we will be working to secure the agreement of the environmental agencies on project need and to evaluate secondary impacts.

I look forward to working with you throughout the study process.  If you have any questions, please feel free to contact me.

Very truly yours,

Howard Yerusalim, P.E.
Secretary of Transportation


500:LMK:dd


bc:  Secretary's Reading File
     Governor's Washington Office
     Mr. Larry King
     Mr. Barry Hoffman
     Mr. James McCarron
     Mr. Robert Mustin
     Mr. Gerald Fritz
     Mr. Thomas TenEyck
     Mr. Wayne Kober

*Sent to Larry King (score)*
*6-5-92*
*@ 405 pm  JLK/?*
*7-3154*

June 5, 1992

*Resent to L.K*
*6-9-92*

Honorable E. G. (Bud) Shuster
U.S. House of Representatives
Room 2268, Rayburn House Office Building
Washington, D.C.  20515

Dear Congressman Shuster:

Thank you for your letter of April 14, 1992, concerning the construction of an additional interchange on Interstate 81 near Chambersburg.

After our follow-up meeting of May 13, 1992 in your Washington office, we had further internal discussions between District and Central Office staff.  We have formulated the following approach:

o    We will restructure the project scope by ~~adding~~ *focusing on* the objective to provide access to developing land adjacent to Walker Road.  We will make sure our consultant fully understands the development potential at this location.

o    We will pursue the elimination of the direct connection of Walker Road relocated to Kohler Road.

o    We will investigate the need to upgrade *and expand* local roads in conjunction with the interchange.

o    We will work with our consultant to shorten the study timetable with the objective of having an approved draft Environmental Impact Statement (EIS) by Spring 1993.  The draft EIS will include a preferred alternative.

In order to support the need for this project, we will need the cooperation of all interested parties.  I suggest a meeting *or meetings* be scheduled with Chambersburg Borough, Greene Township, development interests, county officials, the Department, and your office attending.  A show of support will greatly assist the Department in expediting the project schedule, particularly in our required coordination with state and Federal agencies.  I look forward to working with you throughout the study process.

                        Sincerely,


                        Howard Yerusalim, P.E.
                        Secretary of Transportation

cc:  Secretary's Reading File
     Governor's Washington Office
     L. King, Deputy Secretary for Planning
     B. G. Hoffman, P.E, District 8-0 Engineer

**ATTACHMENT ONE - C**

questions, please feel free to contact

_____.

Sincerely,


Howard Yerusalim, P.E.
Secretary of Transportation

080/JTK/pac
cc:



**David G. Sciamanna**
Executive Director

**Martina K. Witmer**
Assistant Executive Director

75 South Second Street
P.O. Box 399
Chambersburg, PA 17201
(717) 264-7101

September 21, 1990

**ATTACHMENT TWO**

Mr. Robert R. Mueser, P.E., District Engineer
Pennsylvania Department of Transportation
Engineering District 8-0
21st and Herr Streets
Harrisburg, PA 17103-1699

Dear Bob:

We appreciated you taking time to meet with our Chamber Representatives in late July. I think that meeting gave us all a better understanding of the task that lays ahead. At Ann Eppard's and your suggestion, we developed and instituted a strategy to consolidate support for the exit at a particular location. We put considerable effort into the endeavor of choosing the Walker Road location by gaining the strong support of the County Commissioners and the Borough of Chambersburg. In our meeting with the numerous townships in the area, we were unable to get a consensus as to a location or an exit, but I think this is something that was an anticipated response from the beginning. In reviewing the situation, we now feel that we have sufficient support for the exit.

I believe you have received some letters from our members, individuals throughout the Chambersburg area who support such an exit. In surveying our members, many were surprised to hear that there was a problem. Everyone seemed to be under the assumption that PennDot, in conducting their study for the last year at a sizeable cost, would choose an appropriate location for an exit.

The Chamber's position still is that we will support the location chosen by PennDot unless a "no build option" is chosen which we feel is totally unacceptable. We truly appreciate the fact that PennDot has a difficult and controversial decision to make, but at the same time we realize the necessity of an exit. I think that we all realize that this project will require great leadership, courage and dedication on all of our parts.

**David G. Sciamanna**
Executive Director

**Martina K. Witmer**
Assistant Executive Director



GREATER CHAMBERSBURG
CHAMBER of COMMERCE

75 South Second Street
P.O. Box 399
Chambersburg, PA 17201
(717) 264-7101

Again, thank you for meeting with us to work through this situation. Look forward to hearing from you on your progress.

Sincerely,

Charles E. Nelson
President and Chairman

CEN/rks



# Memorandum

U.S. Department
of Transportation

**Federal Highway**
**Administration**

*HDA-PA*

| Subject: | *ACTION*: Office of Inspector General Hotline Complaint 61H-215-I-000 | Date: | July 3, 1996 |
| --- | --- | --- | --- |
| From: | Director, Office of Planning & Program Development Baltimore, Maryland | Reply to Attn of: | HPP-03 |
| To: | Mr. John H. Schnackenberg Chief, Organization & Management Programs Division (HMS-11) Washington, D.C. | | |

This is a response to your memorandum of May 28, 1996, which forwards a March 4, 1996 complaint letter from the Community Environmental Legal Defense fund (CELDF) and a May 7, 1996 complaint letter from the Greene/Guilford Environmental Association, Inc. In substance, we interpret the complaint to be that the National Environmental Policy Act (NEPA) process was contravened by the Pennsylvania Department of Transportation (PennDOT) and that FHWA did not prevent or redress the alleged improper conduct.

