2 to CT

ORIGINAL

FILED
HARRISBURG

OCT 0 3 2001

MARY E. D'ANDREA, CLERK
Per_____
         DEPUTY CLERK

# In the United States District Court for the Middle District of Pennsylvania

| | |
|---|---|
| GREENE/GUILFORD ENVIRONMENTAL ASSOCIATION, a non-profit corporation incorporated under the laws of the Commonwealth of Pennsylvania, CITIZENS FOR PLANNED COMMUNITY GROWTH, an unincorporated association organized under the laws of the Commonwealth of Pennsylvania, PAUL B. AMBROSE, JOHN G. ENDERS, CHARLES F. RAHAUSER, BETSY RAHAUSER, DOUGLAS A. WARNOCK, U.X VAGNERINI, THOMAS W. BUNDY, STEPHEN P. BUCHER, ROGER J. ROBERTSON, JAMES A. STRITE, JR., DAVID A. GUTHRIE<br><br>v.<br><br>KEN WYKLE, Administrator, Federal Highway Administration, ROBERT GATZ, Federal Highway Administration. | Civ. No. 1:CV-01-0910<br><br>(Judge Rambo) |

### PLAINTIFFS' REPLY TO DEFENDANTS' ANSWER IN OPPOSITION TO MOTION FOR LIMITED DISCOVERY

AND NOW, come the Plaintiffs in the above captioned case and file this Reply to the Defendants' Answer in Opposition to the Plaintiffs' request to obtain limited discovery in addition to the administrative record produced by the Defendants.

-1-

### I. Defendants Confuse the Legal Standard for the Granting of Limited Discovery with the Burden of Proof Necessary to Prove that the Project's Location was Predetermined in Violation of Federal Law

Defendants fundamentally confuse the legal standard associated with the granting of limited discovery outside of the administrative record with the burden of proof necessary to show that the highway agencies violated federal law by predetermining the location of the highway interchange.

In their Brief, the Defendants agree that extra-record evidence may be obtained when there is a sufficient showing of "bad faith or improper behavior." *See* Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Limited Discovery at 6. That standard, enunciated first by the U.S. Supreme Court in *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971), allows discovery outside of the administrative record when a Plaintiff shows "bad faith or improper behavior" by the agency or when effective judicial review can only be achieved by "examining the decisionmakers themselves." *See* Plaintiffs' Memorandum of Law at 9.

However, instead of dealing directly with the content of the damning communications submitted with the Plaintiffs' Motion -- which clearly illustrate an agency operating to circumvent federal law -- the Defendants attempt to impose a higher burden of proof - one which would force the Plaintiffs to prove their predetermination claim at this stage of litigation. That proposition is clearly untenable and not supported by law. In effect, it would force the Plaintiffs to carry a burden to prove predetermination prior to obtaining extra-record evidence to further support their claim that predetermination occurred.

The judicial standard for this Motion, therefore, is a "bad faith" standard and asks the precise question of whether the Plaintiffs have shown that the agencies acted improperly or in bad faith in taking actions to predetermine the location of the highway

interchange prior to the preparation of the objective studies required by the National Environmental Policy Act.

Clearly, the Plaintiffs have made that showing. *See* Plaintiffs' Memorandum of Law at 2-4 and Attachments to that Memorandum. The Defendants' reluctance to deal with the particulars of that evidence -- labeling the orders and instructions to staff contained in those documents as simply "expressions of confidence" -- further supports the Plaintiffs' contention that the agencies acted in bad faith. By ignoring the senior staff directives contained within those communications, the Defendants' Answer supports the Plaintiffs' contention that effective judicial review in this case can only be accomplished by granting the Plaintiffs' Motion for limited discovery.

### A. Plaintiffs Have Shown That the Agencies Acted in Bad Faith by Restructuring the Entire Scope of the Project to Focus on One Predetermined Location to Open Land for Development

The Defendants contend that the documents submitted by the Plaintiffs merely state acceptable "expressions of confidence." *See* Defendants' Memorandum of Law at 9. The communications referred to by the Defendants, however, reveal a fundamentally different situation - one in which the Secretary of a transportation agency -- the highest ranking official -- explicitly ordered the staff of the agency to "restructure" the project scope to focus, not on the Congressional directive of relieving congestion on an existing interchange, but on <u>opening land for developers in a specific location</u>. *See* Attachments to Plaintiffs' Motion for Limited Discovery at Attachment One-A and Attachment One-B. That order occurred almost four years before the Draft Environmental Impact Statement (DEIS) -- the document legally required to objectively examine a full range of "reasonable alternatives"-- was drafted and released.

