IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GREENE/GUILFORD ENVIRONMENTAL ASSOCIATION, a non-profit corporation incorporated under the laws of the Commonwealth of Pennsylvania; CITIZENS FOR PLANNED COMMUNITY GROWTH, an unincorporated association organized under the laws of the Commonwealth of Pennsylvania; PAUL B. AMBROSE; JOHN G. ENDERS; CHARLES F. RAHAUSER; BETSY RAHAUSER; DOUGLAS A. WARNOCK, U.X. VAGNERINI; THOMAS W. BUNDY; STEPHEN P. BUCHER; ROGER J. ROBERTSON; JAMES A. STRITE, JR.; and DAVID A. GUTHRIE,

   Plaintiffs

  v.

KEN WYKLE, Administrator, Federal Highway Administration; and ROBERT GATZ, Federal Highway Administration,

   Defendants

CIVIL NO. 1:CV-01-0910

FILED
HARRISBURG, PA

OCT 17 2001

MARY E. D'ANDREA, CLERK
Per _____
   Deputy Clerk

## MEMORANDUM

Before the court is Plaintiff's motion for limited discovery in addition to the administrative record. The parties have briefed the issues, and the motion is ripe for disposition.

I. **Background**[1]

On April 2, 1987, Congress adopted the Surface Transportation and Uniform Relocation Assistance Act ("STURAA") and appropriated $5.2 million for a "demonstration project" to "demonstrate[] how construction of an interchange on a north-south interstate route [would] provide access to Chambersburg, Pennsylvania, and relieve traffic congestion on an existing interchange on such interstate route." Pub. L. No. 100-17, § 149(a)(74), 101 Stat. 132, 192 (April 2, 1987). Plaintiffs document a series of communications which ensued from September 21, 1990 until July 14, 1992, which the court discusses further *infra* section III.B. These communications addressed the site of a proposed "Exit 7 interchange" on Route I-81 in Franklin County Pennsylvania (the "interchange project").

In May 1994, Defendants Wykle and Gatz, of the Federal Highway Administration ("FHWA"), approved a Draft Environmental Impact Statement ("DEIS") regarding the interchange project. In this document, Pennsylvania Department of Transportation ("PennDOT") selected a location at Walker Road in Franklin County as the "Preferred Alternative" for the Exit 7 interchange. In May 1995, Defendants Wykle and Gatz approved a Final Environmental Impact Statement ("FEIS") which selected an interchange at Walker Road as the "Selected Alternative." In January 1999, Defendants prepared a re-evaluation of the FEIS. On March 24-25, 1999, the Record of Decision ("ROD") for the interchange project was signed by David Lawton of the Eastern Resource Center of FHWA and Ronald W.

---

1.   Many of the following facts are gleaned from Plaintiffs' brief in support of the motion for limited discovery. There does not appear to be any factual dispute between the parties as to the series of events leading up to the March 24-25, 1999 decision being challenged by Plaintiffs.

Carmichael, the Division Administrator of the Pennsylvania Division of the FHWA. In June 2001, Defendants prepared a re-evaluation of the ROD.

Plaintiffs filed an amended complaint in the instant action on June 6, 2001. Plaintiffs contend that FWHA violated the National Environmental Policy Act ("NEPA") and the National Historic Preservation Act ("NHPA") by "predetermining" the location of the interchange prior to complying with applicable federal laws. On July 20, 2001, the court conducted a telephonic case management conference, and the court ordered the administrative record in this action to be produced no later than October 15, 2001. The court also directed the parties to brief the issue of whether Plaintiffs are entitled to seek limited discovery outside the administrative record. On August 15, 2001, the Secretary of PennDOT filed a motion to intervene.[2]

II.     **Discussion**

   A.     **Judicial Review of Agency Action**

In the instant motion, Plaintiffs seek to engage in discovery beyond the administrative record "[t]o determine the . . . extent of the predetermination of the location of the highway interchange, and to further supplement Plaintiff's 'predetermination' claim." (Pl. Mot. for Limit. Disc. at ¶ 4.) Specifically, Plaintiffs seek to subject sixteen different individuals to document requests and oral depositions. These individuals include PennDOT officials, Chambersburg Chamber of Commerce Members, FHWA officials, Franklin County Supervisors,

---

2.  The motion to intervene is still pending before the court.

3

Chambersburg council persons, former United States Representative Bud Shuster, and former Pennsylvania Governor Robert Casey.

