## UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GREENE/GUILFORD ENVIRONMENTAL       :
ASSOCIATION, a non-profit corporation :
incorporated under the laws of the   :
Commonwealth of Pennsylvania, CITIZENS :
FOR PLANNED COMMUNITY GROWTH,        :
an unincorporated association organized :    CIVIL ACTION NO.
under the laws of the Commonwealth of :    1:CV-01-0910
Pennsylvania, PAUL B. AMBROSE, JOHN G. :
ENDERS, CHARLES F. RAHAUSER, BETSY   :    (Judge Rambo)
RAHAUSER, DOUGLAS A. WARNOCK, U.X.    :
VAGNERINI, THOMAS W. BUNDY,           :
STEPHEN P. BUCHER, ROGER J.           :
ROBERTSON, JAMES A. STRITE, JR., DAVID :
A. GUTHRIE,                          :
        Plaintiffs        :
                           :
        v.                :
                           :
KEN WYKLE, Administrator, Federal     :
Highway Administration, ROBERT GATZ,  :
Federal Highway Administration,       :
        Defendants        :
                           :
        and               :
                           :
BRADLEY L. MALLORY, Secretary for     :
The Department of Transportation,     :
Commonwealth of Pennsylvania,         :
        Intervenor.       :

**FILED**
**HARRISBURG**

JAN 0 7 2002

MARY E. D'ANDREA, CLERK
Per_____
        DEPUTY CLERK

### DEFENDANTS' AND INTERVENOR'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

**I.    INTRODUCTION**

Plaintiffs filed this action to challenge the Federal

Highway Administration's (FHWA) approval of Alternative D

Modified (Walker Road) for the I-81 Interchange project located

in Franklin County, Pennsylvania.  Plaintiffs claim that FHWA

failed to comply with the National Environmental Policy Act
(NEPA) and the National Historic Preservation Act (NHPA).
Plaintiffs are opposed to an interchange located at Walker Road.

As part of the study and approval process, Defendants
prepared a Draft Environmental Impact Statement (DEIS) dated May
1994, a Final Environmental Impact Statement (FEIS) dated May
1995, a re-evaluation of the FEIS dated January 1999 (1999 re-
evaluation), a Record of Decision (ROD), a re-evaluation of the
ROD dated June 2001 (2001 re-evaluation) and other technical
documents.  These documents, in addition to technical support
data and a voluminous correspondence file, are a part of the
administrative record, which forms the basis of this Court's
review.  Defendants filed the administrative record, twelve boxes
of documents, for this project on September 28, 2001.

Plaintiffs first attempted to circumvent the administrative
record rule by filing a motion for limited discovery on or about
August 30, 2001. The Court denied the motion on October 17, 2001.
Apparently dissatisfied with the Court's ruling, on October 31,
2001, plaintiffs faxed a list of documents (64 items) to FHWA's
counsel requesting defendants' assent to supplement the record.
Plaintiffs did not provide copies of the documents included on
that list.  FHWA conducted a lengthy search of the existing
records and files and responded to each item on November 20,
2001. (Ex. A)  Plaintiffs then filed this motion to supplement

2

the administrative record on or about December 13, 2001.
Defendants and intervenor (hereinafter, collectively,
"defendants") jointly file this response in opposition to the
motion.

II.  **ARGUMENT**

    **A.  The appropriate standard of review under NEPA.**

    Judicial review under NEPA is governed by the Administrative
Procedure Act (APA).  5 U.S.C. §701 et seq.  A reviewing court
may only hold unlawful an agency decision if it is arbitrary,
capricious, or otherwise not in accordance with the law.
Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402,
416 (1971); Baltimore Gas & Electric Co. v. Natural Resources
Defense Council, Inc., 462 U.S. 87, 97-98 (1983); Clairton
Sportsmen's Club v. Pa. Turnpike Comm'n, 882 F. Supp. 455, 466
(W.D. Pa. 1995); Ashwood Manor Civic Ass'n v. Dole, 619 F. Supp.
52, 82 (E.D. Pa  1985), aff'd 779 F.2d 41 (3d Cir. 1990), cert.
den. 475 U.S. 1082 (1986); Philadelphia Council of Neighborhood
Ass'n v. Coleman, 437 F. Supp. 1341, 1346 (E.D. Pa. 1977).
Plaintiffs continue to erroneously state that the standard of
review adopted by the Third Circuit is a reasonableness standard.
The Third Circuit has applied the arbitrary and capricious
standard of review in deciding NHPA and NEPA actions, including
whether a supplemental EIS is necessary.  Society Hill, 210 F.3d
168, 178-79(3d Cir. 2000) citing Marsh v. Oregon Natural

