2to CS

53
2-20-02
SC

# In the United States District Court for the Middle District of Pennsylvania

GREENE/GUILFORD ENVIRONMENTAL ASSOCIATION, a non-profit corporation incorporated under the laws of the Commonwealth of Pennsylvania, CITIZENS FOR PLANNED COMMUNITY GROWTH, an unincorporated association organized under the laws of the Commonwealth of Pennsylvania, PAUL B. AMBROSE, JOHN G. ENDERS, CHARLES F. RAHAUSER, BETSY RAHAUSER, DOUGLAS A. WARNOCK, U.X VAGNERINI, THOMAS W. BUNDY, STEPHEN P. BUCHER, ROGER J. ROBERTSON, JAMES A. STRITE, JR., DAVID A. GUTHRIE

v.

KEN WYKLE, Administrator, Federal Highway Administration, ROBERT GATZ, Federal Highway Administration

and

BRADLEY L. MALLORY, Secretary for The Department of Transportation, Commonwealth of Pennsylvania

Defendant-Intervenor

Civ. No. 1:CV-01-0910

(Judge Rambo)

FILED
HARRISBURG
FEB 19 2002
MARY E. D'ANDREA, CLERK
Per ___
DEPUTY CLERK

## PLAINTIFFS' REPLY TO FHWA'S AND PENNDOT'S ANSWER IN OPPOSITION TO MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD AND FOR JUDICIAL NOTICE OF CERTAIN DOCUMENTS

### I. Introduction

On August 30, 2001, the Plaintiffs filed a Motion for Limited Discovery. That Motion argued that the Defendants acted in "bad faith" during the interchange

planning process which is the subject of this suit. Specifically, the Motion argued that certain documents and letters provided substantial evidence that the highway agencies predetermined the location of the interchange in violation of the National Environmental Policy Act ("NEPA") and the National Historic Preservation Act ("NHPA"). Accordingly, the Motion contended that the Plaintiffs were entitled to both oral and written discovery focused on several parties involved in the interchange planning process. While withholding judgment on whether the agencies actually violated the federal laws, this Court denied the Plaintiffs' Motion on October 17, 2001.

On October 31, 2001, the Plaintiffs faxed a list of sixty-four documents which had been eliminated from the Administrative Record by the agencies. Using an erroneous legal standard of whether the document "was before the [federal] decisionmaker" as a litmus test for whether documents should be included in the Record, the Defendants refused to concur to the Plaintiffs' request to supplement the Record.[1] On December 12, 2001, the Plaintiffs filed the instant motion, which seeks sixty-one separate documents intended to make the Record complete.

II. Defendants' New Legal Test Invented to Avoid Producing Documents - Whether Documents Were Physically "Before" the Federal Agency - Circumvents the Entire Purpose of Compiling an Administrative Record for Judicial Review

In an attempt to avoid the production of (1) documents explicitly referenced by the administrative record (referenced in D(a) - (p) of the Plaintiffs' Brief in Support of the Motion to Supplement); (2) the transcript of a hearing at which PennDOT officials and consultants appeared under oath to support and explain the ways in which the development of the project complied with state and federal laws (referenced in E of the



[1] While refusing to concur in the Motion, the Defendants agreed to supplement the Record with a handful of items, including the Franklin County Comprehensive Plan (not located in the Defendants' files); and several pages which had been mis-photocopied. Defendants claimed to have located several documents in the Record, but most of those references were to nonexistent pages or volumes.

Plaintiffs' Brief); (3) sixteen documents authored and received by the agencies during interchange planning and attached to the Plaintiffs' Motion to Supplement; (4) PennDOT's Twelve Year Transportation Plans; and (5) PennDOT Design and Planning Manuals used by agency personnel to prepare environmental and historic resource studies, the Defendants argue that these documents were not physically "before" the federal agency and therefore, can be excluded from the Record.

