ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREENE/GUILFORD ENVIRONMENTAL ASSOCIATION, a non-profit Corporation incorporated under the laws of the Commonwealth of Pennsylvania, CITIZENS FOR PLANNED COMMUNITY GROWTH, an unincorporated association organized under the laws of the Commonwealth of Pennsylvania, PAUL B. AMBROSE, JOHN G. ENDERS, CHARLES F. RAHAUSER, BETSY RAHAUSER, DOUGLAS A. WARNOCK, U.X. VAGNERINI, THOMAS W. BUNDY, STEPHEN P. BUCHER, ROGER J. ROBERTSON, JAMES A. STRITE, JR., DAVID A. GUTHRIE, Plaintiffs, | CIVIL ACTION NO. 1:CV-01-0910 (Judge Rambo) |
| v. | |
| KEN WYKLE, Administrator, Federal Highway Administration, ROBERT GATZ, Federal Highway Administration, Defendants, | |
| and | |
| BRADLEY L. MALLORY, Secretary for The Department of Transportation, Commonwealth of Pennsylvania, Intervenor | |

FILED HARRISBURG, PA MAR 15 2002 MARY E. D'ANDREA, CLERK Per _____ Deputy Clerk

<u>INTERVENOR'S BRIEF IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF THE COURT'S MARCH 1, 2002 ORDER</u>

On or about December 13, 2002, Plaintiffs filed a Motion to Supplement the Administrative Record and for Judicial Notice of Certain Documents. Defendants opposed in part Plaintiffs' request to supplement the record. On

March 1, 2002, the Court granted the Motion in part and denied the Motion in part.

Bradley L. Mallory, Intervenor, has filed a Motion requesting reconsideration of only one paragraph of the order. In paragraph 1(d) of the order, the Court granted paragraphs 5 and 51 of Plaintiffs' Motion. Paragraph 5 requested "Electronic mail communications from the inception of the project to June 28 of 2001 – the date of the release of the 'Re-evaluation' – sent between PennDOT personnel." Paragraph 51 requested "Electronic mails sent between staff for U.S. Representative Bud Shuster and PennDOT". In granting Plaintiffs request, the Court acknowledged in footnote 2 of its March 1, 2002 Order that the requests for e-mail were very broad and asked the parties to work out the parameters of what should be included in the record.[1]

Intervenor is in the process of contacting the individuals who were involved in the I-81 Interchange project, including executive staff, to obtain any e-mails that they have in their files or presently on their desktop

---

[1] Pursuant to Footnote 2 of the Court's Order, Plaintiffs' counsel was contacted to discuss this matter. The procedure, time, and general cost was explained, as well as the fact that the backups are after the Record of Decision. Plaintiffs' counsel would not agree that retrieving the e-mail from the backups was unnecessary.

computer system. Intervenor will supplement the administrative record with the results of this search.

However, some e-mails may have been deleted once read. Herein lies the problem. Since PennDOT has operated a network, each day from approximately 6:00 p.m. to 6:00 a.m., PennDOT backs up its exchange servers and places the backup on magnetic media. A search could be made of these backups to retrieve deleted e-mails. A search of this nature would be extremely costly in terms of time and money considering the relevancy of the e-mails to the outcome of this litigation.

Backups are available for exchange server 1 from July 25, 2000 to the present and for exchange server 2 from April 23, 2001 to the present. The search requires two steps to be performed. Step 1 is to restore a single day from the backup. Step 2 is to search that restored day for e-mails. The process is repeated for each day that has been backed-up. The total number of days that would need to be searched is 404 - 338 days for server 1 and 66 days for server 2. The time to restore the server would take approximately 4 hours for each day restored.[2] The

---

[2] The time to restore the server may take longer than 4 hours. The backups are stored off-site at the State Hospital (also known as the Willow Oak Complex). The backups must be transferred electronically from the State

