2 TO CT

**ORIGINAL**



3-21-02
MTM

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GREENE/GUILFORD ENVIRONMENTAL
ASSOCIATION, a non-profit corporation
incorporated under the laws of the
Commonwealth of Pennsylvania, CITIZENS
FOR PLANNED COMMUNITY GROWTH,
an unincorporated association organized under : CIVIL NO. 1:CV-01-0910
the laws of the Commonwealth of Pennsylvania, : (Judge Rambo) ✓
PAUL B. AMBROSE, JOHN G. ENDERS,
CHARLES F. RAHAUSER, BETSY
RAHAUSER, DOUGLAS A. WARNOCK,
U.X. VAGNERINI, THOMAS W. BUNDY,
STEPHEN P. BUCHER, ROGER J.
ROBERTSON, JAMES A. STRITE, JR.,
and DAVID A. GUTHRIE,
        Plaintiffs,

    v.

KEN WYKLE, Administrator, Federal
Highway Administration, ROBERT GATZ,
Federal Highway Administration,
        Defendants,

    And

BRADLEY L. MALLORY, Secretary for
The Department of Transportation,
Commonwealth of Pennsylvania,
        Intervenor.

FILED
HARRISBURG

MAR 20 2002

MARY E. D'ANDREA, CLERK
Per_____
    DEPUTY CLERK

**ANSWER IN OPPOSITION TO PENNDOT'S MOTION FOR
RECONSIDERATION OF THE COURT'S MARCH 1, 2002 ORDER**

On December 13, 2001, the Plaintiffs filed a Motion to Supplement the Administrative Record in the above-captioned case. The Defendant FHWA and the Intervenor PennDOT opposed most of the Plaintiffs' request to supplement the record. In refusing to produce electronic e-mails generated by PennDOT personnel during the pendency of the project, PennDOT sidestepped the request by contending that "the AR reflects information used by the FHWA to reach and support its decision in this matter. Email communications between and among PennDOT employees are not a part of this process and were not before the decisionmaker." *See Letter* from PennDOT dated November 20, 2001 and accompanying response to supplementation request, at paragraph 5 (attached as "Exhibit One" to this Answer). In the agencies' formal *Memorandum of Law in Opposition to the Plaintiffs' Motion to Supplement*, PennDOT again attempted to steer the focus away from the state agency onto the FHWA, contending that agency e-mails were not properly part of the Administrative Record because they were not "before the FHWA", were not "addressed to the FHWA", "authored" by the FHWA, or "copied" to the FHWA. *See Defendants' and Intervenor's Memorandum of Law in Opposition to Plaintiffs' Motion to Supplement the Administrative Record* at 8.

On March 1, 2002, this Court granted all of the Plaintiffs' Motion to Supplement except for parts relating to the ALCAB hearing, materials relating to the Route 30 improvements, and miscellaneous documents dated after the Re-evaluation of the Record of Decision (ROD) was issued on June 28, 2001. As part of that ruling, this Court ordered PennDOT to produce all of the electronic mails produced by agency personnel relevant to this project, and all electronic mails sent or received between agency personnel and the office of then-Representative Bud Shuster and staff.

On March 15, 2002, PennDOT filed the Motion for Reconsideration which is currently before this Court. They are not joined in the Motion by the FHWA, which both originally provided a volume of electronic mails generated during the pendency of the project and which has agreed to produce all electronic mails generated from 1999 until the issuance of the Reevaluation of the Record of Decision on June 28, 2001. *See* AR-113 (containing electronic mails sent among FHWA staff from 1994 to 1999); and the agencies' *Memo of Law in Opposition to Plaintiffs' Motion to Supplement* at 4 (stating that the FHWA has "agreed to add. . . FHWA e-mail from January, 1999 to June 28, 2001").

