ORIGINAL

FILED
HARRISBURG

AUG 1 ~ 2002

MARY E. D'AND~~~
Per_____
         Deputy Cler~

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREENE/GUILFORD ENVIRONMENTAL ASSOCIATION, a non-profit Corporation incorporated under the laws of the Commonwealth of Pennsylvania, CITIZENS FOR PLANNED COMMUNITY GROWTH, an unincorporated association organized under the laws of the Commonwealth of Pennsylvania, PAUL B. AMBROSE, JOHN G. ENDERS, CHARLES F. RAHAUSER, BETSY RAHAUSER, DOUGLAS A. WARNOCK, U.X. VAGNERINI, THOMAS W. BUNDY, STEPHEN P. BUCHER, ROGER J. ROBERTSON, JAMES A. STRITE, JR., DAVID A. GUTHRIE, Plaintiffs, v. KEN WYKLE, Administrator, Federal Highway Administration, ROBERT GATZ, Federal Highway Administration, Defendants, and BRADLEY L. MALLORY, Secretary for the Department of Transportation, Commonwealth of Pennsylvania, Intervenor | CIVIL ACTION NO. 1:CV-01-0910 (Judge Rambo) |

EXHIBITS TO FEDERAL DEFENDANTS' AND INTERVENOR'S
JOINT REPLY TO PLAINTIFFS' ANSWER IN OPPOSITION
TO JOINT MOTION FOR SUMMARY JUDGMENT

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREENE/GUILFORD ENVIRONMENTAL ASSOCIATION, a non-profit corporation Incorporated under the laws of the Commonwealth of Pennsylvania, CITIZENS FOR PLANNED COMMUNITY GROWTH, An unincorporated association organized under the laws of the Commonwealth of Pennsylvania, PAUL B. AMBROSE, JOHN G. ENDERS, CHARLES F. RAHAUSER, BETSY RAHAUSER, DOUGLAS A. WARNOCK, U.X. VAGNERINI, THOMAS W. BUNDY, STEPHEN P. BUCHER, ROGER J. ROBERTSON, JAMES A. STRITE, JR., DAVID A. GUTHRIE,<br>        Plaintiffs<br><br>  v.<br><br>KEN WYKLE, Administrator, Federal Highway Administration, ROBERT GATZ, Federal Highway Administration,<br>        Defendants<br><br>        and<br><br>BRADLEY L. MALLORY, Secretary for The Department of Transportation, Commonwealth of Pennsylvania,<br>        Applicant for Intervention | CIVIL ACTION NO.<br>  1:CV-01-0910<br><br>(Judge Rambo) |

DECLARATION OF DAVID B. REYNOLDS

David B. Reynolds, declares and says:

1. I am employed by the Pennsylvania Department of Transportation (PennDOT) and I have worked for them for a total of 17.75 years.

2. I am presently the Right of Way Administrator for PennDOT's Engineering District 8-0.

3. Exhibit "A" of this declaration represents a true and correct copy of the deed recorded transferring the property owned by Lamar and Lois White to PennDOT.

I declare under penalty of perjury and pursuant to 28 U.S.C. 1746 that the foregoing is true and correct. Executed on this 19th day of August, 2002.

*David B Reynolds*
David B. Reynolds



18-K-560
RW-317F (2-83)

| REMIS Proj. No. | 080081 |
| --- | --- |
| County | Franklin |
| Fed. Proj. No. | 307-0074-801 |
| Route – Sec. | 0081-001 |
| Claim No. | 28000480000   Parcel No. 1 |
| Claimant | D. Lamar White & Lois M. White |

#5407
RECORDED
01 DEC 2 **DEED** PM 34.3
(Fee Simple)
LINDA MILLER
RECORDER OF DEEDS   6.50
FRANKLIN COUNTY



THIS INDENTURE, made OCTOBER 17, 2001 by D. Lamar White and Lois M. White, H/W of Chambersburg, Franklin County, Pennsylvania, owner(s) of property affected by the construction or improvement of the above mentioned State Route, their heirs, executors, administrators, successors, and/or assigns, hereinafter, whether singular or plural, called the GRANTOR, and the Commonwealth of Pennsylvania, Department of Transportation, hereinafter called the COMMONWEALTH,

