ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
HARRISBURG, PA

AUG 26 2002

MARY E. D'ANDREA, CLERK
Per _____
          Deputy Clerk

GREENE/GUILFORD ENVIRONMENTAL
ASSOCIATION, a non-profit corporation
incorporated under the laws of the
Commonwealth of Pennsylvania, CITIZENS
FOR PLANNED COMMUNITY GROWTH,
an unincorporated association organized under
the laws of the Commonwealth of Pennsylvania,
PAUL B. AMBROSE, JOHN G. ENDERS,
CHARLES F. RAHAUSER, BETSY
RAHAUSER, DOUGLAS A. WARNOCK,
U.X. VAGNERINI, THOMAS W. BUNDY,
STEPHEN P. BUCHER, ROGER J.
ROBERTSON, JAMES A. STRITE, JR.,
and DAVID A. GUTHRIE,
            Plaintiffs,

v.

KEN WYKLE, Administrator, Federal
Highway Administration, ROBERT GATZ,
Federal Highway Administration,
            Defendants,

And

BRADLEY L. MALLORY, Secretary for
The Department of Transportation,
Commonwealth of Pennsylvania,
            Intervenor.

CIVIL NO. 1:CV-01-0910
(Judge Conner)

### BRIEF IN SUPPORT OF
### MOTION TO STRIKE AGENCIES' REPLY BRIEF AND
### EXTRA-RECORD AFFIDAVITS

## I. Procedural History

This suit was filed on May 24, 2001 by eleven individual Plaintiffs and two Chambersburg-area nonprofit organizations, alleging that the planning for an interchange project in Franklin County, Pennsylvania violated the National Environmental Policy Act ("NEPA"), the National Historic Preservation Act ("NHPA"), and other federal laws and regulations. In addition, Plaintiffs contend that the Defendants illegally misused federal funds for this Congressionally-authorized Demonstration Project. Plaintiffs filed an Amended Complaint on June 6, 2001.

On August 30, 2001, the Plaintiffs asked this Court to authorize the Plaintiffs to obtain limited discovery, on the grounds that the agencies had predetermined the location of the interchange over five years before the agencies had complied with federal environmental and historic preservation laws. The Plaintiffs argued that the predetermination of the location of the interchange required the taking of testimony from agency personnel involved in that predetermination.

On September 17, 2001, the agencies filed an *Answer in Opposition* to the Plaintiffs' request, stating that the "focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *See Joint Memorandum of Law in Opposition to Plaintiffs' Motion for Limited Discovery* at 4. The agencies also argued that it is "the court – not the parties" that properly decides if the record needs further explanation from the agency, and that the "mental processes of decisionmakers" were not a proper target for inquiry. *Id.* at 7.

The agencies did not request that this Court allow them to submit extra-record documents of their own.

On September 28, 2001, the agencies filed an Administrative Record in the case, which consisted of twelve boxes of documents.

On October 17, 2001, this Court denied the Plaintiffs' *Motion for Limited Discovery*, ruling that extra-record evidence from agency personnel could not be supplemented to the Administrative Record, and that the Record would be limited solely to those documents before the decisionmakers at the time that the decisions were made by the agencies.

On December 13, 2001, the Plaintiffs filed a *Motion to Supplement the Administrative Record*, asking this Court to order the agencies to produce a "complete record" by producing sixty-one (61) documents that had been withheld from the Administrative Record. The Plaintiffs filed the Motion after discovering that agency documents had been redacted from the Record. Upon being notified by the agencies that the agencies would not produce any of the documents requested by the Plaintiffs, the Plaintiffs filed the *Motion to Supplement* with this Court.

On January 7, 2002, the agencies strenuously opposed the *Motion to Supplement* and asked this Court to limit all evidence in this case to the Administrative Record. Again, the agencies emphatically declared that "[j]udicial review under the NEPA and the NHPA is based solely on a review of the administrative record that was before the decisionmakers at the time the relevant determinations were made." *See Joint Memorandum of Law in Opposition to Plaintiffs' Motion to Supplement the Administrative Record* at 9. In their Brief, the agencies argued that "in accordance with the standards laid out by the Supreme Court, a district court reviewing an agency decision acts like an appellate court – the court does not hear or take evidence beyond that which

is contained in the administrative record." *See Joint Memorandum of Law* at 10. Finally, the agencies declared that documents showing "mental processes and/or deliberative process of the decision makers" were not to be supplemented to the Administrative Record. *See Joint Memorandum of Law* at 14.

The agencies failed to ask this Court for authorization to supplement the Record with any documents of their own.

On March 1st, 2002, this Court issued a ruling that granted the Plaintiffs' *Motion to Supplement* with respect to over forty (40) documents that were missing from the Administrative Record. The agencies were ordered by this Court to produce those documents for the Plaintiffs and the Administrative Record.

