101
9-6-02
sc



FILED
HARRISBURG, PA
SEP 05 2002
MARY E. D'ANDREA, CLERK
Per Deputy Clerk

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

GREENE/GUILFORD ENVIRONMENTAL ASSOCIATION, a non-profit corporation incorporated under the laws of the Commonwealth of Pennsylvania, CITIZENS FOR PLANNED COMMUNITY GROWTH, an unincorporated association organized under the laws of the Commonwealth of Pennsylvania, PAUL B. AMBROSE, JOHN G. ENDERS, CHARLES F. RAHAUSER, BETSY RAHAUSER, DOUGLAS A. WARNOCK, U.X. VAGNERINI, THOMAS W. BUNDY, STEPHEN P. BUCHER, ROGER J. ROBERTSON, JAMES A. STRITE, JR., and DAVID A. GUTHRIE,
Plaintiffs,

v.

KEN WYKLE, Administrator, Federal Highway Administration, ROBERT GATZ, Federal Highway Administration,
Defendants,

And

BRADLEY L. MALLORY, Secretary for The Department of Transportation, Commonwealth of Pennsylvania,
Intervenor.

CIVIL NO. 1:CV-01-0910
(Judge Conner)

**BRIEF IN SUPPORT OF**
**MOTION FOR SANCTIONS AGAINST ATTORNEYS FIORENZA AND GARDNER UNDER LOCAL RULE 83.3**

**I. Procedural History**

This suit was filed on May 24, 2001 by eleven individual Plaintiffs and two Chambersburg-area nonprofit organizations, alleging that the planning for an interchange project in Franklin County, Pennsylvania violated the National Environmental Policy Act ("NEPA"), the National Historic Preservation Act ("NHPA"), and other federal laws and regulations. In addition, Plaintiffs contend that the Defendants illegally misused federal funds for this Congressionally-authorized Demonstration Project. Plaintiffs filed an Amended Complaint on June 6, 2001.

On August 30, 2001, the Plaintiffs asked this Court to authorize the Plaintiffs to obtain limited discovery, on the grounds that the agencies had predetermined the location of the interchange over five years before the agencies had complied with federal environmental and historic preservation planning laws. The Plaintiffs argued that the predetermination of the location of the interchange required the taking of testimony from agency personnel involved in that predetermination.

On September 17, 2001, the agencies filed an *Answer in Opposition* to the Plaintiffs' request, stating that the "focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *See Joint Memorandum of Law in Opposition to Plaintiffs' Motion for Limited Discovery* at 4. The agencies also argued that it is "the court – not the parties" that properly decides if the record needs further explanation from the agency, and that the "mental processes of decisionmakers" were not a proper target for inquiry. *Id.* at 7.

The agencies did not request that this Court allow them to submit extra-record documents of their own.

On September 28, 2001, the agencies filed an Administrative Record in the case, which consisted of twelve boxes of documents.

On October 17, 2001, this Court denied the Plaintiffs' *Motion for Limited Discovery*, ruling that extra-record evidence from agency personnel could not be supplemented to the Administrative Record, and that the Record would be limited solely to those documents before the decisionmakers at the time that the decisions were made by the agencies.

On December 13, 2001, the Plaintiffs filed a *Motion to Supplement the Administrative Record*, asking this Court to order the agencies to produce a "complete record" by producing sixty-one (61) documents that had been withheld from the Administrative Record. The Plaintiffs filed the Motion after discovering that agency documents had been redacted from the Record. Upon being notified by the agencies that the agencies would not produce any of the documents requested by the Plaintiffs, the Plaintiffs filed the *Motion to Supplement* with this Court.

On January 7, 2002, the agencies strenuously opposed the *Motion to Supplement* and asked this Court to limit all evidence in this case to the Administrative Record. Again, the agencies emphatically declared that "[j]udicial review under the NEPA and the NHPA is based solely on a review of the administrative record that was before the decisionmakers at the time the relevant determinations were made." *See Joint Memorandum of Law in Opposition to Plaintiffs' Motion to Supplement the Administrative Record* at 9. In their Brief, the agencies argued that "in accordance with the standards laid out by the Supreme Court, a district court reviewing an agency decision acts like an appellate court – the court does not hear or take evidence beyond that which

is contained in the administrative record." *See Joint Memorandum of Law* at 10. Finally, the agencies declared that documents showing "mental processes and/or deliberative process of the decision makers" were not to be supplemented to the Administrative Record. *See Joint Memorandum of Law* at 14.