Two sets of documents are submitted by the complainants. The first is an exchange of letters between Congressman Bud Shuster and Howard Yerusalim, the latter of whom was Pennsylvania's Secretary of Transportation at the time. The second set of documents is correspondence pertaining to an engineering/design contract. Our specific responses will address each of the two sets of documents, but before doing so, a few general points should be made. First -- and perhaps foremost -- the alternative selection for this project has not yet been made. We don't anticipate having the necessary information to render a Record of Decision (ROD) until September 1996 at the earliest. At this point, it is procedurally possible for FHWA to select any one of six alternatives that were evaluated in the Final Environmental Impact Statement (FEIS), including the no-build. Therefore, there is an opportunity to review this matter prior to a decision and the commitment of resources to a specific alternative. Next, you should know that this project is very controversial. There are parties that strongly oppose, and others that strongly support, various conclusions. It is perhaps human nature to find flaws with any process that does not yield a personal preference. Although a final decision has not yet been rendered, the FHWA has identified a "preferred alternative" that various stakeholders find objectionable. Therefore, the complaint may be more in response to a possible undesirable result, rather than the process. The NEPA process is not guaranteed to produce a result that everyone is pleased with.

**ATTACHMENT THREE**

Our responses to the submitted information are as follows:

*Shuster-Yerusalim Correspondence*

The FHWA was made aware of these letters in July 1995 when they were included as part of the comments a local government submitted on the FEIS. In our view, a distinction must be made between the actions and writings of a congressman and those of a state transportation agency official. Congressman Shuster sponsored legislation to secure "earmarked" funds for the design and construction of an additional I-81 interchange in Franklin County. Based on the correspondence, he also appears to favor a Walker Road location. However, as is pointed out by the CELDF letter, under NEPA, the decision is made by the lead (administering) Federal agency. Therefore, as long as it is not coercive, we are not concerned by any stakeholders advocating a specific course of action.

On the other hand, as a statewide public agency and project applicant, PennDOT is preparing the EIS for the project. We understand the concerns that Mr. Yerusalim's letter could raise. On the other hand, if no real harm was done to the evaluation and decision processes, it doesn't make sense to discard the substantial public investment in this project. We believe the central question is: Did these letters or possible interpretations of the views expressed in them, have any influence on the scope or conclusions of activities administered by PennDOT? At the time the letters were written, studies were being conducted in preparation of the Draft EIS (DEIS). The DEIS and other environmental documents were made available for review and comment to the public and agencies. Based on these comments and additional analysis, the FEIS was prepared. The FEIS is the technical evaluation of the alternatives and provides key information relevant to a decision.

Maintaining the integrity of the NEPA process is of paramount importance to the FHWA. Because of the concern surrounding these letters, which were brought to our attention almost a year ago, the FHWA reviewed key technical analyses related to this project. We concluded that an objective and balanced evaluation of all reasonable alternatives was conducted. We also found the project's purpose and need is likely to be best satisfied by a Walker Road alternative. The Office of Inspector General is welcome to review all the project studies and records, which are located at our Division Office in Harrisburg, Pennsylvania.

*Open-End Engineering/Design Contract*

We believe this to be a straightforward matter and hopefully the ensuing explanation will clarify a possible misunderstanding by the complainants. We need to begin with an overview of the Open-End contract procedure. PennDOT must frequently carry out unanticipated

3

design related work. Open-End contracts are used to meet these time-sensitive needs. An Open-End contract is one that PennDOT executes with a consultant for work assignments that are not specifically identified at the time of contract solicitation or execution. By their nature, Open-End contracts do not relate to specific PennDOT projects at the time they are executed. Terms such as "stand by," "as needed," and "if and when directed" might also be used to characterize Open-End contracts.

Another important point is that the Open-End contract itself does not approve or authorize any work. When a task is identified, and no other means are appropriate, PennDOT will execute a "work order" under one of its Open-End contracts for that specific assignment. These work orders are the specific approvals for compensable work by the consultant.

When the Open-End contract was executed in April 1994, it was not specifically for the I-81 interchange project. In fact, as of this writing, work orders for 18 different projects have been executed under the Sheladia Associates Open-End contract of concern.

In the case at hand, the Open-End contract was for final and prefinal design activities. However, the referenced work order (No. 4) is for prefinal design activities only. The complainant is correct in stating that final design before a ROD is prohibited. Due to the concerns expressed in the complaint, we will take steps to assure that final design is not conducted by PennDOT or its consultants until the ROD is issued.