It is not surprising that the focus of the development of the interchange increasingly became "opening" land for development. The Demonstration project, and the resulting federal funding, came as a direct result of the securing of that funding by the influential Bud Shuster, who represented the area in Congress and on the Transportation Committee. Shuster's continuing -- and almost weekly -- involvement in the development of the project sheds significant light on the direction that the project traveled after the funding legislation was adopted.

The "bad faith" of the agency thus lie not only in circumventing the requirements of NEPA, but also in using the interchange project to further land development goals of private interests, rather than on implementing the Congressionally directed needs of the "demonstration" project. *See* Amended Complaint at Count Seven, paragraphs 125 to 137. Those needs solely included the relief of traffic congestion on an existing interchange. *See* Amended Complaint at 6, paragraph 22. The agencies, however, completely ignored that federal directive, and used the funding to support area development interests. That, in turn, resulted in the necessity of violating the NEPA's requirement of objective studies and the evaluation of all reasonable alternatives.

None of the cases cited by the Defendants as support for its contention that these communications simply constitute "expressions of confidence" are applicable to the instant situation. In the lead case used by the Defendants, *Environmental Defense Fund v. United States Army Corps of Engr's*, 470 F.2d 289 (8th Cir. 1972), a claim of bias was based solely on a statement made by a District Engineer that the proposed Dam "would definitely be built." *Id.* at 295. That fact pattern falls substantially short of the one presented by the Plaintiffs to this Court. Far beyond broad statements that an interchange would be built, the communications between the Secretary of Transportation and agency staff explicitly call for a "restructuring" of the project to ensure a predetermined result - the selection of the Walker Road location for the

interchange. In their Brief, the Defendants also conveniently omit the fact that the Dam in that case was two-thirds complete by the time the procedural requirements of NEPA went into effect. *Id.* at 296.

The *Coalition Against Raised Expressway* and *Presidio Gold Course* cases also fail to support the Defendants' dismissal of the communications in this case as merely "expressions of confidence." *See* Defendants' Memorandum of Law at 9. In both of those cases, the statements cited as bias concerned the study of alternatives that the agency believed to be unfeasible. In those cases, the federal agency simply expressed a confidence that certain alternatives "ultimately would turn out to be unfeasible." *Coalition Against Raised Expressway*, 835 F.2d 803, 808 (11th Cir. 1988).

Unlike the scenarios presented in those cases, the communications produced in this case do not focus on the unfeasibility of alternative locations for the interchange, but focus entirely on changing the entire study process to produce a predetermined result. Thus, the statements within the produced documents far exceed permissible "expressions of confidence" - instead, they serve to bind the agency to one course of action, and commit the agency to defending that course of action at all costs.

In those letters, statements by the Secretary of Transportation included the following, among other declarations:

(1) "PennDOT is committed to pursuing construction of Exit 7 at or near Walker Road to service and promote economic development in the area";

(2) "We are now restructuring the project scope by focusing on the objective to provide access to developing land adjacent to Walker Road".

The letters were then sent to all of the project staff managers to ensure that the promises made within the communications were implemented by project staff. It is doubtful that as a mere "expression of confidence" between a Secretary and a

-5-

Congressman, that the Secretary would order executive staff to carry out a "restructuring" of the project scope. Far from a general expression of confidence, the Secretary even went so far as to state that "we will make sure our consultant fully understands the development potential at this location." *See* Plaintiffs' Motion for Limited Discovery at Attachment One-B.

Clearly, these statements cannot be considered "expressions of confidence", but instead are blatant examples of how the planning process for this interchange project was perverted to satisfy the needs of area constituents. PennDOT's own records indicate that other interchange location alternatives, in the Kriner Road area south of Chambersburg, were "reasonable alternatives" to the Walker Road location. *See* Preliminary Alternatives Report, AR-2, at 3. Thus, even as other alternatives were recognized as requiring consideration, the Secretary and key agency staff were predetermining the interchange location in the Walker Road area. To allow the agencies to engage in this level of manipulation without enabling the Plaintiffs to discover the extent of the predetermination, is to place all Plaintiffs at a disadvantage when confronting agencies responsible for compliance with federal law.