Generally, judicial review of an agency action under NEPA and/or NHPA must be based solely on the administrative record before the court. *Vermont Yankee Nuclear Power Corp., Inc. v. National Res. Def. Counsel, Inc.,* 435 U.S. 519, 549 (1978) (remanding case in order for lower court to determine "whether the challenged rule finds sufficient justification in the administrative proceedings that it should be upheld by the reviewing court"); *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420 (1971) (directing district court to review administrative decision "based on the full administrative record that was before the Secretary at the time he made his decision" rather than on *post hoc* rationalizations submitted during litigation); *Don't Ruin Our Park v. Stone,* 749 F. Supp. 1388, 1391-92 (M.D. Pa. 1990) (holding that a court's review of administrative finding under NEPA must be limited "to the administrative record prepared in connection with the FEIS under attack").

Defendants cite a litany of cases in which the Third Circuit and other courts in this district have limited review of agency decisions to the administrative record. *See, e.g., Twiggs v. United States Small Business Admin.,* 541 F.2d 150, 152 (3d Cir. 1976) (remanding case because, among other things, district court looked outside the record for evidence in the process of reviewing administrative decision); *Dry Color Mfrs. Ass'n v. Department of Labor,* 486 F.2d 98, 104 n.8 (3d Cir. 1973) ("[I]n reviewing an agency action, . . . courts must look to the record that was considered by the agency and to the factual findings and reasoning of the agency-not to *post hoc* rationalizations of counsel or even agency members and not to

4

evidentiary materials that were not considered by the agency."); *Pennsylvania Protect Our Water v. Appalachian Reg'l Comm.*, 574 F. Supp. 1203, 1215 (M.D. Pa. 1982) ("[I]t appears to this court that the Third Circuit would require those plaintiffs challenging the adequacy of an FEIS to base their challenge upon the evidence placed before the agency during development of the administrative record.").

While the general rule that judicial review of administrative decisions should be limited to the administrative record is well established, the Supreme Court has articulated exceptions to this rule. In *Overton Park*, the Supreme Court noted that the lower courts, in reversing an agency action, had relied upon litigation affidavits that were not part of the administrative record. 401 U.S. at 419. Thus, the Court remanded the case to the district court to be reviewed based on the administrative record. *Id.* at 419-420. However, the Court went on to state:

> [S]ince the bare record may not disclose the factors that were considered or the Secretary's construction of the evidence it may be necessary for the District Court to require some explanation in order to determine if the Secretary acted within the scope of his authority and if the Secretary's action was justifiable under the applicable standard. The court may require the administrative officials who participated in the decision to give testimony explaining their action. Of course, such inquiry into the mental processes of administrative decisionmakers is usually to be avoided. . . . And where there are administrative findings that were made at the same time as the decision . . . there must be a strong showing of bad faith or improper behavior before such inquiry may be made. [Where] there are no such formal findings . . . it may be that the only way there can be effective judicial review is by examining the decisionmakers themselves.

*Id.* at 420 (citations omitted).

Thus, the *Overton Park* Court allowed for evidence outside the administrative record where (1) the record does not "disclose the factors that were

considered," or (2) where there is a "strong showing of bad faith or improper behavior." *Id.* It is the second exception, a showing of bad faith, that the parties dispute.[3] Plaintiffs ask the court to adopt the standard promulgated by the Ninth Circuit in *Animal Defense Council v. Hodel*, 867 F.2d 1244 (9th Cir. 1988). The court there stated that "certain circumstances may justify expanding review beyond the record or permitting discovery." *Id.* at 1436. Such circumstances include: (1) a necessity to explain the agency's action; (2) "when it appears that the agency has relied on documents or materials not included in the record;" (3) "if supplementation of the record is necessary to explain technical terms or complex subject matter involved in the agency action;" and (4) a showing of agency bad faith. *Id.* at 1436-37 (citations omitted). The plaintiffs in that case asserted bad faith on the part of the defendant agency based on the agency's knowledge, prior to issuing an