Resources Council, 490 U.S. 360 (1989); <u>Concerned Citizens</u>
<u>Alliance, Inc. v. Slater</u>, 176 F.3d 686, 705 (3d Cir. 1999).  It
is this standard which should be applied in the instant action.

    **B.  The Court's review should be limited to the**
**administrative record and extra-record documents should not be**
**permitted.**

    In their latest motion, plaintiffs are asking the Court to
supplement the administrative record with sixty-one (61) items.
FHWA has already agreed to add the following five documents to
the administrative record: (1) the 1977 Franklin County
Comprehensive Plan (paragraph 1 of motion); (2) the missing pages
of the January 24, 1989 public meeting even though the document
was improperly copied and not before the FHWA (paragraph 6 of
motion); (3) FHWA e-mail from January, 1999 to June 28, 2001 that
is not privileged to the extent that the e-mail exists (paragraph
4 of motion); (4) the missing page to July 8, 1994 letter from
Barry Hoffman to Ronald Huber (paragraph 24 of motion), which was
inadvertently omitted while photocopying the original files; and
(5) February 10, 1995 letter to Bill from Seppo.[1]  The following
fourteen (14) items requested by plaintiffs were actually located
in the administrative record or do not exist and defendants
informed plaintiffs by their letter of November 20:

---

[1]    FHWA's counsel agreed to supplement the record with items 1
through 5 in its November 20, 2001 letter.

| No. | Description of Document in Request to Supplement | Corresponding Paragraph in Plaintiffs' Motion | Location in the Administrative Record |
|---|---|---|---|
| 1. | Correspondence outlining reasons not to prepare an SEIS | Paragraph 3 | AR-80, the 1999 Re-Evaluation |
| 2. | Pre-May, 1990 historic and/or cultural resource study | Paragraph 10 | AR-3 at 115 is the study |
| 3. | Document evidencing the completion date of the "Plan of Study" which is undated. | Paragraph 11 | After reasonable investigation, no document is known to exist |
| 4. | Document supporting statement made in AR-91 at 113, ¶ 14 "recent interpretation of Act 61 by FHWA, PennDOT, and PA Turnpike Commission | Paragraph 12 | After reasonable investigation, no document is known to exist |
| 5. | April 7, 1998 message from Heimbach to USDA | Paragraph 20 | AR-139 at 56-61 |
| 6. | Kober/Bowser memo dated August 2, 1993 | Paragraph 26 | AR-91 at 118 |
| 7. | Shuster updates prepared by FHWA | Paragraph 37 | AR-95 at 235, 426; AR-96 at 742; AR-98 at 1196; AR-100 at 1731; AR-101 at 1979; AR-102 at 122; AR-103 at 285; AR-104 at 115 |
| 8. | Progress Report filed by Orth Rodgers | Paragraph 42 | AR-95 at 386, AR-26 only one report was completed |
| 9. | Attachment to July 13, 1992 letter from Representative Shuster | Paragraph 44 | AR-90 at 22 |

| 10. | November 16, 200 and December 29, 2000 letters involving Skelly and Loy | Paragraph 45 | AR-138 at 120; AR-139 at 588 |
|---|---|---|---|
| 11. | Traffic studies for Route 30 improvements | Paragraph 47 | AR-95 at 448-59; AR-115 through AR-130 |
| 12. | January 19, 1996 memorandum from Keazer of FHWA to Gibbs | Paragraph 52 | AR-107 at 677 |
| 13. | March 1, 1995 memorandum from Rodney Slater of FHWA | Paragraph 53 | AR-107 at 677 |
| 14. | June 30, 1993 letter from FHWA to Greene Township | Paragraph 59 | AR-91 at 97 |