The use of the Defendants' urged legal standard would leave federal agencies with the ultimate discretion to determine which documents to include in the Record. It is reminiscent of PennDOT's arguments in the Pennsylvania Supreme Court as the agency attempted to take protected farmland for the interchange from a Franklin County farm couple without complying with state farmland protection laws. In that forum, PennDOT argued that the agency possessed the ultimate, unbridled, and unreviewable discretion to decide when, and if, to seek permission from the State's Agricultural Lands Condemnation Approval Board (ALCAB) to condemn that farmland.[2]

Similarly, the legal standard invented by the FHWA would grant the federal agency ultimate discretion to determine which documents to include in the Administrative Record. Such a standard would eviscerate the crucial role played by the Record in all challenges to agency action. Such an outcome would stymie judicial review and give agencies utter control over the eventual judicial determination of whether agency actions conformed to the law.

The Defendants' urged standard is not the law. The agencies have the burden and responsibility of producing a "complete" record for judicial review.[3] A complete Record includes all documents compiled during the development of the interchange project. As explained in the Plaintiffs' Motion to Supplement, however, many key documents have been removed from the Record.



[2] *White v. PennDOT*, 738 A.2d 27 (Pa 1999).

[3] Agencies must produce the "whole record" for judicial review. 5 U.S.C.A. §706.

III. The Defendants Continue to Sidestep the Plaintiffs' Legitimate Attempts to Complete the Administrative Record by Claiming Documents are Already Part of the Record, When They are Not.

The Defendants' Answer to the Plaintiffs' Motion is consistent with the haphazard way in which the Administrative Record has been compiled. Letters sent in 1996 were shuffled into un-indexed 1998 Correspondence files[4], letters dated in 2000 dealing with farmland impacts are included - not in the correspondence file - but in a haphazard collection of "Farmlands Technical Data"[5], indexes refer to attachments that are missing from original letters[6], and letters from FHWA to commenting parties are absent from appropriate correspondence volumes, and are included with other letters similarly un-indexed[7]. Many documents have been included in the Record in non-chronological order[8], traffic data, socioeconomic data, farmlands data, and cultural resources data have been thrown together in no particular order, with public involvement data prepared in the same manner.

In their Answer, the Defendants first highlight fourteen documents requested by the Plaintiffs. The agencies claim that they are (1) already part of the Record, when they are not, or are (2) located in a misfiled location in the Record. Finally, the Defendants claim that they cannot find at least two documents which are explicitly referenced by existing documents in the Record. Those fourteen documents are dealt with below, in the same order as the Defendants' Answer.

The Plaintiffs requested a document which is referenced in the Administrative



[4] The January 19, 1996 Memo from Keazer to Gibbs (Para. 52 of Plaintiffs' Motion).

[5] Consultant-authored letters to farmers near the proposed interchange dated November 16 and December 29, 2000, were located in Volume 138 of the Record.

[6] July 13, 1992 letter from Rep. Shuster to Secretary Yerusalim. The Index to the 1992 Correspondence indicates an attachment, but the attachment has been removed.

[7] June 30, 1993 letter from FHWA to Greene Township, located at AR-91 at 97.

[8] The Rural Historic Landscape Assessment and the Interstate 81 Interchange Plan of Study are included at AR-84 and AR-85 - after the "Reevaluation" of the ROD in June of 2001. Both were prepared at least four years earlier.

Record at AR-97, page 999 **(Plaintiffs' Motion at Item #3)**. That reference states "enclosed is a copy of the Department's justification for not preparing a supplemental EIS." Defendants claim that the reference is to the "Reevaluation of the FEIS", located at AR-80. However, if the Defendants had reviewed the documents, they would have discovered that the reference document is dated May 18, 1995. Therefore, the Reevaluation (prepared in 1999) could not be the document sought by the Plaintiffs.

The Plaintiffs requested a document which is specifically referenced at AR-3 at 115 as "background research and a site visit" for historic resources **(Plaintiffs' Motion at Item #10)**. The Defendants contend that the paragraph which follows that reference *is* the research and site visit results, yet the section clearly refers to a separate body of information which has been excluded from the Record.