3

restoration must be done for all PennDOT mailboxes saved on that day and cannot be limited to a select list of mailboxes. Once that day is restored, if the search is limited to a specified list of PennDOT personnel, the time to search the restored day for the e-mails regarding the I-81 Interchange project would take approximately 2 hours for each day restored. Then, approximately 2 hours would be needed to tear down the server to get it ready for the next restore. For each day to be restored (restore, search, and breakdown), 8 hours would be needed to retrieve the e-mails. The total hours needed to complete all 404 days is approximately 3232 hours. Using two eight hour shifts, it would take 202 days to complete the retrieval of e-mails.[3]

---

Hospital via a data circuit. This data circuit is shared by many of the Commonwealth agencies to send and retrieve information. Therefore, the restore may take longer than 4 hours depending upon the use of the network by PennDOT and other agencies. For example, during tax season, the Pennsylvania Department of Revenue would be using this network extensively to transfer data, which could affect the speed at which PennDOT receives its backups.

[3]     Not all e-mails will be on the backups. E-mails that were received after an individual's mailbox was backed up and completely deleted prior to the next evening's backup would not be on the backups. For example, an e-mail may be received at 7:00 p.m. by an individual's mailbox that has already been backed-up. If this e-mail is opened, deleted from the inbox, and subsequently deleted from the deleted folder prior to the next nightly backup, this e-mail would not be on any of the backups.

This would cost approximately $135,138.00 in labor.[4] In addition, PennDOT would have to purchase an additional server to retrieve these e-mails, which would cost $35,820.00. The total cost to search the backups for e-mails would be $170,958.00.

The e-mails that would be retrieved through this massive expense and effort are irrelevant to the Court's review of the Record of Decision ("ROD") issued by FHWA. The e-mails would cover from July 25, 2000 to June 28, 2001. The ROD, which is under review in this litigation, was issued on March 25, 1999. The ROD was issued 16 months prior to the time frame covered by the backup system.

Defendants may attempt to argue that the e-mails are relevant due to additional studies conducted for the June 28, 2001 re-evaluation. However, nowhere in their detailed Amended Complaint does Plaintiffs challenge the impact numbers contained in the ROD or the 2001 re-evaluation. Therefore, e-mails discussing the re-evaluation or the additional studies are irrelevant to the claims asserted by Plaintiffs in their Amended Complaint.[5]

---

[4]  Labor cost estimates do not include overtime considerations.

[5]  At a minimum, Intervenor requests that the Court ask for an offer of proof to support Plaintiffs' claims of relevancy.

5

Finally, these documents are irrelevant under the administrative record rule. Judicial review under the NEPA and NHPA is based solely on a review of the administrative record that was before the decision-makers at the time the relevant determinations were made. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971); Vermont Yankee Nuclear Power Corp. Inc., 435 U.S. at 549; Don't Ruin Our Park v. Stone, 749 F. Supp. 1388 (M.D. Pa. 1990)(Rambo, J.), aff'd, 931 F.2d 49 (3d Cir. 1990). In Camp v. Pitts, 411 U.S. 138, 142 (1973), the Supreme Court stated "[the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." E-mails between PennDOT personnel or between Former Congressman Bud Shuster (and/or his staff) and PennDOT personnel are internal documents. These messages were not before the decision-maker at any time during the decision making process, and therefore, could not have played any part in the decision at issue in this litigation.

Based on the above discussion of cost and relevancy, Intervenor respectfully requests this Honorable Court to issue an order granting Intervenor's request to supply only those e-mails that are presently in the project files or are presently stored on the relevant PennDOT personnel's

6

desktop computer systems and not require PennDOT to search its back-up computer files.

                Respectfully submitted,

*Kenda Jo M. Gardner*
KENDA JO M. GARDNER
Assistant Counsel
JOHN M. HRUBOVCAK
Assistant Counsel-in-Charge
ROBERT J. SHEA
Assistant Chief Counsel
ANDREW S. GORDON
Chief Counsel
Commonwealth of Pennsylvania
Pennsylvania Department of
  Transportation
Office of Chief Counsel
P.O. Box 8212
Harrisburg, PA  17105