Through its ruling on March 1st, this Court determined that the appropriate standard of review for the instant motion is whether the agencies have produced the "whole record" necessary for effective judicial review under the authority of the Administrative Procedure Act. *See Order of March 1, 2002 Granting in Part and Denying in Part Plaintiffs' Motion to Supplement the Administrative Record* at 2, n. 1 (stating that "the court shall review the *whole* record" and citing the APA at 5 U.S.C. section 706). This Court has also explained that the FHWA is required to "independently evaluate" documents produced by state agencies. That evaluation is rendered fatally defective if the whole record was not obtained and reviewed by the federal agency prior to approval of environmental documents for this project.

For the reasons outlined below, this Court should deny PennDOT's continued attempts to elude responsibility for production of the "whole record" for judicial review.

I. PennDOT's Proposed Method for Retrieving Electronic Mails Generated Between the Date of the Inception of the Exit Project and the Installation of a Network Server on July 25, 2000, is Not Sufficient for Production of the Whole Record.

There are two distinct sections to PennDOT's Motion for Reconsideration. In the first section, the agency attempts to sidestep the production of electronic mails from the inception of the Exit project to the installation of a network server on July 25, 2000. In essence, PennDOT attempts to solicit a stamp of approval for the agency's attempt at compliance with this Court's Order by "contacting the individuals who were involved in the I-81 Interchange project, including executive staff, to obtain any e-mails that they have in their files or presently on their desktop computer system." *See PennDOT's Motion for Reconsideration* at 3-4.

Put simply, PennDOT is admitting that the agency has failed to keep any record of electronic mail generated for this project. To expect project staff to keep e-mails on their "desktop computers" from eight years ago and use that search process to comply with this Court's order of March 1st, is simply beyond the bounds of credulity. Computer systems almost a decade old have most certainly been replaced, and the lack of a central document repository leaves the production of relevant documents to the unfettered discretion of individual personnel within the agency. In addition, much of PennDOT's District 8 staff, who worked on the project over the years, have left the agency – inevitably taking files and e-mail with them. Such a process is simply not adequate for the purposes of production of the "whole record" necessary for judicial review and interferes with both the Plaintiffs' ability to litigate this case as well as this Court's ability to engage in effective judicial review.

4

Nor has PennDOT been the least responsible in adding personnel electronic mails to the Administrative Record as the project has progressed. From June of 1995 to October 26 of 1999, Nassaux-Hemsley, Inc. (a Chambersburg-based engineering firm), under contract to the Greene Township Board of Supervisors, conducted eleven file reviews of PennDOT files relevant to the exit interchange. As evidenced by the Affidavit submitted by one of the Plaintiffs, Greene Township Supervisor Paul Ambrose, a review conducted in 1998 revealed that no PennDOT e-mails had been made part of the Administrative Record. *See Affidavit of Paul B. Ambrose* and chart of the dates of PennDOT file reviews attached as "Exhibit Two" to this Answer.

Given the likelihood of a legal challenge to this project, PennDOT did take steps to prepare and safeguard all hardcopy documents relevant to the interchange project, yet took no steps to include electronic mails in the Record. The agency had many opportunities to do so.

In Minutes of the Interstate 81 Interchange EIS Management Team Committee held on May 16, 1995, PennDOT confirmed that "PennDOT Central Office and District 8-0 will also retain copies of the Administrative Record. . . The Administrative Record will contain all pertinent correspondence and conclusionary reports." AR-97 at 973. At a May 30, 1995 Meeting of that Committee, PennDOT again stated that "[t]he Administrative Records for FHWA, Bureau of Design and District 8-0 have been organized. An index was submitted to each of the aforementioned parties." AR-97 at 1127. At a June 13, 1995 Meeting of the Committee, PennDOT again declared that the "Central Office and District 8-0 Administrative Records have been organized." AR-98 at 1209. Finally, at another meeting on July 25, 1995, PennDOT's consultant "suggested a

review of the Administrative Records. FHWA, PennDOT Central Office, District 8-0 files will be reviewed by July 28, 1995." AR-99 at 1638.