**WITNESSETH:**

WHEREAS the COMMONWEALTH has filed a plan in the Recorder of Deeds Office of the aforesaid County indicating its authorization to condemn property for the above highway from the aforesaid property; and

WHEREAS the parties hereto have agreed that, in lieu of condemnation, the GRANTOR will convey in fee simple and such other lesser estate(s) as designated, if any, to the COMMONWEALTH the property or portion thereof required by the COMMONWEALTH,

NOW, THEREFORE, in consideration of the sum of One ($1.00) Dollar and other good and valuable consideration, the GRANTOR does hereby grant and convey to the COMMONWEALTH

☒ In fee simple the premises described in exhibit "A"
☐ In fee simple that portion of the aforesaid premises designated as required right-of-way on the plot plan attached hereto and made a part hereof; and those areas, if any, designated as required for other than right-of-way in the easement(s) identified by the plot plan.

BEING all or a portion of the same property conveyed or devised to the GRANTOR by deed of Edna S. Walker Estate, dated February 7, 1979 and recorded in the Office of the Recorder of Deeds for Franklin County in deed book 782 page 463. This conveyance contains 21.787 acres and identified on the recorded right-of-way plan as Parcel Number 1. Together with the improvements, hereditaments and appurtenances thereto and the GRANTOR warrants GENERALLY the property hereby conveyed.

RESERVING, however, to the GRANTOR the right to deep mine minerals and remove gas and oil within the areas hereunder acquired from a minimum depth to be determined by the COMMONWEALTH, from mine shafts or by means of wells located off the right-of-way.

The GRANTOR does further remise, release, quitclaim and forever discharge the COMMONWEALTH or any agency or political subdivision thereof or its or their employees or representatives of and from all suits, damages, claims and demands which the GRANTOR might otherwise have been entitled to assert under the provisions of the Eminent Domain Code, Act of June 22, 1964, P.L. 84, as amended (26 P.S. 1-101 et seq.,) for or on account of this conveyance and any injury to or destruction of the aforesaid property of the GRANTOR through or by reason of the aforesaid highway construction or improvement, except damages, if any, under Section 610 (Limited Reimbursement of Appraisal, Attorney and Engineering Fees) and Section 610.1 (Payment on Account of Increased Mortgage Costs) of the Eminent Domain Code; provided, however, that if relocation of a residence or business or farm operation is involved, this release shall likewise not apply to damages, if any, under Section 601-A(a) (Moving Expenses) and/or Section 602-A and/or Section 603-A (Replacement Housing) of the Eminent Domain Code.

The GRANTOR does further indemnify the COMMONWEALTH against any claim made by any lessee of the aforesaid property who has not entered into a Settlement Agreement with the COMMONWEALTH.

EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREENE/GUILFORD ENVIRONMENTAL ASSOCIATION, a non-profit Corporation incorporated under the laws of the Commonwealth of Pennsylvania, CITIZENS FOR PLANNED COMMUNITY GROWTH, an unincorporated association organized under the laws of the Commonwealth of Pennsylvania, PAUL B. AMBROSE, JOHN G. ENDERS, CHARLES F. RAHAUSER, BETSY RAHAUSER, DOUGLAS A. WARNOCK, U.X. VAGNERINI, THOMAS W. BUNDY, STEPHEN P. BUCHER, ROGER J. ROBERTSON, JAMES A. STRITE, JR., DAVID A. GUTHRIE,<br>            Plaintiffs,<br><br>        v.<br><br>KEN WYKLE, Administrator, Federal Highway Administration, ROBERT GATZ, Federal Highway Administration,<br>            Defendants,<br><br>        and<br><br>BRADLEY L. MALLORY, Secretary for the Department of Transportation, Commonwealth of Pennsylvania,<br>            Intervenor | CIVIL ACTION NO.<br>  1:CV-01-0910<br><br>(Judge Rambo) |