On March 29th, 2002, the agencies produced nineteen volumes of additional, Supplemental documents to the Administrative Record. Those materials had not been included in the original Record produced by the agencies to this Court.

On June 10th, 2002, the agencies filed a *Joint Motion for Summary Judgment*.

On July 25th, 2002, the Plaintiffs filed an *Answer* to the Agencies' *Joint Motion for Summary Judgment*.

On August 19, 2002, the agencies filed a *Reply* to the Plaintiffs' *Answer*, and proceeded to attach two extra-record affidavits to that Reply. One affidavit purports to verify a Deed Agreement that was entered into between a landowner and the agencies over four months after the "Re-evaluation of the ROD" was issued in June of 2001. The "Re-evaluation of the ROD" was the last study issued by the agencies for the interchange, and serves as the ending point – in June of 2001 – of the Administrative Record. The

other affidavit purports to be from a consulting engineer, and contains statements by that engineer that are not contained within the Administrative Record.

Through the accompanying Motion and this supporting Brief, the Plaintiffs respectfully request that this Court strike the *Joint Reply Brief* and the extra-record Affidavits attached to the Brief. Clearly, the Affidavits must be stricken because they constitute extra-record evidence not included in the Record upon which this case is based. The Reply Brief must be stricken *in toto* because the agencies have incorporated extra-record materials from the Affidavit into that Brief.

## II. The Agencies' Attempts to Force Extra-Record Materials Into this Case During the Summary Judgment Phase of the Litigation, After This Court's Ruling That the Administrative Record Serves as the Basis for this Litigation, Requires That the Agencies' Joint Reply Brief and Attachments Be Stricken.

Through their Joint Reply Brief, the highway agencies have attempted to introduce several extra-record documents into evidence. Those documents include a Declaration of David Reynolds, a PennDOT Right-of-Way Administrator, which accompanies a Deed Agreement; and the Affidavit of Jeffrey Greene, an engineering consultant for the highway agencies on the Exit 7 Project. *See* Attachments to *Agencies' Joint Reply to Plaintiffs' Answer in Opposition to Joint Motion for Summary Judgment*.

The parties in this case have been through three complete cycles of arguments dealing with the scope of the Administrative Record in these proceedings. Each of those cycles has been contentious, and the issue of the scope of the Administrative Record has thus constituted the bulk of the first phase of this litigation. *See Plaintiffs' Motion for Limited Discovery in Addition to the Administrative Record* (filed August 30, 2001); *Plaintiffs' Motion to Supplement the Administrative Record and for Judicial Notice of*

*Certain Documents* (filed February 18, 2002); *PennDOT's Motion for Reconsideration of the Court's March 1, 2002 Order* (filed March 15, 2002) (agencies' request to be exempted from the Order of this Court requiring them to produce electronic mails concerning the project).

The first cycle, initiated by the Plaintiffs' filing of a *Motion for Limited Discovery*, resulted in a ruling by this Court that depositions and other extra-record evidence would not be allowed into the Administrative Record. The Plaintiffs had sought the ability to depose agency personnel concerning agency efforts to predetermine the location of the interchange – in violation of the NEPA and the NHPA, and other federal laws. The second cycle, initiated by the Plaintiff's filing of a *Motion to Supplement the Administrative Record* with sixty-one (61) documents missing and redacted from the Record by the agencies, resulted in a ruling by this Court ordering the agencies to produce over forty (40) of those missing documents. The agencies' response to that order was the production of nineteen (19) volumes of additional documents that the agencies had originally withheld from the Administrative Record.

The third cycle was initiated by the agencies via a *Motion for Reconsideration* of this Court's order for the production of electronic mails by the agencies. The agencies argued that most of the electronic mails referencing this project had been destroyed – other than those left on desktop computers for a decade – and that any attempt to retrieve electronic mails on backup systems would be inordinately expensive and time consuming. *See Intervenor's Motion for Reconsideration of the Court's March 1, 2002 Order* at 4. The Plaintiffs strenuously opposed this request by the agencies, arguing that this Court could not exercise its full powers of judicial review without the disclosure of

6

those communications, and arguing that the electronic form of the communications should not require different treatment as compared to hardcopy communications. *See Plaintiffs' Answer in Opposition to PennDOT's Motion for Reconsideration* at 7-12.

Throughout those three argument cycles, the agencies strenuously and emphatically argued that the Administrative Record should only include those documents developed as part of the Record, which were "before the decisionmaker" at the time that the challenged decisions were made. *See Joint Memorandum of Law in Opposition to Plaintiffs' Motion to Supplement the Administrative Record* at 9; *Joint Memorandum of Law in Opposition to Plaintiffs' Motion for Limited Discovery* at 4. Those parameters for the Administrative Record were established by this Court, and the case has proceeded on that foundation – that the Administrative Record constitutes the sole evidence in this litigation for use by the parties.