The agencies failed to ask this Court for authorization to supplement the Record with any documents of their own.

On March 1st, 2002, this Court issued a ruling that granted the Plaintiffs' *Motion to Supplement* with respect to over forty (40) documents that were missing from the Administrative Record. The agencies were ordered by this Court to produce those documents for the Plaintiffs and the Administrative Record.

On March 29th , 2002, the agencies produced nineteen volumes of additional, supplemental documents to the Administrative Record. Those materials had not been included in the original Record produced by the agencies to this Court.

On June 10th, 2002, the agencies filed a *Joint Motion for Summary Judgment*.

On July 25th, 2002, the Plaintiffs filed an *Answer* to the Agencies' *Joint Motion for Summary Judgment.*

On August 19, 2002, the agencies filed a *Reply* to the Plaintiffs' *Answer*, and proceeded to attach two extra-record affidavits to that Reply. One affidavit purports to verify a Deed Agreement that was entered into between a landowner and the agencies over four months after the "Re-evaluation of the ROD" was issued in June of 2001. The "Re-evaluation of the ROD" was the last study issued by the agencies for the interchange, and serves as the ending point – in June of 2001 – of the Administrative Record. The other affidavit purports to be from a consulting engineer, and contains statements by that

engineer that are not contained within the Administrative Record. The Affidavit was prepared exclusively to support the Reply Brief.

On August 26, 2002, the Plaintiffs asked this Court to strike the extra-record Affidavits submitted with the agencies' Reply Brief. In addition, the Plaintiffs asked this Court to strike the agencies' Reply Brief *in toto*, because of its repeated use of materials within the extra-record documents. In that *Motion to Strike*, the Plaintiffs explained that the attempt by the agencies, at this late date in the proceedings, to supplement the Record, was improper, and that the agencies had submitted the materials knowing that the submission violated the orders of this Court.

Accordingly, through the accompanying *Motion*, the Plaintiffs request that this Court impose sanctions on Attorneys Fiorenza and Gardner, counsel for the highway agencies, consisting of the payment of reasonable attorneys' fees and costs incurred by the Plaintiffs in the preparation of the *Motion to Strike* and the Plaintiffs' *Reply to the Joint Answer in Opposition to the Motion to Strike.*

**II. The Agencies' Attempts to Force Extra-Record Materials Into this Case in a Reply Brief During the Summary Judgment Phase of the Litigation, After This Court's Ruling That the Administrative Record Serves as the Sole Basis for this Litigation, is Sanctionable**

Local Rule 83.3 authorizes this Court to impose sanctions on the Attorneys for the agencies if the actions of counsel have "obstructed the effective administration of the court's business." Clearly, the actions of counsel on behalf of the highway agencies in attempting to supplement the Administrative Record at this late date, without requesting authorization from this Court to do so, constituted an attempt to prejudice this Court with documents and materials outside of the Administrative Record.

The Plaintiffs are filing this Motion for Sanctions at this time because the agencies are due to file an *Answer* to the Plaintiffs' *Motion for Summary Judgment* on September 10, 2002. Due to the nature of the agencies' violation of this Court's earlier orders, the Plaintiffs wish to ensure that the agencies will not continue to attempt to supplement the Record with extra-record Affidavits in that submission.

Through their *Joint Reply Brief*, the highway agencies have attempted to introduce several extra-record documents into evidence. Those documents include a Declaration of David Reynolds, a PennDOT Right-of-Way Administrator, which accompanies a Deed Agreement; and the Affidavit of Jeffrey Greene, an engineering consultant for the highway agencies on the Exit 7 Project. *See* Attachments to *Agencies' Joint Reply to Plaintiffs' Answer in Opposition to Joint Motion for Summary Judgment*. Both Affidavits were prepared exclusively to support the agencies' Reply Brief, and are dated several days before the agencies filed their Reply.

The parties in this case have been through three complete cycles of arguments addressing the scope of the Administrative Record in these proceedings. Each of those cycles has been contentious, and the issue of the scope of the Administrative Record has thus constituted the bulk of the first phase of this litigation. *See Plaintiffs' Motion for Limited Discovery in Addition to the Administrative Record* (filed August 30, 2001); *Plaintiffs' Motion to Supplement the Administrative Record and for Judicial Notice of Certain Documents* (filed February 18, 2002); *PennDOT's Motion for Reconsideration of the Court's March 1, 2002 Order* (filed March 15, 2002) (agencies' request to be exempted from the Order of this Court requiring them to produce electronic mails concerning the project).