As we stated earlier, this is a controversial project. The FHWA has been criticized by some for being too deliberative and by others for being too expedient. In summary response to the complaint, the FHWA has found no improper conduct which led to irreparable harm. We consider Mr. Yerusalim's letters regrettable, but not harmful to the NEPA process. We believe this process will provide an objective and bias-free evaluation of all reasonable alternatives.

Hopefully, we have been responsive to your inquiry and the concerns of the complainants.

David C. Lawton



# RECORD OF DECISION
# FEDERAL HIGHWAY ADMINISTRATION
# INTERSTATE 81 INTERCHANGE PROJECT
# S.R. 8016
# FRANKLIN COUNTY, PENNSYLVANIA

## I.    DECISION

The selected alternative for the Interstate Route 81 (I-81) Interchange project to provide access to Chambersburg, Pennsylvania is Alternative D Modified, a diamond interchange with a new bridge over I-81 approximately 412 meters (1,350 feet) south of the existing Walker Road (T-517) overpass.  The southbound ramps to and from I-81 will be located on the east side of the existing Walker Road, and will tie in to existing Walker Road near the Greene Township-Chambersburg Borough line.  The northbound ramps to and from I-81 will be located on the west side of Franklin Farm Lane.  The existing Walker Road overpass will be removed.  As Walker Road will be relocated during the construction of this project, existing Walker Road will terminate on both sides of I-81.  Alternative D Modified includes ramps with a 4.6 m (15 ft) lane width, a 1.2 m (4 ft) left shoulder, and a 3.0 m (10 ft) right shoulder.  The bridge carrying the relocated portion of Walker Road over existing I-81 will have 3.7 m (12 ft) lanes, one lane in each direction and a left-turn lane, and 3.0 m (10 ft) outside shoulders.  The selected alternative is a modification of Alternative D and was developed in response to comments received on the final Environmental Impact Statement (final EIS) and to avoid, minimize and mitigate project impacts.  Alternative D Modified was evaluated in a written reevaluation of the final EIS dated January 1999.  Attachment A graphically depicts Alternative D Modified.

Alternative D Modified best meets the needs for the project identified in *Section I* of the final EIS.  The reevaluation confirms that Alternative D Modified would not result in any significant environmental impacts that were not evaluated in the final EIS.  Alternative D Modified is the environmentally preferred alternative for reasons discussed in the following sections.

This project was developed in accordance with the National Environmental Policy Act (NEPA) of 1969, CEQ Regulations for Implementing the Procedural Provisions of the NEPA (40 CFR 1500-1508), the FHWA Environmental Impact and Related Procedures (23 CFR Part 771), the Historic Preservation Act of 1966 (16 U.S.C. 470 f, Section 106, 110(d) and 110(f)), and other related Federal and state requirements.

The Surface Transportation and Uniform Relocation Assistance Act of 1987 (STURAA) provided funding for a new interchange that would provide access to Chambersburg, Pennsylvania and reduce traffic congestion on an existing interstate interchange.  Environmental studies for the project commenced in 1988.  A series of public meetings were held as the project developed.  A draft EIS was circulated and on June 29, 1994, a public hearing was held for the project.  Five alternatives were presented in the draft EIS.  Alternative D-C (referred to as the

**ATTACHMENT FOUR**

Beginning in 1993 with the submission of the Determination of Eligibility report to the PA SHPO, the Section 106 consulting process was continued through the establishment in early 1995 of a Municipal Coordination Committee (MCC) which met to discuss Section 106 issues. In addition, information about the process and the project was continuously communicated amongst all the consulting parties throughout project development. A Memorandum of Agreement has been prepared and executed. The intent of Section 106 regarding consideration and consultation has been met.

ISSUE:    The decision-making process has been flawed; the project need and alternatives development process had a predetermined outcome.

RESPONSE:    Alternatives for the I-81 Interchange Project were developed in accordance with applicable federal and state legislation and regulations, and were based on project need, the location of an interchange to comply with Public Law 100-17, and environmental features. The project needs are defined on page 2 of this Record of Decision and form the basis for the identification of alternatives. The implementing regulations for the National Environmental Policy Act require that all reasonable alternatives be explored and evaluated. A Design Location Study initiated in late 1988 examined alternatives at four different locations near Chambersburg. Two locations, Guilford Road and Woodstock Road, were dismissed as they did not meet project needs. A Preliminary Alternatives Analysis, completed in May 1990, recommended that alternatives at the Kriner Road and Walker Road locations be studied in detail. Alternatives at Kriner Road and at Walker Road , in addition to the No-Build Alternative, were studied in detail in the draft and final EIS. As confirmed in the written reevaluation of the final EIS, Alternative D Modified best meets the needs of the project and is the environmentally preferred alternative.

ISSUE:    The project will cause traffic on local roads to increase, necessitating improvements to the local road network.

RESPONSE:    The traffic studies show that traffic will increase on area roadways with or without an interchange at Walker Road. In fact, under the No-Build condition and with improvements to U.S. Route 30 and the completion of the Norland Avenue Extension (a local project), traffic on segments of Walker Road will likely increase by as much as 205% to 238%. One of the largest components of future traffic on area roadways is the planned and on-going development which has been identified in the area. Without this development, there would be increased traffic