### B. Plaintiffs Have Sufficiently Alleged the Prejudicial Impact to the Process Caused by the Restructuring of the Scope of NEPA Analysis

Not only have the Plaintiffs shown that the agencies acted in bad faith by predetermining the location of the interchange, the Plaintiffs have also specifically alleged that the predetermination itself forced the agencies to expressly overlook and ignore significant impacts to the human and natural environment. Specifically, the Plaintiffs have alleged that the rush to support the predetermined interchange location forced the agencies to:

(1) Violate their own regulations by overriding the conflict between the construction of the interchange and the local Township's land-use planning. *See* Count Two of Plaintiffs' Amended Complaint;

(2) Select a stunted study area for historic resources, in violation of the National Historic Preservation Act and the National Environmental Policy Act, to overlook impacts to historic buildings and resources. *See* Count Four of Plaintiffs' Amended Complaint;

(3) Refuse to examine the impact of interchange traffic on local roadways. *See* Count Five of Plaintiffs' Amended Complaint;

(4) Refuse to issue a Supplemental EIS following the complete redesign of the proposed interchange and significant changes to land-use in an area surrounding an alternative interchange location. *See* Count Six of Plaintiffs' Amended Complaint;

(5) Misuse federal funds by refusing to comply with Congressional directives for the use of federal highway monies under "demonstration project" authorization. *See* Count Seven of Plaintiffs' Amended Complaint;

(6) Refuse to examine a new range of alternatives produced by the amendment to the original Congressional authorization. *See* Count Eight of Plaintiffs' Amended Complaint.

Thus, the Plaintiffs have made a *prima facie* showing that the actions of the agencies were prejudicial to the study process, in addition to showing that the agencies acted improperly, and in bad faith, in circumventing the requirements of the National Environmental Policy Act.

## II. The Federal Defendants Cannot Shirk Responsibility for the Predetermination Decision Because the Federal Defendants Have Admitted That They Were Aware of the Predetermination Prior to Issuing the Record of Decision.

In attempting to assure this Court that the federal defendants independently evaluated the merits of the predetermination issue prior to issuing the Record of Decision, the federal defendants have conceded that they were aware of the predetermination as early as 1995. *See* Exhibit A to the Defendants' Memorandum of Law.

The federal defendants cannot have their cake and eat it too. As the federal transportation agency responsible for compliance with the National Environmental Policy Act, the decision to issue the Record of Decision for the project constituted explicit acceptance and endorsement of the decisions and planning process of the non-federal entity. Agency determination of compliance with federal environmental law requires no less. Otherwise, compliance with the law would be diluted by the operation of an agent on behalf of the principal. Such cannot be the case, and the federal actor must be held responsible for the improper acts of the state actor which contributed to the violations of federal law.

III. Conclusion

THEREFORE, the Plaintiffs respectfully request that this Court GRANT the limited discovery sought by the Plaintiffs in this case as outlined by the Plaintiff's Motion.

Respectfully Submitted this 1st Day of October, 2001,



Thomas Alan Linzey, Esq.
Community Environmental Legal Defense Fund (CELDF)
2859 Scotland Road
Chambersburg, Pennsylvania 17201
(717) 709-0457
(717) 709-0263 (fax)

## CERTIFICATE OF SERVICE OF PROCESS

I, Thomas Linzey, hereby swear and affirm that I have served the accompanying REPLY on the Parties identified below by the following method:

**Pre-Paid First Class U.S. Mail**

The following individuals were served with this REPLY:

Anne K. Fiorenza, Esq.
Martin Carlson, Esq.
Acting U.S. Attorney for the Middle District of Pennsylvania
Suite 217, Federal Building
228 Walnut Street
Harrisburg, Pennsylvania 17108-1754

Kenda Jo Gardner, Esq.
Office of Chief Counsel
Pennsylvania Department of Transportation
P.O. Box 8212
Harrisburg, Pennsylvania 17105-8212

Signed,

_____
Thomas Alan Linzey, Esq.
Community Environmental Legal Defense Fund (CELDF)
2859 Scotland Road
Chambersburg, Pennsylvania 17201

Dated this <u>1st</u> Day of <u>October</u>, 2001