---

3. Plaintiffs argue at length that a prerequisite for allowing limited discovery is a showing that Plaintiffs have fully and forcefully participated in the administrative review process. Plaintiffs base this argument on language contained in Third Circuit and Middle District of Pennsylvania case law. *See, e.g., Lower Alloways Creek*, 687 F.2d at 743 ("[I]t is [] incumbent upon intervenors who wish to participate to structure their participation so that it is meaningful, so that *it alerts the agency to the intervenors' position and contentions.*") (emphasis in original); *Don't Ruin Our Park*, 749 F. Supp. at 1391 ("Plaintiffs wishing to challenge NEPA-related agency actions must at least bring their concerns to the agency's attention in a forceful manner or point out that their concerns were brought to the agency's attention by others") (quoting *Protect Our Water*, 574 F. Supp. at 1215). However, Plaintiffs' forceful participation in the administrative decision making process in the instant action is not in dispute. Defendants concede that "the pre-determination issue was raised throughout the NEPA process for the project." (Def. Br. in Opp. Pl. Mot. Lim. Disc. at 10.) Thus, the court need not address this issue.

Plaintiffs also do not aver that the record fails to "disclose the factors that were considered." *Overton Park*, 401 U.S. at 420. In order to put this in dispute, Plaintiffs would have to assert that "there was such a failure to explain administrative action as to frustrate effective judicial review." *Camp v. Pitts*, 411 U.S. 138, 142-43 (1973). Plaintiff's do argue that effective judicial review is frustrated by relying solely on the administrative record. (Pl. Br. Supp. Mot. for Lim. Disc. at 11-15.) However, this contention is not based upon a paucity of information contained in the administrative record, but instead upon Plaintiffs' contention that they have made a showing of bad faith and reliance on extra-record considerations. Thus, the crux of Plaintiffs' argument in support of the instant motion is based upon the bad faith exception to the general rule that discovery should be limited to the administrative record. The court will address Plaintiffs' motion accordingly.

environmental impact statement, that a $40 million dollar expense factored into the plaintiffs' favored plan would not be necessary. The plaintiffs argued "that limiting discovery without adequate justification prevented [them] from gathering the facts necessary to make out a bad faith claim." *Id.* at 1438. The court, however, rejected this assertion of bad faith, stating only that the record indicated that the Defendant had a good faith belief that this cost would come to fruition. *Id.*

Plaintiffs in the instant action cite cases from four other circuits, although not the Third Circuit, that have relied on the standards promulgated in *Animal Defense Council*. *See*, *Franklin Sav. Ass'n Director v. Office of Thrift Supervision*, 934 F.2d 1127, 1137 (10th Cir. 1997); *Preserve Endangered Areas of Cobb's History v. United States Army Corps of Eng'rs*, 87 F.3d 1242, 1247 n.1 (11th Cir. 1996); *USA Group Loan Servs. v. Riley*, 82 F.3d 708, 715 (7th Cir. 1996); *Mt. Clemens v. United States EPA*, 917 F.2d 908, 917 (6th Cir. 1991). However, while each of these cases discusses the standard put forth in *Animal Defense Council*, none of them allowed discovery to go beyond the administrative record. In fact, Plaintiffs have failed to provide the court with a single case citation where a court permitted supplementation of the record based on a "strong showing of bad faith" as described in *Overton Park*, 401 U.S. at 420.

In contrast, Defendants have presented the court with several cases where courts in this and other circuits have refused to allow discovery outside of the administrative record based on bad faith arguments. *Newton County Wildlife Ass'n v. Rogers*, 141 F.3d 803, 807-08 (8th Cir. 1998) (rejecting bad faith argument based on evidence "of the discrepancy between the actual logging and road construction taking place, and the environmentally less damaging activity studied in the pre-sale

7

Environmental Assessments"); *National Audubon Soc'y v. Hoffman*, 132 F.3d 7, 16 (2d Cir. 1997) (rejecting bad faith argument despite testimony of employee " who allege[d] that the Forest Service had already decided to issue a 'finding of no significant impact' prior to completing the [Environmental Assessment] and, in a NEPA training session, taught its employees to circumvent NEPA requirements by tailoring documents to support the predetermined result"); *Society Hill Towers Owners Ass'n v. Rendell*, 20 F. Supp.2d 855, 863 (E.D. Pa. 1998) (rejecting bad faith argument despite the plaintiffs' argument that the defendants "departed from the procedural requirements of the applicable statutes and regulations, and that they conducted a 'sham' review").