The remainder of the documents requested by plaintiffs are either extra-record documents, because the documents were not before FHWA at the time the decision was made (i.e., the ROD and MOA were signed[2]) or because they are agency work product and not normally made a part of the record.[3] The extra-record documents include: (1) contracts, work orders, proposals, and advertisements; (2) documents relating to the proceeding before

---

[2]    The Record of Decision ("ROD") is the end product of the NEPA process; the Memorandum of Agreement ("MOA") is the end product of the National Historic Preservation Act process.

[3]    Many of the items contained in plaintiffs' motion are not contained in plaintiffs' attachment to their motion.  The items not attached include the following paragraphs 1-15, 17-18, 22, 24, 26, 29-42, 44-48, 50-53, 55, and 58.  In fact, only 16 of the 61 items are attached. In some cases, plaintiffs are not even sure if the documents exist.  For example, paragraph 5 and 51 ask for PennDOT e-mail.  Paragraph 5 and 51 basically amount to a request for production of document and this court has held that discovery is impermissible in administrative record cases.

the Agricultural Lands Condemnation and Assessment Board (ALCAB);
(3) correspondence between PennDOT personnel that FHWA was not
copied; (4) PennDOT Twelve Year Plans for 1987 through 1989; (5)
various PennDOT publications which provide guidance; (6) traffic
studies from other projects that were not considered by FHWA when
issuing the ROD for this project; and (7) a newspaper article.

Paragraphs 2, 15, 54, 55, 56, and 57 of plaintiffs' motion
involve contracting issues with the consultants that performed
the studies for the project.  Paragraph 23 was a letter written
in response to a request under the Freedom of Information Act
(FOIA).  The consultant contracts, work orders, proposals,
advertisements and FHWA's responses to FOIA requests were not
considered by FHWA in reaching the decision documented in the ROD
and MOA.

Paragraphs 8, 14, 29, and 46 of plaintiffs' motion involve
documents produced for the proceeding before ALCAB.  First, the
proceeding before ALCAB is required by state law to condemn
productive agricultural lands.  The Federal Highway
Administration (FHWA) played no role in this state proceeding and
was never copied on any of the documentation filed for this
proceeding including the Farmland Assessment Report.  Second, the
Record of Decision (ROD) was issued on March 25, 1999 and the
ALCAB hearing occurred in May of 2001.  The documents requested

7

in paragraphs 8[4], 14, and 46 were completed well after the ROD was issued.  The ALCAB decision was forwarded to FHWA to inform FHWA that PennDOT had the authority to condemn the productive agricultural land required for the project.  If PennDOT was unable to obtain ALCAB approval or was unable to reach an amicable purchase of the productive agricultural lands, FHWA would have had to condemn the property for the project.

Paragraphs 5, 17, 18, 25, 27, 28, 43, 51, 58, 60, and 61 of plaintiffs' motion involve correspondence which was not addressed to FHWA, authored by FHWA, or on which FHWA was not copied.[5] The June 1, 1994 memorandum (paragraph 23) does not even reference the I-81 Interchange project.  Therefore, these documents were not before FHWA.

Paragraphs 30 through 34 involve PennDOT planning documents, paragraphs 36 and 38 through 41 involve PennDOT publications, and paragraph 48 is a newspaper article.  None of these documents were before the federal decision-maker when issuing the ROD.

---

[4]    PennDOT does not have the transcripts from the ALCAB proceeding.  Moreover, any testimony from this proceeding would be extra-record testimony.  Nobody from FHWA testified at this hearing. Testimony from the ALCAB proceeding would be subject to the same analysis as plaintiffs' motion for discovery in the form of depositions which was denied by the court.  See Memorandum Opinion by Judge Rambo.

[5]    Plaintiffs did not attach any documents to its motion regarding paragraphs 5, 17, 18, 51, and 58.  Therefore, to the best of FHWA's knowledge, FHWA was not copied with these documents.