Plaintiffs have requested the date of completion of a study which was included in the Record. That study, entitled "Interstate 81 Interchange: SR 8016: Plan of Study", located at AR-85, is undated **(Plaintiffs' Motion at Item #11).** Defendants have refused to provide a date or range of dates for the completion of that Study. That refusal makes it difficult for the Plaintiffs to use materials from that document to support individual claims.

Plaintiffs have requested a document prepared by the FHWA which included a "recent interpretation of Act 61 by FHWA, PennDOT, and the Pennsylvania Turnpike Commission." AR-91 at 113 **(Plaintiffs' Motion at Item #12).** That interpretation was used to force the agencies to consider upgrades to existing roads as an alternative to building a new interchange. The Defendants have refused to produce the document.

Plaintiffs have requested an April 7, 1998 letter sent from Richard Heimbach, a PennDOT farmlands consultant, to the USDA Natural Resources Conservation Service, which identifies farmlands impacted by the construction of the interchange **(Plaintiffs' Motion at Item #20)**. The Defendants contend that the letter is located at AR-139 at 56-61. However, those pages do not exist within that volume.

Defendants have successfully located the Kober/Bowser Memo dated August 2, 1993. **(Plaintiffs' Motion at Item #26)**. The agencies excluded the document from the Index of the 1993 Correspondence Volume.

Plaintiffs have requested all of the "Monthly Shuster Updates" prepared by either FHWA or PennDOT staff, referenced at AR-113 at 107 **(Plaintiffs' Motion at Item #37)**. The Defendants have listed eight of those documents, but only the 1995 Updates are complete. For 1996 and 1997, only three reports have been included in the Administrative Record.

Plaintiffs have requested all "Progress Reports" filed by Orth Rodgers, Inc. - PennDOT traffic consultants - with PennDOT, referenced at AR-97, 937 of the Record **(Plaintiffs' Motion at Item #42)**. Defendants claim that only one Report was filed, even though the Record specifically declares that "[p]eriodically, Orth-Rodgers binds their work for PennDOT." *Id.*

Plaintiffs have requested an attachment to a July 13, 1992 letter from U.S. Representative Bud Shuster to PennDOT Secretary Howard Yerusalim. The letter is located at AR-90 at 21 **(Plaintiffs' Motion at Item #44)**. The Index provided by FHWA for AR-90 specifically references an attachment to the letter. The Defendants claim that the document following the letter (at AR-90 at 22) is actually the attachment. However, the claimed attachment is dated one day later than the original and is clearly a separate communication.

Plaintiffs have requested the inclusion of two letters authored by a PennDOT consultant dealing with farmland impacts, dated November 16 and December 29, 2000 **(Plaintiffs' Motion at Item #45)**. Although one letter is located in the Record in a mass of miscellaneous information dealing with farmlands, the Defendants claim that the other letter is located at AR-139 at 588. In that location, however, is a letter from a law firm to the consultant.

Plaintiffs requested traffic studies prepared for the Route 30 improvements by

PennDOT and/or FHWA **(Plaintiffs' Motion at Item #47)**. Studies prepared to determine the traffic relief afforded by improvements made solely to Route 30 are important to the Plaintiffs' case because they show that the Route 30 improvements will relieve traffic congestion on the roads surrounding the existing interchange. Thus, the studies show that the proposed interchange will add little, if any, additional relief, and therefore, construction of the interchange would fail to meet Congressional goals for the project. Defendants claim that the Route 30 studies are already located in the Record, but the documents referenced by the Defendants only include general data on traffic volumes, and are not the actual studies conducted by PennDOT to determine the level of traffic relief afforded by Route 30 improvements.

Plaintiffs requested a January 19, 1996 Memo from Keazer of FHWA to Gibbs of PennDOT entitled "Franklin County, SR 8016, Section 001, I-81 Interchange, Point of Access Request." **(Plaintiffs' Motion at Item #52)**. The Defendants have located the letter, erroneously placed in the "1998 Correspondence" of the Record, at AR-107 at 677.

Plaintiffs requested a March 1, 1995 Memo sent from FHWA's Slater to FHWA's Gendell, entitled "ACTION: Pennsylvania, Request for Additional Access Points, I-81/Walker Road, Chambersburg." **(Plaintiffs' Motion at Item #53)**. The Defendants claim that the document is located at AR-107 at 677 - a location identical to the Memo in the paragraph above - and clearly not the location of the document. Even a cursory review by the Defendants would have revealed this clear error.