Whereas FHWA did have a system for tracking and including relevant project e-mails, PennDOT apparently failed to create any system to ensure that electronic mails were captured into the Record, or that relevant electronic mails were printed down and inserted into the Record as hardcopy documents.

The electronic mail included by the FHWA in the Administrative Record has proven its importance by revealing several decisions that may have been made in violation of federal law. For example, in an e-mail produced by the federal agency on the issue of proceeding to the design stage on a Walker Road interchange prior to the finalization of the environmental documents, FHWA's Gatz stated that "[t]he 'decision' to authorize design was a 'decision' made by the WO [Washington Office] during their meeting with Rep. Shuster. . . We'll do what we can to comply with the various regulations, but I'm told it's a 'done deal.'" AR-113 at 198 (e-mail sent in December of 1994 from FHWA's Gatz to Gendell). Such an e-mail, proving that the design of one location was initiated prior to the finalization of environmental documents – in violation of NEPA and FHWA regulations[1] - is just one example of how electronic mails are pivotal to the preparation of the "whole" record.

Thus, when PennDOT asks whether the agency can simply provide "only those e-mails that are presently in the project files or are presently stored on the relevant PennDOT personnel's desktop computer system", the agency is asking this Court to grant

---

[1] 23 U.S.C. section 112(b)(3) specifically prohibits the highway agencies from "commenc[ing]" final design prior to full compliance with NEPA and the approval of a Record of Decision for the project. 40 CFR section 1506.1 prohibits agencies from taking any actions which would "prejudice the ultimate decision on the project."

them *carte blanche* to provide **none**, if any, e-mails that were generated during the pendency of this project.

II. The Failure of PennDOT to Install a Network Server Which Enables Efficient Access to Electronic Mails Generated Between July 25, 2000 and June 28, 2001 is Not the Responsibility of the Plaintiffs; and Those E-mails are Directly Relevant to the End Stage Planning for the Interchange.

Throughout its Motion for Reconsideration, PennDOT contends that electronic mails recoverable for the period between July 25, 2000 and June 28, 2001 are too expensive to recover, that recovery would add substantial delay to this litigation, and that the e-mails are simply "irrelevant" to a review of the project. *See Intervenor's Motion for Reconsideration* at 3-6.

From the inception of this project – and due to the public's belief that the project was politically predetermined - the highway agencies have been aware that this project was controversial and likely to be challenged. In fact, in June of 1996, FHWA staff stated (via electronic mail) that "the issues raised here [in an administrative Complaint filed by residents of Franklin County] are largely the same as those that we may have to litigate in the future. Therefore, our response here should not be inconsistent with what our future defense is likely to be." AR-113 at 61. Thus, the agencies knew that the Record of the planning for the Interchange would eventually become the focus of a legal challenge, and that the electronic mails would inevitably be an important part of that challenge.

However, unlike FHWA, PennDOT made no plans to secure or safeguard those communications – thus leaving the agency in its currently unsupported position of asking this Court to enable it to attempt to reconstruct the Record after the fact and from sources

7

that may no longer exist. Given that the entire reason for constructing a "back-up" is for retrieval, PennDOT's reasoning for asking for reconsideration seems to be unsupportable.

It is not the responsibility of the Plaintiffs to assist PennDOT to circumvent the agency's responsibility to provide the "whole record" for judicial review. This Court has, however, stated that it is "confident that the parties can work out the parameters of the documents that should be included in accordance with Paragraphs 5 and 51." *See Order of March 1, 2002* at 3, n. 2. In a telephone call between counsel for PennDOT and the Plaintiffs, the Plaintiffs agreed to discuss how to extract only the "relevant" electronic mails from the mass of e-mails that Plaintiffs assumed were in the possession of the agency. Plaintiffs were (and are) willing to accept the results of e-mail searches which contain the words "Exit 7" or "Interchange Project" in the subject headings (or other similar search terms) – to winnow out the irrelevant electronic mails.