DECLARATION OF JEFFERY L. GREENE, P.E., PTOE

**DECLARATION OF JEFFERY L. GREENE, P.E., PTOE**

Jeffery L. Greene, declares and says:

1. I am employed by Orth Rodgers & Associates and I have worked for them for a total of 17 years.

2. I am familiar with the I-81 Interchange project and I did the traffic analysis for this project. I performed and/or supervised the completion of the original traffic analysis for the project, the 1995 traffic analysis (AR-37), the 1998 traffic analysis (AR-72), and the 2000 traffic analysis (AR-83 at 7-9; AR-156 beginning at page 103).

3. I have a B.S. Degree in Civil Engineering. I am a registered professional engineer in the states of Pennsylvania, New Jersey, and Delaware and am a certified professional traffic operations engineer (PTOE). I am a member of the Institute of Transportation Engineers at which I was a former President of District 2; a member of the American Planning Association; and a senior member of the American Society of Highway Engineers. I specialize in the application of the Highway Capacity Manual (HCM) and have extensive experience with the use of HCM software and other relevant transportation impact and forecasting programs. I have supervised the preparation of major transportation planning studies across Pennsylvania, Delaware and New Jersey. My resume is attached.

4. Plaintiffs question why the local roads were not studied in

the 1998 traffic analysis. The 1998 traffic analysis prepared to support Alternative D Modified included only the immediate area of the proposed interchange and the next intersection beyond the interchange area (e.g., Relocated Walker Road/Franklin Farm Lane). (AR-72 at 37.) Prior interchange alternative analyzed the traffic on the local roads. Alternative D Modified is a minor change to the other alternatives from a traffic standpoint. Typically, as in the present case, the minor change to the roadway network, such as modifying the Walker Road alternative, has no regional impacts would not generate the need to run a regional or large area travel projection model. More specifically, the modification is such that regional travel times and for that matter, travel times in the immediate vicinity of the interchange, will change very little or not significantly at all. D Modified performs the same functions and involves the same travel times as the other Walker Road alternatives for purposes of traffic analysis. Furthermore, Alternative C-D and Alternative D - Modified have the same connectivity; that is, the same mobility options such that no regional or local traffic patterns are impacted by the modification. Simply put, by any measure, this is a local variation of the interchange and the appropriate approach is to reassign traffic and not run the travel projection model. As a result, the regional travel

projection model was appropriately not rerun. Instead, the traffic entering and leaving the immediate area of the proposed Walker Road interchange was reassigned to the modified roadway network based upon shortest distance. (AR-72 36, 37 and 95).

5. Plaintiffs attempt to discredit the 2000 traffic analysis by claiming that only traffic counts were taken and that the entire traffic model should have been re-run. In 2000, additional traffic count data was collected to determine whether traffic had been growing as the FEIS projected it would. This is a normal and rational part of the project planning process and a reasonable action to undertake, particularly when a project is delayed as was the instant project. PennDOT requested that I perform a spot check of critical intersections to determine whether traffic growth was on track with what was represented in the FEIS. If the growth rates are comparable (as they were in this case), then the conclusions contained in the FEIS were still sound and no further traffic projection work needed to be performed. The first step to re-analyzing traffic data is collection, i.e., traffic counts. The data contained in AR 156 page 103 to 158 shows the traffic data collected in 2000. The results of the 2000 traffic counts revealed that the traffic volumes were on a pace to be within the FEIS projections. Therefore, since the traffic counts indicated a comparable traffic growth rate, rerunning the model would

result in the same conclusions with regard to the Wayne Avenue interchange. Existing congestion along Wayne Avenue in the vicinity of the I-81 interchange will be improved to acceptable levels of service through programmed improvements which have since been completed. (AR-37 at vi, 47.)