At no time during the pendency of this litigation have the agencies ever requested that this Court enable the agencies to file extra-record materials with this Court or supplement the agreed upon Record.

The agencies' attempts to force extra-record affidavits into this case - at this late date - without notice to this Court or the parties, with the full knowledge that this Court had previously limited the Administrative Record to materials generated and received prior to June 28, 2002 (the date of the "Re-evaluation of the Record of Decision"), and knowing that the issue of the scope of the Administrative Record has been a controversial part of this litigation, is clearly grounds for striking the Reply Brief and its' Attachments.

By taking such action, the agencies have done nothing less than flout the orderly process of litigation and have now forced both this Court and the Plaintiffs to use additional resources to deal with this issue.

### III. The Attempt to Introduce a Consultant's Affidavit Constitutes an Admission by the Agencies that the Administrative Record Supports the Plaintiffs' Argument That the Impact on Local Roadways from the Interstate Interchange Was Ignored by the Agencies.

In essence, the highway agencies' attempt to introduce extra-record affidavits constitutes an admission by the agencies that the Administrative Record actually supports the Plaintiffs' various arguments advanced in the Plaintiffs' *Answer to the Joint Motion for Summary Judgment*. If the Administrative Record contained sufficient documentation to prove that the agencies had given consideration to necessary local road upgrades and widening – and other issues raised by the Affidavits - then the submission of extra-record Affidavits by the agencies would be unnecessary.

The Plaintiffs have explained, in detail, how the Administrative Record reveals that the agencies – since the inception of this project in 1987 – have avoided the issue of the impact of interstate traffic onto rural country roads unable to handle that traffic. *See Plaintiffs' Answer in Opposition to Joint Motion for Summary Judgment* at 7. The Plaintiffs have described how the Record reveals that country roads currently functioning solely as local roads would be transformed into "collector" roads servicing the interchange, and how the agencies' own consultants have admitted that the roads would be unable to handle interstate traffic. *Id.* at 8. The Plaintiffs have described how the agencies have explicitly admitted in official studies that "increased traffic would require

8

[local roads] to be upgraded to current criteria", and how the agencies continue to argue that the necessary upgrades would "not be part of this project." *Id.* at 13. The Plaintiffs have also described how the Environmental Impact Statements (EIS's) prepared by the agencies avoided discussion of local road impacts, and that even FHWA staff have castigated PennDOT for failing to examine impacts of interstate traffic on rural, country roads. *Id.* at 11-12.

Finally, the Plaintiffs describe that, as late as June of 1998, the agencies were continuing to admit that local roads were inadequate for interstate traffic, but were refusing to concede that local road upgrades were part of the interchange project. *Id.* at 14. Curiously, the agency document that reached these conclusions was omitted from the original Administrative Record produced by the agencies, and was only supplemented to the Record after the Plaintiffs requested that this Court order the agencies to add the document to the Record. AR-159 at 153.

The agencies' attempt to introduce the Affidavit of a consulting engineer as an attachment to their Reply Brief appears to be an admission by the agencies that their argument – that necessary local road upgrades are not part of this interchange project – cannot be supported by the Administrative Record.

Indeed, the Affidavit of Jeffrey Greene bears out that conclusion. Mr. Greene attempts to testify, via his Affidavit prepared on August 16, 2002, about the reasons why the agencies failed to examine the impact of the interchange on local roads. He then attempts to add new evidence and new traffic conclusions to the materials already in the Administrative Record, in a classic attempt to rationalize – after the fact – decisions made by the agencies in violation of the NEPA, the NHPA, and other federal laws. That

specific type of "post-hoc rationalization" by the agencies, in an attempt to salvage a project, was specifically disallowed by the United States Supreme Court in *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971).

In addition, the attempt to insert these rationalizations into evidence undercuts earlier arguments advanced by the agencies themselves, that expert reports and "mental processes and/or deliberative process of administrative decisionmakers" were not to be supplemented to the Administrative Record. *See Joint Memorandum of Law in Opposition to Plaintiffs' Motion to Supplement the Administrative Record* at 10, 14-15. Yet, that is exactly what the agencies seek to do with the Affidavits – supplement the Administrative Record with that type of material.

Not only have the agencies used Mr. Greene to introduce new evidence and new conclusions, the agencies had the audacity to include Administrative Record citations directly into Mr. Greene's affidavit. As such, the affidavit reads much like an extension of the Brief filed by the agencies, and that extension violates the page limitation Order of this Court that limited the agencies to filing a twenty-five (25) page Reply.

The agencies' attempt to introduce these extra-record materials is simply an attempt by the agencies to circumvent the rules established for this litigation. It should be met by an Order of this Court striking the agencies' Reply and the Attachments.