The first cycle, initiated by the Plaintiffs' filing of a *Motion for Limited Discovery*, resulted in a ruling by this Court that depositions and other extra-record evidence would not be allowed into the Administrative Record. The Plaintiffs had sought the ability to depose agency personnel concerning agency efforts to predetermine the location of the interchange – in violation of the NEPA and the NHPA, and other federal laws. The second cycle, initiated by the Plaintiff's filing of a *Motion to Supplement the Administrative Record* with sixty-one (61) documents missing and redacted from the Record by the agencies, resulted in a ruling by this Court ordering the agencies to produce over forty (40) of those missing documents. The agencies' response to that order was the production of nineteen (19) volumes of additional documents that the agencies had originally withheld from the Administrative Record.

The third cycle was initiated by the agencies via a *Motion for Reconsideration* of this Court's order for the production of electronic mails by the agencies. The agencies argued that most of the electronic mails referencing this project had been destroyed – other than those left on desktop computers for a decade – and that any attempt to retrieve electronic mails on backup systems would be inordinately expensive and time consuming. *See Intervenor's Motion for Reconsideration of the Court's March 1, 2002 Order* at 4. The Plaintiffs strenuously opposed this request by the agencies, arguing that this Court could not exercise its full powers of judicial review without the disclosure of those communications, and arguing that the electronic form of the communications should not require different treatment as compared to hardcopy communications. *See Plaintiffs' Answer in Opposition to PennDOT's Motion for Reconsideration* at 7-12.

Throughout those three argument cycles, the agencies strenuously and emphatically argued that the Administrative Record should only include those documents developed as part of the Record, which were "before the decisionmaker" at the time that the challenged decisions were made. *See Joint Memorandum of Law in Opposition to Plaintiffs' Motion to Supplement the Administrative Record* at 9; *Joint Memorandum of Law in Opposition to Plaintiffs' Motion for Limited Discovery* at 4. Thus, the agencies opposed every request by the Plaintiffs to complete the Administrative Record or add supplementary testimony to the Record.

The parameters for the Administrative Record were thus established by this Court through those cycles, and the case has proceeded on that foundation – that the Administrative Record constitutes the sole evidence in this litigation for use by the parties.

At no time during the pendency of this litigation have the agencies ever requested that this Court authorize the agencies to file extra-record materials with this Court or supplement the agreed-upon Record.

The agencies' attempts to force extra-record affidavits into this case - at this late date - without notice to this Court or the parties, with the full knowledge that this Court had previously limited the Administrative Record to materials generated and received prior to June 28, 2002 (the date of the "Re-evaluation of the Record of Decision"), and knowing that the issue of the scope of the Administrative Record has been a controversial part of this litigation, is clearly grounds for assessing sanctions against the Attorneys for the agencies.

On or before September 10, 2002, the agencies will be filing a forty page *Answer* to the Plaintiffs' *Motion for Summary Judgment*. Given the agencies' prior attempt to supplement the Record with Affidavits prepared exclusively for their own submission, it is likely that the agencies will continue to attempt to salvage their case by adding additional documents and materials to their filings. This Court should not allow that to occur.

While an Order by this Court granting the Plaintiffs' *Motion to Strike* the agencies' *Reply* will ensure that that part of the case proceeds upon the agreed-upon Record, the granting of that Motion will not deter the agencies from taking additional steps in future filings to supplement the Record in an attempt to circumvent the Record and support their case with extra-record materials. Simply put, the granting of that *Motion*, while necessary, will merely place the agencies back where they should have been in the first place.

By taking the action of attempting to force Affidavits into these proceedings, the agencies have done nothing less than flout the orderly process of litigation and have now forced both this Court and the Plaintiffs to use additional resources to deal with this issue. As such, the legal standard of Local Rule 83.3 has clearly been met, and this Court should assess the costs and fees incurred by the Plaintiffs - to address the extra-record submission - against Attorneys Fiorenza and Gardner.

**III. Conclusion**

For the reasons outlined above, the Plaintiffs respectfully request that this Court grant the *Motion for Sanctions Against Attorneys Fiorenza and Gardner Under Local Rule 83.3*

Respectfully Submitted this **3rd** Day of **September**, 2002

Thomas Alan Linzey, Esq.
Community Environmental Legal Defense Fund (CELDF)
2859 Scotland Road
Chambersburg, Pennsylvania 17201
(717) 709-0457
(717) 709-0263 (fax)