Turning to the instant motion, Plaintiffs contend that they have made a showing of agency bad faith and reliance on extra-record considerations that necessitates the granting of their discovery motion. For the reasons that follow, the court will deny Plaintiffs' motion for limited discovery in addition to the administrative record.

### B.  Reliance Upon the Administrative Record

Plaintiffs contend that they have made a showing of bad faith based on evidence that the site of interchange had been predetermined. Plaintiffs' evidence includes the following: (1) a letter dated September 21, 1990, from the President and Chairman of the Chambersburg Area Chamber of Commerce to Robert Mueser, District Engineer for PennDOT stating that "we developed and instituted a strategy to consolidate support for the exit at a particular location. We put considerable effort into the endeavor of choosing the Walker Road location." (Pl. Ex. 2); (2) a July 6, 1992 letter from then-Pennsylvania Secretary of Transportation Howard

Yerusalim to former United States Representative Bud Shuster stating that PennDOT was committed to "pursuing construction of Exit 7 at or near Walker Road to service and promote economic development in the area" (Pl. Ex. 1A); (3) evidence of the widespread circulation of the July 6, 1992 letter to individuals directly responsible for overseeing the development of the environmental studies; (4) a July 14, 1992 letter from Yerusalim to Representative Shuster stating that PennDOT was "focusing on the objective to provide access to developing land adjacent to Walker Road [and . . . was] committed to pursuing construction of Exit 7 at or near Walker Road to service and promote economic development in the area" (Pl. Ex. 1B); (5) a draft of the forementioned July 14, 1992 letter in which Yerusalim indicated an intention to "restructure the project scope by adding the objective to provide access to developing land adjacent to Walker Road" and that PennDOT would need the cooperation of all interested parties; and (6) the fact that the July 14, 1992 letter was circulated to various decision-making authorities.

In response, Defendants posit that "in addressing allegations of pre-determination under NEPA, the courts have relied on the contents of the administrative record." (Def. Br. in Opp. Mot. Lim. Disc. at 8.) Defendants cite numerous cases in support of this contention. *See, e.g., Coalition Against a Raised Expressway, Inc. v. Dole*, 835 F.2d 803, 807-08 (11th Cir. 1988) (looking to memoranda in the administrative record to evaluate merits of the plaintiffs' position that agency officials indicated that project alternatives should only be studied until proven unfeasible); *Presidio Golf Club v. National Park Serv.*, 155 F.3d 1153, 1161 (9th Cir. 1998) (looking to "seven instances in the voluminous [administrative]

record" to support the plaintiffs' position that the defendants' had tailored the NEPA process to ensure a predetermined outcome).

In the instant action, Plaintiffs concede that there is extensive evidence of predetermination contained in the administrative record as it stands.[4] Thus, Plaintiffs can apparently present the court with evidence of predetermination without going outside the administrative record. This fact weighs against Plaintiffs' contention that it must be allowed to engage in extra-judicial discovery to obtain evidence of predetermination, especially in light of the Supreme Court's strong hesitation to allow such discovery.[5] *See, e.g., Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("The focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.")

### C. Predetermination as Evidence of Bad Faith

Plaintiffs attempt to show bad faith through reliance on evidence of predetermination and evidence that the road was being constructed to promote economic development.[6] Defendants counter that agency officials do not need to maintain impartiality, only that they need to remain objective in evaluating their

---

4. "Although not currently privy to the entire administrative record, the predetermination of the location of the exit interchange was of such a blatant character that the Plaintiffs have been able to obtain evidence of predetermination from the files of the highway agencies as early as mid-1995." (Pl. Br. in Supp. Mot. Lim. Disc. at 14.)

5. This is not to say that the evidence of predetermination necessarily constitutes a "strong showing" of bad faith, as discussed *infra*.