Moreover, the PennDOT publications are merely guidance documents and are not legally enforceable.  Klinger v. Yamaha Motor Corp., 738 F. Supp. 898 (E.D. Pa. 1990).

Finally, paragraphs 13 and 49 involve studies completed for the Route 30 project, which is not at issue in this litigation. Studies completed for the Route 30 project were not before the federal decision-maker in issuing the ROD for the I-81 Interchange project.  However, the effects of traffic were considered in the traffic studies completed for the I-81 Interchange project.  (AR-46 at IV-68-69, IV-82-89; AR-46, App. B at 78-79, 82-83, 86-89, 91, 93, 95-97.)

Judicial review under the NEPA and NHPA is based solely on a review of the administrative record that was before the decision-makers at the time the relevant determinations were made. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971); Vermont Yankee Nuclear Power Corp. Inc., 435 U.S. at 549; Don't Ruin Our Park v. Stone, 749 F. Supp. 1388 (M.D. Pa. 1990)(Rambo, J.), aff'd, 931 F.2d 49 (3d Cir. 1990).  In Camp v. Pitts, 411 U.S. 138, 142 (1973), the Supreme Court stated "[t]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."  In Florida Power & Light Co. v. United States Nuclear Regulatory Comm'n, 470 U.S. 729, 743-44 (1985), the Supreme Court again reiterated its holdings from Overton Park

and <u>Pitts</u>.  "The task of the reviewing court is to apply the appropriate APA standard of review . . . to the agency decision based on the record the agency presents to the reviewing court." <u>Id.</u> at 743-44.  Thus, in accordance with the standards laid out by the Supreme Court, a district court reviewing an agency decision acts like an appellate court -- the court does not hear or take evidence beyond that which is contained in the administrative record.  <u>William Cronin v. United States Dep't of Agric.</u>, 919 F. 2d 439, 443 (7th Cir. 1990).

The Third Circuit and the federal district courts in Pennsylvania have repeatedly limited appeals of agency decisions under the APA to the administrative record that was before the agency at the time the relevant determinations were made.  In <u>Twiggs v. United States Small Business Admin.</u>, 541 F.2d 150, 152 (3d cir. 1976), the Third Circuit remanded the case to the district court because the district court, in rendering its decision, considered a deposition taken after the final agency decision was issued.  The Court of Appeals found that the trial court erred in considering extra record evidence.  In <u>Dry Color Manufacturers' Ass'n v. Dep't of Labor</u>, 486 F.2d 98 (3d Cir. 1973), the Third Circuit did not allow OSHA to rely on an expert report in support of its position because the report was not included in the administrative record.  In <u>Pa. Protect Our Water v. Appalachian Regional Comm.</u>, 574 F. Supp. 1203, 1215 (M.D. Pa.

1982) (Rambo, J.), <u>aff'd</u> per curiam, sub nom, <u>Borough of Moosic v. Appalachian Reg'l Comm.</u>, 720 F. 2d 659 (3d Cir. 1983), the trial court disregarded the testimony of plaintiffs' and defendants' witnesses to the extent that the substance of their testimony did not appear in the administrative record, and the court did not rely on any exhibit that did not appear in the record.  In <u>Philadelphia Council of Neighborhood Ass'n</u>, 437 F. Supp. at 1348-50, the trial court (considering cross motions for summary judgment) relied strictly on the administrative record and did not allow the plaintiffs to introduce any matters outside of the record.   <u>See also</u>, <u>Lake Erie Alliance for the Protection of the Coastal Corridor v. United States Army Corps of Eng'rs</u>, 526 F. Supp. 1063, 1068 (W.D. Pa 1981), and <u>Don't Ruin Our Park</u>, 749 F. Supp. 1388 (M.D. Pa. 1990), <u>aff'd</u> 931 F.2d 49 (3d Cir. 1990).