Defendants have successfully located the June 30, 1993 letter from FHWA to Greene Township **(Plaintiffs' Motion at Item #59)**. The agencies excluded the letter from the Index to the 1993 Correspondence volume.

The Plaintiffs request that this Court ensure that the Record is complete and order the Record to be supplemented with those materials which have not been located in the

Record.[9]

IV. The Transcript of the ALCAB Hearing and PennDOT's Application to ALCAB Must be Made Part of the Administrative Record Because ALCAB Approval is an Integral Part of the Highway Planning Process and an Adverse Decision by ALCAB Would Have Canceled the Project **(Plaintiffs' Motion at #8, 14, 46).**

Defendants have refused to supplement the Record with the transcript of the ALCAB hearing held to determine whether the highway agencies could condemn protected farmland to build the interchange. First, the Defendants argue that the proceedings were "state" proceedings and thus, had no impact on the federal planning process. Second, in the FHWA response filed before PennDOT became a party to this action, the FHWA argued that the transcript was not "before the FHWA", and thus, could be excluded from the Record. Finally, in their Answer to this Motion, the Defendants argue that neither agency has a copy of the transcript of the proceedings and thus, cannot produce it for the Record.

All of the traffic, farmlands, and historic resource consultants, along with PennDOT staff, offered testimony to the ALCAB in support of PennDOT's argument that no other "reasonable and prudent" location existed for the interchange which would not use farmlands. As such, numerous exhibits and testimony were proffered by witnesses who drafted the core planning documents - including the Draft and Final Environmental Impact Statements - for the project. Much of that testimony undermines the substance of documents compiled by the agencies for the Record. For example, under oath at the hearing, PennDOT's chief cultural resources expert testified that the agencies failed to examine historic properties within the project study area.[10]

In a statement reflective of the agencies' continued treatment of federal and state



[9] That would include all of the fourteen documents listed in the Defendants' compilation on pages 5 and 6 of the Defendants' Answer, except for items #6, #12, and #14.

[10] PennDOT's cultural resources expert testified that while several historic properties were identified within the "study area" for the interchange, they were not examined for impacts from interchange traffic. *See* Attachment One.

planning highway planning laws as simply nuisances to their efforts to force an interchange into a particular location, the FHWA now claims that the agencies would have forcibly condemned farmlands *even* if ALCAB had denied PennDOT's request. *Defendants' Answer* at 8. Not only a misstatement of the law, this statement reveals the underlying arrogance of FHWA's approach to overriding Pennsylvania's farmland preservation laws. It is nothing short of amazing. And incorrect.

The Agricultural Area Security Law requires that all agencies of the Commonwealth must obtain ALCAB approval for condemnation of farmland within an agricultural security area. 3 P.S. §913 (a). The contribution of federal funding does not transform a state funded project into a federal one. To suggest that the federal agency could simply circumvent the state board tasked with stemming farmland loss - after the state agency was first denied its request - is indicative of the approach taken by these agencies to this project.

The transcript of the ALCAB proceedings, along with PennDOT's application to ALCAB, and the materials submitted by participating parties, are essential to an inquiry aimed at determining whether the agencies complied with federal and state laws during the planning process for the interchange.

V. Advertisements and Proposals for Work Orders, and the Work Orders Themselves, are Necessary to Complete the Administrative Record in This Case. **(Plaintiffs' Motion at Items #2, 15, 54, 55).**

The Plaintiffs have requested that advertisements for work to be done on the interchange project, proposals submitted in response to those advertisements, and the work orders themselves, be made part of the Record for this project. As integral and essential parts of a highway project, those documents serve as the tools through which interchange planning was managed by the agencies.