However, during that call between counsel, the Plaintiffs learned that PennDOT has no centralized record of e-mails sent or received prior to July 25th of 2000, and that therefore, even the Plaintiffs' willingness to accept only relevant e-mails is rendered moot. In addition, Intervenor's counsel attempted to explain that agency staff did not use electronic mail extensively prior to 2000, even though FHWA was using electronic mail as a regular communication device as early as June 7, 1994. *See* AR-113 at 217. That argument by PennDOT, however, failed to make its way into the Motion for Reconsideration.

In light of PennDOT's failure to provide a system for the production of electronic mails to provide a whole record, the Plaintiffs' attempt to meet this Court's directions in

its March 1 Order was rendered an impossibility.[2] Thus, the agency's inability to comply with the provisions of the Administrative Procedure Act is not the responsibility of the Plaintiffs and this Court should deny this Motion for Reconsideration.

As a final attempt to escape the conclusion that PennDOT's Administrative Record is fatally defective, the agency attempts to argue that the electronic mails of July 25, 2000 to June 28, 2001 are irrelevant because the focus of this Court should be on the original Record of Decision which was rendered in 1999. *See PennDOT's Motion for Reconsideration* at 5.

That proposition places PennDOT in the interesting position of arguing that the Re-evaluation of the ROD is an "irrelevant" document, even though it was the agencies themselves which decided to include the Re-evaluation into the Record. AR-83.

PennDOT's argument in this respect is simply not supported by the Record itself or by the Plaintiffs' Amended Complaint – which the agency claims does not focus on the time period after the ROD was issued. *See PennDOT's Memorandum in Support of their Motion for Reconsideration* at 5.

The Re-evaluation, issued by the agencies on June 28, 2001, was issued to explain why a Supplemental Environmental Impact Statement (SEIS) and new ROD were not required more than two years after the initial ROD had been issued. Simply put, there was no other reason to issue the document then to buffer any legal challenges brought which would question the impacts of the changes to the project made between the

---

[2] Plaintiffs have, however, worked closely with agency counsel to produce documents missing from the agencies' files for the Administrative Record. Those documents include selected pages from PennDOT's "Twelve Year Plans", and several miscellaneous documents that the agencies could not locate for the Record. Over the course of the last two weeks, the agencies have made two written requests for those documents to the Plaintiffs, and the Plaintiffs have produced those documents within twenty-four hours.

issuance of the Record of Decision in March of 1999 and the issuance of the Re-evaluation of the Record of Decision at the end of June, 2001. Indeed, the document contains sections entitled "Environmental Update", an "Environmental Impact Update" chart, an "Agricultural Resources" update, a section on "Social, Environment and Community Impacts", a "Cultural Resources" section, a "Traffic and Transportation" update on other projects in the study area, and a traffic count update which included traffic studies done after the issuance of the Record of Decision. In addition, the Re-evaluation attempted to capture updated farm data that was produced for the ALCAB hearing, which was held in 2001 – two years after the initial ROD had been issued.

Indeed, the final sentence of the Re-evaluation reveals the true reason behind its preparation. That sentence reads "[a]ccordingly, a supplemental EIS is not warranted." *See* AR-83 at 10. Currently, the Record is devoid of all documents, including electronic mails, which detail agency process leading to this decision not to prepare an SEIS following a two year delay in the project post-ROD. Those documents are innately relevant to the Plaintiffs' challenge, and the Plaintiffs (and this Court) are entitled to the whole record for review.

PennDOT asserts that the Plaintiffs have not focused any of their challenge on this time period for review. They are incorrect. Indeed, Plaintiffs' Count Three is based entirely upon PennDOT activities during this time period – including the Pennsylvania Supreme Court and ALCAB proceedings – which Plaintiffs' contend should have been the subject of a Supplemental Environmental Impact Statement. In paragraph 68 of the Amended Complaint, the Plaintiffs succinctly declare that "[t]he Defendants acted in an arbitrary and capricious manner by failing to require the preparation of a Supplemental

Environmental Impact Statement after the rulings by the Pennsylvania Commonwealth and Supreme Courts that impacts to agricultural land were greater than those analyzed in the environmental impact studies." Plaintiffs' *Amended Complaint* at 13. Those rulings – and the ALCAB hearing which resulted from those hearings – occurred after the issuance of the original ROD. In addition, Plaintiffs' Count Six focuses on changes in the project area which have occurred up to, and after the issuance of the original ROD in the Kriner Road area and in the development of the Chambers-5 Business Park. Plaintiffs' *Amended Complaint* at 21.