6. In 2000, updated development information in Guilford Township was also considered when performing the 2000 traffic re-analysis of the Wayne Avenue area. Development of the Chambers 5 industrial park, which is located primarily in Guilford Township, was updated. Access to the Chambers 5 complex is primarily via Orchard Drive which connects to Wayne Avenue and US Route 11. Updated development of Chambers 5 was considered in the 2000 traffic re-analysis of Wayne Avenue, which included the 750,000 square feet warehouse constructed for Toys R Us. The updated development information regarding Chambers 5 revealed that less traffic was being generated from this complex than was originally considered in the FEIS.

7. Plaintiffs claim that the Route 30 interchange is not congested because the LOS on the ramps appear to be at an acceptable LOS. The discrepancy at the interchange ramps between the traffic model results (which indicates acceptable LOS) and actual conditions (congestion) is due to the fact that conventional LOS methodology analyzes intersections in isolation and does not account for the

5

influence of adjacent intersection congestion. Put differently, traffic volumes move so slowly through the interchange ramp intersections as a result of the poor operation at the adjacent U.S. Route 30 and Walker Road/Stouffer Avenue intersection, that the traffic counted as being processed by the interchange ramp intersections is artificially lowered. Under these conditions, traffic processed by the upstream intersection is not only a function of its own traffic signal, but also the ability of the next downstream intersection to dissipate a queue, and these conditions are not accurately portrayed by the Highway Capacity Software techniques. (AR-83 at 9.)

    I declare under penalty of perjury and pursuant to 28 U.S.C. 1746 that the foregoing is true and correct. Executed on this 16 day of August, 2002.

                                                Jeffery L. Greene



# JEFFREY L. GREENE, PE, PTOE
## Principal

**EDUCATION**

BSCE, Civil Engineering, University of Pittsburgh, 1969
MSCE, Civil Engineering, Villanova University, 1975

**PROFESSIONAL REGISTRATIONS**

Registered Professional Engineer in the states of Pennsylvania, New Jersey, and Delaware
Certified Professional Traffic Operations Engineer, 1999

**EXPERIENCE**

Mr. Greene's experience include preparation of needs and alternatives analyses, the preparation of major investment studies, congestion management analyses, traffic management plans, master traffic plans for communities and transportation corridors, parking demand analyses, and traffic impact analyses. Examples of assignments directed by Mr. Greene for which he was in responsible charge between include the following:

Directed an open-end research project for the Pennsylvania Department of Transportation that included research into the performance of raised pavement markings and the development of an installation policy for the RPM's; the conduct of a customer service survey, a series of focus groups and detailed fiscal impact analysis that led to the implementation of new traffic engineering and safety products; the development of recommendations for reducing congestion in interstate highway work zones; a human factor analysis of driver behavior at stop signs; development of a new policy and practice for timing traffic signal systems; development of a protocol for the state's Congestion Management System; and an analysis of catastrophic vehicle defects and the preparation of recommendations to improve Pennsylvania's Vehicle Inspection System to address the failures.

Directed an Open-End Traffic Engineering contract for the Pennsylvania Department of Transportation that included traffic engineering and operations assignments. Such assignments included design and analysis of truck rollover accidents on interstate highway ramps and research into automatic truck rollover warning systems and the preparation of construction plans for the installation of such devices at four test locations in Pennsylvania, and the research and development of an emergency call-box design for Pennsylvania's Interstate system including the design of systems for I-83 and I-81 between Harrisburg and Maryland.

Developed the Traffic Management Plan for the reconstruction of the PA Route 309 Expressway in Montgomery County, PA for the Pennsylvania Department of Transportation, District 6-0.

Prepared the Transportation Component of the General Management Plan for the Gettysburg National Military Park.

Directed an open-end Planning and Needs Contract for the Pennsylvania Department of Transportation that included the conduct of traffic engineering analyses of corridors across



## JEFFREY L. GREENE, PE, PTOE
### Principal

Pennsylvania to determine transportation needs. The studies typically included the conduct of origin and destination surveys, detailed traffic data collection, population and employment projections, travel projection modeling, environmental overviews and a public involvement process. Corridors analyzed as part of this contract include US Route 219 in Cambria and Clearfield Counties, US Route 22 in Lehigh and Northampton Counties, PA Route 21 in Fayette and Greene Counties, and the Marshall's Creek area in Pike and Monroe Counties. In addition, Mr. Greene directed the review of the controversial Dauphin Meadows landfill in Dauphin County.