### IV. The Attempt to Introduce a Consultant's Affidavit Supports the Plaintiffs' Argument that the Agencies Have Misused Federal Demonstration Project Funding, Because Agency Data Shows that the Existing Route 30/I-81 Interchange is Not Congested.

In a similar vein, the attempt to introduce a consultant's testimony concerning the lack of congestion at the Route 30/I-81 interchange reveals that the agencies believe that the Administrative Record clearly supports the Plaintiffs' argument – that the Route 30/I-81 interchange is not congested, and that the agencies have illegally misused Congressional monies set aside for a Demonstration Project that must demonstrate how construction of the new interchange will "relieve congestion" on an existing interchange.

The Plaintiffs have described, in detail, how Congress precisely defined the parameters for each Demonstration Project authorized under the Surface Transportation and Uniform Relocation Assistance Act of 1987 ["STURAA"], and that those parameters call for a interchange near Chambersburg that will "relieve traffic congestion on an existing interchange." *See* STURAA at §149(a)(74). To meet those requirements, the Plaintiffs have asserted that a necessary precondition to the expenditure of those funds is for a congested interchange to exist. *See Plaintiffs' Memorandum of Law in Support of Summary Judgment* at 42. Then, in specific detail, the Plaintiffs described how the agencies' own studies reveal that the existing Route 30/I-81 interchange – the "existing interchange" referred to in STURAA – is not presently congested, nor will it be congested, in 2016. *Id.* at 43-45. Finally, the Plaintiffs reveal how the agencies themselves have admitted that even a new Walker Road interchange will be congested immediately upon construction. *Id.* at 48.

Mr. Greene's affidavit does not rebut any of these documents found within the Administrative Record, nor does he contest any of the empirical data developed by the agencies supporting those documents.

Again, the agencies' attempt to force his Affidavit into evidence reveals that the Administrative Record actually supports the Plaintiffs' argument - that the agencies have grossly misused Congressionally-designed funding. Otherwise, the agencies would support their arguments by the materials contained within the Administrative Record instead of seeking to circumvent the established rules of this litigation.

### V. The Attempt to Introduce a Deed Agreement Revealing that a Walker Road Interchange Will Now Impact Twenty-Two Additional Acres of Farmland, Supports the Plaintiffs' Argument that the Agency Has Failed to Identify and Examine Those Impacts.

In addition to the consultant's Affidavit that the agencies seek to introduce as extra-record evidence, the agencies also seek to introduce a Deed Agreement between the agencies and a landowner in the Chambersburg area. The Deed Agreement was finalized on October 17, 2001 – over four months after the "Re-evaluation of the ROD" was issued by the agencies and the closing of the Administrative Record.

The Plaintiffs have argued that the environmental documents prepared by the agencies fail to adequately examine farmland impacts because they do not consider the impact of the project on an additional twenty-two (22) acres of farmland purchased by the agencies for the project. *See Plaintiffs' Answer to Joint Motion for Summary Judgment* at 30. That failure has, in turn, left the agencies and the reviewing public unable to compare

the various Alternatives for the project and their respective impacts to agricultural land in the Chambersburg area.

As verified by the Deed Agreement submitted by the agencies, the agencies have purchased an additional twenty-two (22) acres for the construction of the project. Regardless of the actual impact of highway construction on that farmland, active production of crops on that farmland has ceased, and fee simple ownership has been transferred to the agencies as a result of plans for the Walker Road interchange. Thus, the interchange project has had a very real and definable impact on double the amount of farm acreage as recognized in the environmental documents prepared by the agencies. *Id.* In addition, the agencies purchased the farmland at several times market value, which has added additional costs to the project, which have not been included by the agencies in the total comparison cost of the Walker Road Alternative for the interchange with other Alternatives.

Finally, the purchase of that farmland was forced by the participation of the owners as Plaintiffs in the Pennsylvania Commonwealth and Supreme Courts, and as a party to the proceedings in the Agricultural Lands Condemnation Approval Board (ALCAB) against the agencies. As part of the land sale, the farm couple agreed not to pursue an appeal of those proceedings. Thus, the agencies' purchase of the farmland was prompted by a desire by the agencies to avoid continued appeals on those issues; and was thus, a very real and tangible impact produced by the agencies' failure to follow farmland preservation law in the Commonwealth, and the agencies' violation of the National Environmental Policy Act.

## VI. Conclusion

For the reasons outlined above, the Plaintiffs respectfully request that this Court grant this Motion to Strike the *Joint Reply Brief* filed by the agencies, and the Attachments to that Reply.

Respectfully Submitted this **26**[th] Day of **August**, 2002

_____
Thomas Alan Linzey, Esq.
Community Environmental Legal Defense Fund (CELDF)
2859 Scotland Road
Chambersburg, Pennsylvania 17201
(717) 709-0457
(717) 709-0263 (fax)