6. The stated purpose of the demonstration project was to "provide access to Chambersburg, Pennsylvania, and relieve traffic congestion on an existing interchange on such interstate route." Pub. L. No. 100-17, § 149(a)(74), 101 Stat. 132, 192 (April 2, 1987). Plaintiffs' contend that evidence of the decision-makers' concurrent intent to promote economic development, therefore, suggests bad faith on their part. However, Plaintiffs' provide no legal authority for this position, and refer to it in passing. Accordingly, the court will not address this argument.

project. *See Environmental Defense Fund v. United States Army Corps of Eng'rs*, 470 F.2d 289, 295-96 (8th Cir. 1972) (recognizing inevitable institutional bias when agencies propose a project, but highlighting that NEPA creates procedural requirements "to insure that 'there is no way [the decision- maker] can fail to note the facts and understand the very serious arguments advanced by the plaintiffs if he carefully reviews the entire environmental impact statement' ") (citations omitted). Defendants characterize the evidence of predetermination as akin to "expressions of confidence" that the Walker Road site would be chosen. In both *Coalition Against a Raised Highway*, 835 F.2d at 808, and *Presidio Golf Course*, 155 F.3d at 1161, other circuit courts have characterized evidence of predetermination as "expressions of confidence" in a certain outcome.

  The court agrees with Plaintiffs that the facts of *Coalition Against a Raised Highway* differ from the instant action. In that case, the proffered evidence of predetermination was communications that an alternative project was unfeasible. 835 F.2d at 808.[7] None of the evidence of predetermination presented by Plaintiffs

---

7. A letter in the administrative record in that case stated that the agency should have some facts and figures on an alternate project but that the agency official did "not think that this is an inappropriate expenditure of project funds as this alternative must be sufficiently developed to be eliminated in the EIS anyway, and most of this work is already done." *Id.* The letter also stated that "the FHWA position is firmly against changing to [an alternative project]. It would severely limit the benefits of the proposed highway from a local service standpoint and the overall integrity of the Interstate system." *Id.*

  The plaintiffs in *Coalition Against Raised Highways* also provided minutes from an agency meeting that stated:
> The question was raised if [sic] the State should ask the Consultants to make any studies of the [alternative project] at this time. After some discussion, it was decided that the Highway Department should provide traffic projections for [the alternative project] and allow the Consultants to make very cursory studies of the feasibility of the concept. This information would be kept in house for the use of decision makers in the event that the question of the

(continued...)

11

in the instant motion discusses the infeasibility of alternative action. Instead, it all points to a preference for putting Exit 7 at the Walker Road site.

However, Plaintiffs' attempt to differentiate *Presidio Golf Course* is less persuasive. *Presidio Golf Club* involved a challenge by a private golf club to the National Park Service's construction of a public golf clubhouse near the private club's century-old clubhouse. The Plaintiffs challenged that action under both NEPA and NHPA. The plaintiffs claimed that the Park Service had tailored the NEPA process to insure a finding of no significant impact.[8] *Presidio Golf Club*, 155 F.3d at 1161. The statements from the administrative record highlighted by the plaintiffs in *Presidio Golf Club* included: (1) "NEPA compliance will end with the [Park Service] preparation and approval of a Finding of No Significant Impact (FONSI);" and (2) the environmental analysis schedule that listed the last step as "Approval by [the National Park Service]" which was followed by an arrow pointing to a printed notation, "FONSI." *Id.*[9]

---

7. (...continued)
   viability of [the alternative] should resurface in the future.
*Id.* Finally, the plaintiffs there presented another letter stating that a consultant would investigate an alternative "and document this option to the point where it can be proven unfeasible." *Id.*

8. To satisfy NEPA, "[a]n [environmental analysis] must '[b]riefly provide sufficient evidence and analysis' to determine whether the agency must prepare an EIS or, in the alternative, issue a finding of no significant impact ('FONSI'). 40 C.F.R. § 1508.9(a)(1). A FONSI is a document issued in conjunction with an [environmental analysis] that 'briefly present[s] the reasons why an action ... will not have a significant effect on the human environment and for which an [EIS] therefore will not be prepared.' *Id.* at § 1508.13." *Id.* at 1160.

9. The court in *Presidio Golf Club* indicates that there were seven instances of evidence of alleged predetermination in the administrative record, but the court only elaborates upon these two statements. *Id.*

12

The court in *Presidio Golf Club* found that these statements reflected "a confidence on the part of the Park Service that the proposed plan would be adopted, which is permissible." *Id.* (citing *Coalition Against a Raised Expressway* 835 F.2d at 808; *Environmental Defense Fund*, 492 F.2d at 1129 ("letters [that] convey a spirit of confidence on the part of the writer that the project would be found to be acceptable environmentally" found compatible with intent "to give the fullest possible consideration to the environmental consequences of the project under NEPA")). Unlike the statements in *Coalition Against a Raised Highway*, the statements in *Presidio Golf* were not simply addressing the infeasibility of certain alternatives. The defendants there exhibited a preference to build a public clubhouse near the private one. However, that preference, even in combination with expressions of confidence that NEPA's procedural requirements could be met was insufficient for the reviewing court to find that NEPA had been violated by the decision to build.