    The Supreme Court has recognized only two exceptions to the well-settled administrative record rule:  (1) a federal district court may require some explanation if the bare record does not disclose the factors considered by the agency or the decision-maker's construction of the evidence, and (2) where there is a strong showing of bad faith or improper behavior.  <u>Overton Park</u>, 401 U.S. at 420.  This Court has held that neither of these exceptions apply to the present case.  <u>See</u> October 21, 2001 Memorandum Decision by Judge Rambo at 14-15.

11

As discussed in detail above paragraphs 2, 5, 8, 13-15, 17-18, 23, 25, 29-36, 38-41, 43, 46, 48-51, 54-58, and 60-61 are extra-record documents because these documents were not before FHWA in rendering the ROD for the I-81 Interchange project. Therefore, according to the administrative record rule, the Court should deny a request to supplement the administrative record with these documents.

**C.  Cases cited by Plaintiffs support Defendants' position that review should be limited to the administrative record and that supplementation should not be permitted.**

The cases cited by plaintiffs actually support defendants' position that extra-record evidence and/or discovery should not be permitted.  Plaintiffs erroneously cite these cases to support their contention that extra-record testimony was allowed: James Madison Ltd. ex rel. Hecht v. Ludwig, 82 F.3d 1085, 1095-96 (D.C. Cir. 1996), cert. denied 117 S.Ct. 737 (1997); National Audubon Society v. Hoffman, 132 F.3d 7 (2d Cir. 1997); and Sierra Club v. Slater, 120 F.3d 623 (6th Cir. 1997).

In James Madison, the court held that the administrative record includes all materials **"compiled" by the agency** that were "before the agency **at the time the decision was made**".  82 F.3d at 1095 (emphasis added)(quoting Overton Park, 91 S.Ct. at 825). The court found that plaintiffs failed to demonstrate the existence of any of the factors recognized as requiring the court to supplement the record: plaintiffs failed to contend that the

12

agency deliberately or negligently excluded documents that may
have been adverse to its decision and failed to show that court
needed background information in order to determine whether the
agency considered all of the relevant factors.  Id.  The court
found that the record contained detailed, contemporaneous reports
from the examiner explaining how and why they reached their
conclusions.  Id.  Therefore, the court did not permit
supplementation.

James Madison is analogous to this case.  Plaintiffs do not
allege that the agency deliberately or negligently excluded
documents adverse to its position or that the court needed
background information.  In fact, the majority of documents in
plaintiffs' request for supplementation were not even before
FHWA.  The record for the I-81 Interchange project consists of
twelve boxes of documents, including the EIS's, the re-
evaluations, the ROD, Determination of Effects Reports, the MOA,
reports on other technical studies performed, and correspondence.
As in James Madison, the record adequately explains how and why
FHWA reached its decision.

In Sierra Club, 120 F.3d at 638-39, the Court of Appeals
affirmed the district court's partial denial of a motion to
supplement, and found that "plaintiffs have failed to point to a
single factor that would suggest the administrative record was
inadequate for an assessment of their claims."  Finally, in

National Audubon Society, 132 F.3d at 15-16, the court held that it was improper to supplement the record with affidavits and memoranda. "Supplementation of that record upon remand to the agency may be necessary when the record does not support the agency action, when the agency has not considered all relevant factors, or when the reviewing court simply cannot evaluate the challenged action on the basis of the record before it." Id. None of these factors occur in the present case.

**D. The draft documents requested by plaintiffs should be excluded.**

In paragraphs 7, 21, 22, 27, 28, and 35, plaintiffs request various draft documents to be included in the administrative record. Two of these draft documents (paragraphs 27 and 28) are correspondence between PennDOT and Congressman Shuster; FHWA was not copied on the final letter. Paragraph 7 is a draft Section 4(f) document that was never presented to FHWA; a Section 4(f) evaluation was not needed since the project did not involve the use of historic resources.[6]

Draft documents show the mental processes and/or deliberative process of the decision makers. The Supreme Court held in Overton Park, 401 U.S. at 420: "[I]nquiry into the mental processes of administrative decision makers is usually to be

---

[6]    Section 4(f) evaluations are required under 49 U.S.C.A. Section 303(a). Plaintiffs complaint does not bring any challenges under Section 4(f).