Elimination of those documents from the Record is prejudicial to the Plaintiffs. Part of the Plaintiffs' Complaint alleges that the location for the interchange project was predetermined in violation of federal law. As such, the Plaintiffs have alleged that each component of the planning process was unlawfully subverted to reach that goal . Advertisements for work to be performed, and agreements between consultants and the agencies - entered into prior to the issuance of the Record of Decision (ROD) for the project - will demonstrate that the entire process for the planning of the road was illegally transformed in pursuit of the end goal of construction of an interchange at Walker Road.

The original advertisement for a "Design Location and Environmental Study for S.R. 8016, Section 001", which appeared in the Pennsylvania Bulletin, illustrates the importance of the inclusion of project advertisements and work orders in the Record. That Notice, which was published on February 6, 1988 - over six years prior to the preparation of the Draft Environmental Impact Statement - declares that "[t]he objective of the studies is the development of a recommended location that will relieve the present traffic congestion at Exit 6 and on U.S. 30." Pennsylvania Bulletin, Vol. 18, No. 6 (February 6, 1988).[11] Thus, at the outset, PennDOT defined the project's entire focus as relieving congestion at Exit 6, instead of the broader, Congressionally-mandated goal of relieving congestion "on an existing interchange"[12] in the Chambersburg area. The contrived goal could only be met by an interchange at Walker Road.



[11] AttachmentTwo to this Reply.

[12] Interchange exits near Chambersburg include (old) Exits #5, #6, and #8. Exit #5 is south of Chambersburg, Exit #6 feeds traffic into downtown Chambersburg, and Exit #8 is north of Chambersburg.

VI. Twelve Year Transportation Plans Must be Included in the Record Because They Serve as the Foundation for the Highway Planning Process in Pennsylvania. **(Plaintiffs' Motion at Items #30, 31, 32, 33, 34).**

Defendants again attempt to use an erroneous legal standard to avoid the inclusion of the Commonwealth of Pennsylvania's Twelve Year Highway and Bridge Program Plans in the Record. They continue to argue that the documents were not "before" the federal agency and thus, that the documents can be excluded from the Record.

The Twelve Year Highway and Bridge Program compilations list all current and future transportation projects in the Commonwealth. As such, the listings "program" PennDOT highway projects.

Elimination of the 1987, 1988, and 1989 Transportation Plans from the Record is prejudicial to the Plaintiffs. Among other claims, the Plaintiffs have alleged that the location of the interchange was predetermined - by political considerations - in violation of NEPA and NHPA. The Twelve Year Plans prepared in 1987, 1988, and 1989 bear out that contention. The earliest mention of the interchange - in the October 23, 1987 Transportation Plan - programs the construction of an "Exit 7. . . North of Chambersburg." *See* Twelve Year Highway and Bridge Program, Revised October 8, 1987, at page 431.[13] As late as July 18, 1989 - and after PennDOT began preparations for construction of the interchange - the Twelve Year Plan continued to refer to the interchange project as "Exit 7".[14]

Public Law 100-17, however, explicitly did not limit the highway agencies to build an interchange between Exit 6 and Exit 8, but instead established a project study area which extended south of Chambersburg and south of existing Exit 6. Thus, even the early programming of the project predetermined the location of the interchange in



[13] Attachment Three to this Reply.
[14] Attachment Four to this Reply.

the Walker Road area. As such, the Twelve Year Plans must be included within the Record.

<u>VII. PennDOT Design and Planning Manuals Must be Included in the Record Because They Provide Step by Step Guidance Through the Environmental Planning Process for Agency Staff, and They Bind Agency Consultants Through Work Orders.</u> **<u>(Plaintiffs' Motion at Items #36, 38, 39, 40, 41).</u>**

The Plaintiffs have requested the inclusion of five PennDOT Design and Planning Manuals in the Record. These Manuals are the sole agency guides - other than the applicable statutes and regulations - which provide guidance to agency personnel for the preparation of environmental impact statements, historic resource studies,"point of access" applications, and development of Project Need.

The Defendants contend that such documents are "PennDOT documents" that were "not before the FHWA", and thus, can be excluded from the Record. As integral parts of the planning process - and as the sole Manuals which provide a step by step guide to agency personnel for the development of highway projects - these Manuals must be included in the Record.