Clearly, the electronic mails are relevant to the claims advanced by the Plaintiffs, and the agency should be forced to compile the whole record for judicial review.

### III. As an Intervenor, PennDOT Voluntarily Subjected Itself to the Jurisdiction of this Court and Therefore, Has an Added Obligation to Provide this Court With the Whole Record of the Project for Judicial Review.

PennDOT was not an original party to this litigation. However, early in the process, the agency voluntarily decided to subject itself to the jurisdiction of this Court. As such, the agency voluntarily accepted the responsibility of providing this Court with the whole record of the project for judicial review. Through this Motion for Reconsideration (and earlier attempts to focus the attention of this Court on records solely kept by the FHWA), the agency is again attempting to avoid judicial review of its actions during the pendency of this project.

### IV. The Selection of Electronic Mail as a Mode of Communication Should Not Enable Agencies to Avoid Producing Those Documents into the Administrative Record.

Ostensibly, all hardcopy letters, correspondence, Memoranda, meeting minutes, etc. are already included in the Administrative Record produced for judicial review. Agency responsibility to include hardcopy materials into the Record is beyond question. At stake in the instant motion is the ability of an agency to avoid the inclusion of documents in the Administrative Record simply by their virtue of being in electronic, rather than hardcopy format.

The choice to use electronic mail for inter-agency (and intra-agency) communications, rather than hardcopy, should not alter the responsibility of the agency to make those documents part of the hardcopy Administrative Record on an ongoing basis. To do otherwise would enable all agencies to gut the Administrative Procedure Act by including only selectively included electronic mails and by choosing to send controversial or delicate communications by electronic mail – subject to easy and complete deletion by project staff.

That discretion would have dangerous repercussions for Plaintiffs seeking judicial review of agency behavior, and would create an automatic disadvantage – beyond the already established presumption of regularity of agency decisionmaking – which would effectively eliminate most challenges to agency decisions under NEPA.

As such, the Intervenor's Motion for Reconsideration should be denied by this Court.

V. Conclusion

For the above reasons, this Court should DENY the Intervenor's Motion for Reconsideration of this Court's March 1, 2002 Order.

Respectfully Submitted this 18th Day of March, 2002

Thomas Alan Linzey, Esq.
Community Environmental Legal Defense Fund (CELDF)
2859 Scotland Road
Chambersburg, Pennsylvania 17201
(717) 709-0457
(717) 709-0263 (fax)

## Certificate of Service of Process

I, Thomas Alan Linzey, Esq., hereby swear and affirm that I have served the accompanying ANSWER and EXHIBITS on the Parties identified below by the following method:

FIRST CLASS MAIL PRE-PAID

The following individuals were served with the ANSWER and EXHIBITS:

Anne Fiorenza, Esq.
Assistant U.S. Attorney
United States Attorneys Office
Federal Building, Suite 217
228 Walnut Street
P.O. Box 11754
Harrisburg, Pennsylvania 17108-1754

Kenda Jo Gardner, Esq.
Assistant Counsel
Pennsylvania Department of Transportation
P.O. Box 8212
Harrisburg, Pennsylvania 17105-8212

I swear and affirm that service of the ANSWER and EXHIBITS was completed this 18th Day of March, 2002.

Signed,

_____
Thomas Alan Linzey, Esq.
Community Environmental Legal Defense Fund (CELDF)
2859 Scotland Road
Chambersburg, Pennsylvania 17201

*Counsel for the Plaintiffs*