Directed a Local Assistance Traffic Planning Contract for the New Jersey Department of Transportation that included traffic planning and engineering assignments throughout the State. Included in the contract was the performance of a needs and alternatives analysis and the development of an Access Management Plan for NJ Route 72 in Ocean County, NJ, the development of a strategic improvement plan for US Route 9 also in Ocean County, the performance of a planning and needs analysis of NJ Route 27 in Middlesex and Somerset Counties, NJ, and the development of a traffic signal master plan for NJ Route 31 and US Route 130 in Mercer, Middlesex and Somerset Counties, NJ.

Prepared the Needs Analysis and the traffic analysis for the Phase I Alternatives Analysis for the Uniontown to Brownsville, PA portion of the Mon/Fayette Transportation Project for the Pennsylvania Turnpike Commission and Point of Access Study that included developing the design of a three level fully directional interchange. (1993 to Present)

Prepared the Needs Analysis and Environmental Overview for the I-99 Expressway Project in Centre County, PA for the Pennsylvania Department of Transportation, District 2-0. This assignment included the development of a travel projection model and the conduct of an origin-destination survey in which 50,000 motorists were questioned.

Prepared the Transportation Component of the Adams County Comprehensive Plan Update for the Adams County Commissioners. Prepared the Project Needs Analysis for the Central Susquehanna Valley Thruway project for the Pennsylvania Department of Transportation, District 3-0 and a traffic engineering analysis that included a CORSIM analysis of a 60-mile roadway system.

Prepare the Project Needs Analysis and traffic engineering analysis for a 12-mile section of US Route 15 in Tioga County, PA and Chemung County, NY. Prepared the Traffic Analysis for the Environmental Studies for a proposed new interchange to I-81 in Chambersburg, PA for the Pennsylvania Department of Transportation, District 8-0.

Prepared the Transportation Planning Study for the Hanover Area for the Pennsylvania Department of Transportation, District 8-0. This assignment involved the development of a travel projection model and the establishment of detailed demographic projections.

Prepared a Congestion Management Analysis for the City of Harrisburg, PA. This assignment includes assessing the operation of the existing street system, the pedestrian "space", the



### JEFFREY L. GREENE, PE, PTOE
### Principal

operation of public transit, parking management practices and the potential for employee trip reduction strategies.

Prepared a corridor study for U.S. Route 322 between Harrisburg and Hershey, PA for the Tri-County Regional Planning Commission. This study resulted in the development of a Master Traffic Plan that includes the upgrade of U.S. Route 322 to a controlled access highway with interchanges, an access management plan, and a supporting series of collector roadways designed to serve local traffic. )

Prepared the Long Range Transportation Plan for Luzerne and Lackawanna County, PA. Mr. Greene recommended changes in operating procedures for the planning agencies that enabled each to adapt to the requirements of ISTEA.

Developed a Congestion Management Plan for Luzerne and Lackawanna County. This plan developed low cost procedures to generate congestion management projects for inclusion in the area's Transportation Improvement Program (TIP).

Mr. Greene developed a methodology and managed the preparation of the Planning and Needs Studies Handbook for the Pennsylvania Department of Transportation. He also coauthored a publication for the Urban Land Institute entitled "Development Impact Assessment Handbook, published in 1994".

Mr. Greene assisted in directing the firm's efforts in the research and development of a municipal handbook for the New Jersey Department of Transportation entitled "Managing Transportation in Your Community", which was distributed to municipal planning and zoning officials in Pennsylvania, New Jersey and Delaware. This Handbook provides guidance to local officials in their review of the transportation impact of local development and in the development of land use and transportation master plans and regulations.