The court finds that *Presidio Golf* is persuasive and factually applicable to the instant action, Plaintiffs present evidence that Defendants had a preference for building the interchange at the Walker Road site. *See supra* section III.B. Plaintiffs also present evidence that Yerusalim stated that "[i]t is [PennDOT's] intention to satisfy the environmental requirements" to doing so. (Pl. Ex. 1-A.) While Plaintiffs interpret this statement as indicative of bad faith, it may simply be a statement of confidence that PennDOT *could* satisfy NEPA requirements. Whether or not Defendants actually did satisfy these requirements remains the subject of this litigation. However, the mere allegation of predetermination does not satisfy the

13

requirement that there be a "strong showing of bad faith" in order to allow discovery outside of the administrative record. *See Overton Park*, 401 U.S. at 420.

Also persuasive to the court is the Second Circuit's holding in *National Audubon Soc'y v. Hoffman*, 132 F.3d 7, 16 (2d Cir. 1997). There the court was presented with actual evidence from a National Forest Service employee that the Forest Service had trained employees to circumvent NEPA's procedural requirements. *Id.* To this court, such training would clearly indicate bad faith on the part of the agency. However, the Second Circuit also had before it affidavits of other employees stating that the training had been misinterpreted. *Id.* The court found that the plaintiffs' evidence was insufficient to meet the "strong showing" necessary to establish bad faith. *Id.* While Plaintiffs in the instant action provide more than one affidavit in support of its position, the evidence they present is less probative of bad faith on the part of the decision-makers in the interchange project than was the evidence in *National Audobon Society*. Accordingly, the court will deny Plaintiffs' motion for limited discovery in addition to the administrative record. An appropriate order will issue.

### IV.        Conclusion

The general rule for judicial review of administrative action is that the court should limit its focus to the administrative record, absent a strong showing of bad faith or reliance upon extra-record considerations. Plaintiffs have indicated to the court that the administrative record is replete with evidence of predetermination in support of their claim. However, evidence of predetermination or even preference for a certain outcome on the part of an agency alone does not constitute a strong

14

showing of bad faith that warrants allowing discovery outside of the administrative record. Therefore, the court will deny Plaintiffs' motion for extra-record discovery. An appropriate order will issue.

                                                              SYLVIA H. RAMBO
                                                              United States District Judge

Dated: October  17 , 2001.

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

* * MAILING CERTIFICATE OF CLERK * *

Re:  1:01-cv-00910    Greene/Guilford Envi v. Wykle

True and correct copies of the attached were mailed by the clerk to the following:

Thomas Alan Linzey, Esq.
Community Environmental Legal Defense Fund (CELDF)
2859 Scotland Road
Chambersburg, PA  17201

Anne K. Fiorenza, Esq.
Assistant U.S. Attorney
U.S. Attorney's Office
228 Walnut Street
Harrisburg, PA  17108

Kenda Gardner, Esq.
PA Department of Transportation
Office of Chief Counsel
Post Office Box 8212
Harrisburg, PA  17105-8212

Robert J. Shea, Esq.
Office of Chief Counsel
Pennsylvania Dept. of Transportation
555 Walnut Street
Harrisburg, PA  17101-1900


cc:
| | | | |
|---|---|---|---|
| Judge | (X) | ( ) | Pro Se Law Clerk |
| Magistrate Judge | ( ) | ( ) | INS |
| Warden | ( ) | | |
| Bureau of Prisons | ( ) | | |
| Ct Reporter | ( ) | | |
| Ctroom Deputy | ( ) | | |
| Orig-Security | ( ) | | |
| Federal Public Defender | ( ) | | |
| Standard Order 93-5 | ( ) | | |
| Other_____ | ( ) | | |

MARY E. D'ANDREA, Clerk

DATE: October 17th, 2001                    BY: _____
                                                  Deputy Clerk