14

avoided." Moreover, the only drafts of the Record of Decision ("ROD") which exist are not agency documents. The agency employee who was responsible for assembling the ROD has a number of personal drafts stored in her computer. These were not circulated for review by anyone in the agency; rather, they reflect her personal changes as she prepared a document for circulation. If agency employees are required to retain and produce every draft ever prepared of every document which ultimately becomes part of the administrative record, the twelve boxes which now comprise this administrative record will be multiplied; indeed the storage problems for the Court if even a few of these cases are ongoing at one time could be debilitating.

III. **CONCLUSION**

Accordingly, review of agency action is limited to an examination of the record compiled by FHWA at the time it made its decision and excludes evidence that was not presented to FHWA. This appellate type of function for the court is a reason why the courts limit the evidence to the administrative record compiled by FHWA. The United States Federal Highway Administration and the Pennsylvania Department of Transportation respectfully request this Court to deny plaintiffs' motion for limited discovery and limit review of this case to the administrative record.

Respectfully submitted,

MARTIN C. CARLSON
United States Attorney

*ANNE K. FIORENZA*

ANNE K. FIORENZA
Assistant United States Attorney
Federal Building - 2nd Floor
228 Walnut Street
P.O. Box 11754
Harrisburg, PA  17108-1754

*Kenda Jo M. Gardner, AICP*

KENDA JO M. GARDNER
Assistant Counsel
JOHN M. HRUBOVCAK
Assistant Counsel-in-Charge
ROBERT J. SHEA
Assistant Chief Counsel
ANDREW S. GORDON
Chief Counsel
Office of Chief Counsel
Pennsylvania Department of
   Transportation
Commonwealth of Pennsylvania
P.O. Box 8212
Harrisburg, PA  17190

16

# EXHIBIT "A"





**U.S. Department of Justice**

*United States Attorney's Office*
*Middle District of Pennsylvania*

---

*Federal Building, Suite 220*
*P.O. Box 11754*
*228 Walnut Street*                                  *717-221-4482*
*Harrisburg, Pennsylvania  17108-1754*    *FAX 717-221-4582*


November 20, 2001


Thomas Alan Linzey, Esquire
Community Environmental Legal Defense Fund
2859 Scotland Road
Chambersburg, PA  17201

     **RE:   Greene/Guilford Environmental Association v. Ken Wykle,**
              **Administrator, Federal Highway Administration, Robert Gatz,**
              **Federal Highway Administration**
              **Civil Action No.:  1-CV-01-0910**
              **(Judge Rambo)**


Dear Mr. Lindzey:

     I have reviewed your request to supplement the administrative record, and will respond item by item.  Any agreement to supplement,  or to allow you to supplement the administrative record should not be construed as a waiver of any objection or assertion of privilege.

1.  1977 Franklin County Comprehensive Plan.  Yes.
     The document has not been located in the Federal Highway Administration's ("FHWA") files but we do not object to your request to supplement the record with this document.

2.  Contracts and Work Orders between defendants and Archaeological & Historic Consultants.  No.
     Contracts and Work Orders are not typically included in the Administrative Record; FHWA does not consider these documents as part of its environmental review.

3. Documents outlining reasons for decision not to prepare a Supplemental EIS. No.

    The reevaluation, which is already a part of the Administrative Record ("AR"), is the justification to prepare, or not to prepare the Supplemental EIS. See also AR-96, p. 0755-0760 (4/17/95 memo from PennDot to FHWA)

4. FHWA email from 1/99 to 6/28/01. Yes.

    The FHWA does not download email for retention unless it is under a FOIA request. There was no relevant FOIA request for this period. Email is generally retained in the system for only three months before ir is purged. To the extent that email communications exist, which are relevant but not privileged, we would agree to attach them to the AR.

5. Email communication between PennDot employees. No.

    The AR reflects information used by the FHWA to reach and support its decision in this matter. Email communications between and among PennDot employees are not a part of this process and were not before the decision maker.