Elimination of the Manuals from the Record is prejudicial to the Plaintiffs. One of the Plaintiffs' allegations is that the agencies arbitrarily restricted the scope of their examination of historic properties, in violation of the NHPA. Defendants contend that the agencies possessed the ultimate discretion to only examine those properties within a 300' area surrounding the physical construction of the new interchange - delineating that area many years later as an "area of potential effects." However, PennDOT's "Section 4(f) Handbook" explicitly declares that the agencies must identify Section 4(f) properties "within the study area" and specifically recognizes that the agencies must identify those "constructive uses" of historic properties when impacts from the project would cause a "substantial impair[ment]" of the historic resource. The Transportation

Project Development Process, Section 4(f) Handbook, Volume I (March, 1998) at 6 and 18.[15] As alleged by the Plaintiffs, the agencies failed to carry out those duties.

In addition, the process outlined by the Handbooks becomes binding on agency consultants through agency Work Orders. In the "Scope of Work" prepared for the "Design Location Study and Environmental Impact Statement" for the interchange, the agencies specifically required their consultants to perform their work "in accordance with the latest information and/or procedures described in PennDOT's Design Manuals and Circular Letters." *See* General Scope, April 26, 1988, "Interstate 81 Interchange - SR 8016, Design Location Study and Environmental Impact Statement, Franklin County, Pennsylvania."[16]

VIII. Drafts of Environmental Planning Documents Submitted by Agency Consultants Must be Included in the Record to Show That the Agencies Managed the Consultants to Attain a Predetermined Result.

The Plaintiffs have requested several draft documents in their Motion to Supplement. Those "draft" documents include the "Draft 4(f)" Statement prepared for the interchange project, which is referenced in the Record at AR-102 at 182 **(Plaintiffs' Motion at Item #7)**; the July 13, 1998 Draft of the Record of Decision, and all other drafts of the ROD **(Plaintiffs' Motion at Item #21)**; the Draft of a letter from Secretary Yerusalim to Congressman Shuster, dated June 5, 1992, with the handwritten notations: "Sent to Larry King, 6-5-92 at 4:05 p.m. 7-3154" and "Resent to L.K. 6-9-9 2 '**(Plaintiffs' Motion at Item #27)**; the Draft Farmlands Assessment Report, prepared in June of 1994 **(Plaintiffs' Motion at Item #29)**; and the original draft of the October, 1995, "Addendum to Criteria of Effect Report" **(Plaintiffs' Motion at Item #35)**.

Defendants have already included a multitude of Draft documents in the Record in an attempt to support their various decisions to build a Walker Road interchange.



[15] Attachment Five to this Reply.
[16] Attachment Six to this Reply.

Volumes 5, 6, 10, 11, 33, 34, 36, 38, 40, 41, 42, 43, 44, 45, 58, 60, 65, 75, and 76 of the Record are all Draft documents. Ironically, the inclusion of bulky draft duplicates of several documents by the agencies themselves has led to the Defendants' pining about "storage problems" and the supposedly "debilitating" impact of inclusion of the documents. *See* Defendants' Answer at 15.

Indeed, of the "draft" documents requested by the Plaintiffs, several are one or two page letters which illustrate how the agencies re-drafted documents to further predetermine the interchange location, and how the agencies circulated those documents to staff overseeing the planning process. The "Addendum to Criteria of Effect Report" sought by the Plaintiffs is not a "draft" at all, but simply the October Addendum version of that document. Indeed, the agencies have already included the April, 1994 Criteria of Effect Report, the revised July, 1994 Addendum to the Report, the Addendum produced in May of 1997, and the Addendum produced in June of 1998.

Finally, the Record is incomplete without the Draft Farmlands Assessment Report prepared in June of 1994. That FAR was not a Draft, but was prepared by PennDOT as its' original application to ALCAB for the condemnation of protected farmland. The Plaintiffs have requested this document because statements made in the June, 1994 FAR conflict with several statements made within the FAR used for the 2001 ALCAB hearing.