6. Missing pages of a PennDot public meeting. Yes.

    These pages were improperly photocopied and were never before the decision maker. Nevertheless, we will try to locate a complete document for the record.

7. Draft 4(f) statement. No.

    This document was never before the FHWA. According to the minutes included in the administrative record, the consultant prepared a draft which would only be distributed if the Keeper of the Register upheld her decision. The draft later proved unnecessary.

8. Transcript of May 2000 ALCAP hearing. No.

    PennDot, and not the FHWA, was a party to this proceeding. PennDot did not order a transcript. The content of the hearing, therefore, was not before the decision maker.

9. Map of "potential avoidance alternative." No.

    This is apparently a reference to a map which was used was apparently used at a management team meeting. There is no indication that it was distributed as a handout. It was not before the decision maker .

10. Pre-May 1990 historic and/or cultural resources study. No.

    The information cited at AR-3, p.115 is the study (that is, background research); there is no separate document.

11.  Missing pages from letter between Jeff Greene and Bill Greene.  No.
    There are no pages missing; there is merely a typographical error.   The signed cover letter is page 1 and page 2 is the attached information.

12.  Document evidencing completion date of study.   No.
    No such document is known to exist.  The document was completed between kickoff meeting and the first public meeting,  based on information provided in AR-85, bottom of page 18 and top of 19.

13.  Policy document re: interpretation of Act 61.   No.
    The cited document in the AR refers to "recent interpretation."  We do not know if it is a "policy" or a "document".  There is , however, no indication in the record that there is an actual document.

14.  Wal-Mart Impact Study.  No.
    This document was never before FHWA. The reference in the AR seems to indicate that the document was acquired by a consultant during a municipality visit.

15.  Transcript of "Cultural Resources Group" meeting.   No.
    This document does not exist.

16.  Emails withheld from FOIA request.   No.
    These emails are subject to the attorney-client privilege, as asserted during the FOIA process.

17.  Farmland Assessment Report.  No.
    This was not part of the record and was never produced to FHWA.

18.  Commonwealth court and Supreme Court ruling.  No.
    FHWA was not a party to the state proceedings.  Decisions are a matter of public record.

19.  Work Orders and Contracts.  No.
    Contracts and Work Orders are not typically included in the Administrative Record; FHWA does not consider these documents as part of its environmental review.

20.  February 10, 1995 letter from "Bill" to "Seppo."  No.
    This document cannot be located in the FHWA records.  If plaintiffs have a copy of the document, please provide it and we will consider whether it is appropriately part of the AR.

21. August 19, 1996 letter from Santorum to Shull.   No.
    See answer to 20.

22. November 21, 1996 letter from Santorum to Stevenson.   No.
    See answer to 20.

23. June 4, 1998 Memorandum.   No.
    See answer to 20.

24. April 7. 1998 message form Heimbach to USDA.  Yes.
    This document can be found at AR-139, p. 56-61.

25. Announcement from Pennsylvania Bulletin.  No.
    This document is part of the public record.  See answer to 18.

26. Drafts of ROD.  No.
    Drafts are not typically included in administrative record, absent a specific reason
to do so.   Any such draft would also be subject to the deliberative process privilege.

27. August 1998 version of "Mitigation Measures."  No.
    This is also a request for a draft of a document   See answer to 26.

28. October 7, 1998 letter from Carmichael to Szajna.  No.
    The letter is not found in the AR.  Moreover, FOIA requests are not typically
included in the AR.

29. Missing page 2.  Yes.
    Copy attached.  Page 2 was inadvertently omitted while photocopying original
files.

30. June 1, 1994 communication from Nace to Huber.  Yes and No.
    The Policy Statement can be found at AR-86, p.4.  The letter not included in
FHWA files.  See answer to 20.

31. Kober/Bowser  memo dated August 2, 1993.  Yes.
    The document can be found at AR-91, p. 118.

32. Draft Letter from Yerusalim to Shuster dated June 5, 1992.  No.
    This document was not found in FHWA files.  These is no reason why FHWA
would have PennDot's draft of a letter.