Similarly, the Draft 4(f) Statement prepared by the agencies is not a "draft" at all, but the final version of a document prepared to support the agencies' decision to override historic property protections. It was never released due to the success of the agencies' political lobbying efforts focused on overturning those protections.

IX. PennDOT E-mails and Miscellaneous Planning and Design Documents Must be Included within the Administrative Record Because They Illustrate, or May Illustrate, the Pattern of Predetermination by the Agencies

In addition to the specific documents outlined above, the Plaintiffs have also requested that the Record be supplemented with (1) electronic mail communications between PennDOT personnel from the inception of the project to June 28, 2001 (electronic mail from FHWA staff for part of that period has already been included in the Record) **(Plaintiffs' Motion at Item #5)**; (2) the Map of the "Potential avoidance alternative for the I-81 interchange" referenced at AR-100 at 1693 of the Record **(Plaintiffs' Motion at Item #9)**; (3) the "impact study for U.S. 30" prepared by the Wal-Mart Corporation and acquired by the Defendants, referenced at AR-94 at 152 of the Record **(Plaintiffs' Motion at Item #13)**; (4) letters from U.S. Senator Rick Santorum to Carol Shull, the Keeper of the National Register of Historic Places; **(Plaintiffs' Motion at Items #17, 18)**; (5) a June 4, 1998 Memo entitled "Potential Issues with Proposed I-81, D Modified Avoidance Alternative"**(Plaintiffs' Motion at Item #19)**; (6) a letter from PennDOT's L. Nace to Ron Huber, dated June 1, 1994; **(Plaintiffs' Motion at Item #25)**; (7) a letter from George Fike of the Chambersburg Area School District Board of Directors to Barry Hoffman, District Engineer of PennDOT, dated November 13, 1998 **(Plaintiff's Motion at Item #43)**; (8) a "Project Locations Study: U.S. Route 30, Section S01" prepared by Gannett-Fleming in June of 1993, as a consultant to the highway agencies **(Plaintiffs' Motion at Item #49)**; (9) a newspaper article and subdivision plans submitted to PennDOT from Guilford Township from 1999 to the present **(Plaintiffs' Motion at Items #48, 50)**; and (10) Agency memos and letters listed in Plaintiffs' Motion at paragraphs 56-61.

The Defendants have included electronic mail communications among FHWA staff in the Record. Due to the value of that electronic mail, the Plaintiffs have requested

that electronic mail sent between PennDOT personnel be supplemented to the Record. Ironically, if any of those e-mails had been sent in hardcopy letter form, the correspondence would already be included in the Record. The Defendants now argue, however, that electronic mails should not be disclosed, and that the Plaintiffs do not know whether they "exist." *Defendants' Answer* at 6. Given the abundance of FHWA electronic mails compiled in the Record, a similar record of PennDOT electronic mails must exist. Eliminating them from the Record would encourage agencies to use other modes of communication simply to avoid having a written record that could be used in a legal challenge.

The Defendants' principal objection to the inclusion of the miscellaneous documents (listed above) in the Record is that they were never sent to the FHWA. Again, the Defendants have attempted to use an erroneous legal standard - whether they were physically presented with documents by PennDOT - to determine whether to supplement the Record. The defense fails both because PennDOT is now a party to this litigation - and thus, has an independent duty to produce all documents necessary for a complete Record to be compiled - and second, because the legal standard urged by the Defendants would result in the federal agency having the utter discretion to determine which documents should be included in the Record and which ones should not.

The production of a Record should not be an adversarial process. The burden of producing a complete Record lies on the shoulders of the agencies, not the Plaintiffs.

X. Conclusion

The Plaintiffs respectfully request that this Court GRANT the Plaintiffs' Motion to Supplement the Administrative Record with the sixty-one (61) items delineated by the Plaintiffs in that Motion.

Respectfully Submitted this 18th Day of February, 2002,

Thomas Alan Linzey, Esq.
Supreme Court I.D. #76069
Community Environmental Legal Defense Fund (CELDF)
2859 Scotland Road
Chambersburg, Pennsylvania 17201
(717) 709-0457
(717) 709-0263 (fax)

*Counsel for the Plaintiffs*