33. Draft Letter from Yerusalim to Shuster dated May 29, 1992.  No.
      See answer to 32.

34. Draft Farmlands Assessment Report.  No.
      This report relates to the ALCAB proceeding to which FHWA was not a party.
FHWA would not have draft of this document.

35. October 23, 1987  Twelve Year Program.    No.
      This is not a FHWA document.  It was not before the decision maker.

36. See 35.

37. See 35.

38. See 35.

39. See 35.

40. Original Draft of Addendum to Criteria Effect Report.  No.
      The original does not exist in FHWA files.  It was therefore not before the decision
maker.  (A copy has been located in the district files and will be forwarded for your
information, but there is no indication it was ever transmitted to FHWA.)

41. PennDot Design Manual.  No.
      This is a PennDot document, not before the FHWA. At the time of its decision.

42. Monthly Shuster Updates. No.
      These "updates" were not before the decision maker; moreover, FHWA does not
know if "updates" provided to a congressman were prepared as a document or merely as a
phone call.

43. PennDot Pub 349.  No.
      See answer to 41.

44. PennDot Pub 319.  No.
      See answer to 41.

45. PennDot Pub 278.    No.
      See answer to 41.

46. PennDot Pub 324.  No.
    See answer to 41.

47. Progress Reports filed by Orth-Rogers.  No.
    These reports, if they exist, were not before FHWA.  In the normal course, progress reports would be given to PennDot but would not be part of the administrative record.

48. Letter Fike/Hoffman.  No.
    This is a letter to PennDot , not located in the FHWA files.  It was not before the decision maker.

49. Attachment to Shuster/Yerusalem letter.  Yes.
    AR-90, p.22

50. Heimbach letters.  Yes.
    November 16, 2000 letter from Skelly and Loy to Whites found at AR-138, p. 120. Letter from Salzmann and DePaulis to Skelly and Loy re: Gabler Far found at AR-139, p. 588.

51. Pre-Hearing Memoranda-ALCAB.  No.
    FHWA was not a party to the ALCAB proceedings.  The memoranda was, therefore, not before the decision maker.

52. Traffic Counts.  Yes.
    These can be found at AR-156, p. 101-229.

53. Traffic Studies – Route 30.  Yes.
    Route 30 traffic data can be found at AR-95, p. 448-459.  Route 30 studied as part of I-81 traffic studies, AR-115 to AR-130.

54. Newpaper Article.  No.
    This article was not before the decisionmaker.

55. Project Locations Study . No.
    This document was not located in the AR, nor could it be located in the PennDot district office files.  These is not indication is was before the decision maker.

56. Subdivision Plans.  No.
    Plans for this time period were not before the decision maker.

57. Emails between Shuster and FHWA/PennDot.  No.
    These are not found in the administrative record.

58. Keazer/Gibbs memorandum.  Yes.
    This can be found at AR-107, p. 677.

59. Slater/Gendell Memorandum.  Yes.
    This can be found at AR-95, p. 519.

60. Work Order Proposals.  No.
    These proposals were submitted to PennDot and not to FHWA, and were not
before the decision maker.

61. Advertisement prepared by PennDot and FHWA..  No.
    This advertisement was  not before the decision maker as part of the
environmental review process.

62. March 20, 1995 letter. No.
    These contracts are part of the fiscal file and not part of the environmental review
process.  These documents were not before the decisionmaker.

63. March 21, 1996 Memorandum.  No.
    See answer to No. 2 and No. 62.

64.    April 20, 1989 letter Brosius/Kerns.   No.
That document has not been located in the FHWA files See answer to No. 1 above.

                              Sincerely,

                              MARTIN C. CARLSON
                              United States Attorney

                              ANNE K. FIORENZA
                              Assistant United States Attorney

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

On this 7th day of January, 2002, she served a copy of the foregoing document by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by deposition said envelope and contents in the United States Mail at Harrisburg, Pennsylvania to:

Thomas Alan Linzey, Esquire
Community Environmental Legal Defense Fund
2859 Scotland Road
Chambersburg, PA  17201

*Rebecca A. Plesic*

REBECCA A. PLESIC
Legal Secretary