<9/24/02>

<9/24/02>

<9/24/02>

ORIGINAL

112
RB 9/24/02

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
HARRISBURG, PA
SEP 23 2002
MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

GREENE/GUILFORD ENVIRONMENTAL
ASSOCIATION, a non-profit corporation
incorporated under the laws of the
Commonwealth of Pennsylvania, CITIZENS
FOR PLANNED COMMUNITY GROWTH,
an unincorporated association organized under
the laws of the Commonwealth of Pennsylvania,
PAUL B. AMBROSE, JOHN G. ENDERS,
CHARLES F. RAHAUSER, BETSY
RAHAUSER, DOUGLAS A. WARNOCK,
U.X. VAGNERINI, THOMAS W. BUNDY,
STEPHEN P. BUCHER, ROGER J.
ROBERTSON, JAMES A. STRITE, JR.,
and DAVID A. GUTHRIE,
              Plaintiffs,

: CIVIL NO. 1:CV-01-0910
: (Judge Conner)

v.

KEN WYKLE, Administrator, Federal
Highway Administration, ROBERT GATZ,
Federal Highway Administration,
              Defendants,

and

BRADLEY L. MALLORY, Secretary for
The Department of Transportation,
Commonwealth of Pennsylvania,
              Intervenor.

## PLAINTIFFS' REPLY IN SUPPORT OF
## PLAINTIFFS' FIRST MOTION TO STRIKE
## AGENCY EXTRA-RECORD AFFIDAVITS AND REPLY BRIEF

AND NOW, come the Plaintiffs in the above captioned case and file this Reply to the Agencies' *Brief in Opposition to Plaintiffs' Motion to Strike*.

### I. The Agencies Have Failed to Produce Any Legal Authority to Support Their Attempt to Introduce Extra-Record Documents into These Proceedings.

As recounted in the Plaintiffs' First and Second *Motions to Strike* - and requests for sanctions against the attorneys representing the agencies - the Defendants and the Intervenor knowingly and willfully disregarded the Orders of this Court by attempting to attach extra-record documents and Affidavits to their Reply and Answer Briefs.

At the outset of their *Brief in Opposition to the Plaintiffs' Motion to Strike,* the agencies advance two nonsensical arguments: first, that Federal Rule of Civil Procedure 56 somehow authorized the agencies to file the Affidavits, and second, that the title of the "Reply" Brief means that the agencies were authorized to reply to the Plaintiffs' arguments with extra-record Affidavits. *See Brief in Opposition* at 3 and 6. As the agencies are well aware, Rule 56 establishes a general litigation rule dealing with materials to be appended to Summary Judgment Briefs as extra evidence to be considered by a Court. In this case, this Court has decreed that the Administrative Record itself constitutes the sole body of evidence. As such, the general language of Rule 56 simply does not apply.

As for the agencies' argument that a "Reply" brief must, indeed, reply to the Plaintiffs' arguments, such a nonsensical argument barely deserves a response. Again, because this Court earlier decreed that the sole body of evidence in this case consisted of

the Record, the agencies' *Reply* is limited to the use of materials found within that Record.

Further in the agencies' *Brief*, the agencies cite to several cases that fail to support their attempt to force extra-record documents into the Administrative Record. Indeed, the cases cited by the agencies actually support the Plaintiffs' contention – that the agencies, knowing that the introduction of extra-record materials had been foreclosed by this Court's October 17, 2001 and March 1, 2002 Orders – circumvented the authority of this Court by attempting to introduce extra-record materials.

Amazingly, the agencies cite to *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) as support for their actions, when that case states the opposite – that Affidavits serving as "post-hoc rationalizations" are only admissible when an Administrative Record is unavailable. In *Overton Park*, the Supreme Court reviewed the FHWA's determination that no "feasible and prudent" alternative existed to building a highway through Overton Park. To support their decision, the highway agency did not produce an Administrative Record, but a series of Affidavits, "prepared specifically for [the] litigation", which argued that the decision made by the agency was supportable. *Id.* at 419. The Court declared that the Affidavits were "merely 'post-hoc' rationalizations" and thus, not a proper basis for any type of judicial review. *Id.* Accordingly, the Court remanded the case to the District Court for a review "based on the full administrative record that was before the Secretary at the time he made his decision." *Id.* at 420. The Court then declared that the initial attempt by the agency to explain their decision solely with Affidavits might require the District Court to specifically *request* additional information from the agencies, because a formal Record was seemingly unavailable. *Id.*

Here, the agencies themselves have compiled a voluminous Administrative Record (of over fourteen years' worth of materials) that purports to support the agencies' decision to build an interstate interchange. Following the Plaintiffs' *Motion to Supplement the Administrative Record* with over forty (40) documents initially removed by the agency from the Record – and this Court's Order that the agencies add those documents to the Record – the Administrative Record became complete. This is not a case, therefore – as in *Overton Park* – in which no Administrative Record was produced for the Court's review, nor is it a case in which this Court has specifically *requested* that the agencies provide the Court with additional materials.

The agencies cite to several other cases, which hold that the Administrative Record may be supplemented with extra-record Affidavits, but only if the District Court finds that the bareness of the Record itself "frustrates effective judicial review", and only if the Court *asks* the agencies to provide "additional explanation of the reasons for the agency decision." *Sierra Club v. Marsh*, 976 F.2d 763, 772 (1st Cir. 1992); *Animal Defense Council v. Hodel*. 840 F.2d 1432, 1436 (9th Cir. 1988). Those cases are inapplicable because this Court has never *requested* that the agencies provide the Court with any extra-record materials to explain deficiencies in the Record, and because the comprehensive scope of the Record is – beyond doubt - sufficient for the exercise of effective judicial review.

Indeed, the proper method to deal with supplementation of the Record with Affidavits would have been for the agencies to request that this Court authorize them to supplement the Administrative Record. The agencies refused to make such a request, even with ample opportunity to do so. Another proper method to address the agencies'

4

attempts to force extra-record Affidavits into these proceedings would have been for the agencies to raise that issue during the Plaintiffs' attempts to expand the Record. The agencies refused to make such a request.

Instead of proceeding to dispose of this procedural issue early in the proceedings, the agencies chose to attempt to slide these Affidavits into the Record in a *Reply* Brief, in knowing and willful disregard of this Court's orders, and in contravention of all judicial authority dealing with the supplementation of the Administrative Record with extra-record materials. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *Don't Ruin Our Park v. Stone*, 749 F. Supp. 1388 (M.D. PA 1990), *aff'd*, 931 F.2d 49 (3rd Cir. 1990); *Dry Color Manufacturers' Ass'n v. Dep't of Labor*, 486 F.2d 98 (3rd Cir. 1973); *Society Hill Towers Owners' Ass'n v. Rendell*, 20 F. Supp. 2d 855, 862-63 (E.D. PA 1999); *William Cronin v. United States Dep't of Agric.*, 919 F.2d 439, 443 (7th Cir. 1990).

As such, the agencies have obstructed this case and caused delay – all in an attempt to salvage their arguments by ignoring this Court's orders and the generally recognized principles of record review cases - at the expense of this Court and the Plaintiffs.

## II. The Agencies Claim that the Affidavit of Jeffery[1] Greene Was Proffered Solely to "Explain Technical Issues" When Mr. Greene's Affidavit Contains Arguments and Rationalizations of the Contents of the Record. As Such, Mr. Greene's Affidavit Must be Stricken from the Agencies' Reply Brief.

Leaving aside the fact that the agencies knowingly, and in willful disregard of this Court's Orders and the recognized role of the Administrative Record in this case, attempted to introduce inadmissible extra-record Affidavits, their claim that Jeffery Greene's Affidavit was introduced solely to "explain technical issues" is wholly unsupported by the text of that Affidavit. *See Agencies' Brief in Opposition to Plaintiffs' Motion to Strike* at 2. Instead of explaining technical issues – such as details of AASHTO guidelines for interstate connector roads, or the meaning of Levels of Service (LOS) designations – the Affidavit proffered by the agencies reads simply as an improper extension of their Brief.

In that Affidavit, Greene attempts to rationalize materials and studies already in the Administrative Record, and attempts to draw conclusions favorable to the agencies that employ his firm for this and other projects. Since the Affidavit was prepared exclusively for this filing, it is not surprising that the agencies use the Affidavit solely in an attempt to bolster the Record to support their claims.

As an example, Mr. Greene makes the statement in his Affidavit that the new design for the interchange – created in 1998 and thus not studied in any environmental documents – is a "minor change to the other alternatives." *See Affidavit of Jeffery Greene* at 3. That statement has been introduced by the agencies for no other conceivable reason than to attempt to support the agencies' arguments that "Alternative D-Modified" was

---

[1] Whereas Mr. Greene's name is stated as "Jeffery" Greene in his Affidavit, Mr. Greene's resume lists him as "Jeffrey" Greene. For purposes of this Brief, the Plaintiffs have used "Jeffery" Greene.

simply a "modification" of the originally designed "Alternative D", and that environmental studies prepared for the discarded alternatives therefore satisfy federal law with respect to the newly designed and relocated interchange. That, in turn, leads to the agencies' argument that a Supplemental Environmental Impact Statement (SEIS) was not legally required for the new interchange that now involves the construction of the interchange 1400' further south, the demolition of the existing Walker Road overpass, the feeding of traffic directly onto Franklin Farm Lane and other inadequate Township roads, and the quadrupling of the cost of the interchange. *See Plaintiffs' Answer in Opposition to Joint Motion for Summary Judgment* at 21-22.

With all due respect to Mr. Greene, that legal conclusion – whether the new interchange required the preparation of an SEIS - is a determination for this Court to make, not for agency consultants preparing Affidavits expressly for this litigation in the form of post-hoc rationalizations of studies and materials already in the Record.

Other examples of this type of rationalization and argument made by Mr. Greene abound in his Affidavit. Indeed, the text of his Affidavit supports the generally recognized principle that inquiry into the mental processes of decisionmakers should never be allowed in a case based entirely upon the Administrative Record. *See Overton Park* at 420 (*citing United States v. Morgan*, 313 U.S. 409 (1941)).

Other examples include Mr. Greene's statement that "no regional or local traffic patterns are impacted by the 'modification.'" *See* Affidavit of Mr. Greene at 3 (emphasis added). In another statement, Mr. Greene argues that his failure to re-run a traffic model was "reasonable" and that "no further traffic projection work" was necessary. *Id.* at 3-4. While these statements are clearly not in accordance with the facts, which show that the

newly designed interchange will feed traffic directly from, and to, Franklin Farm Lane – while the original design did not – and that the only origin/destination traffic studies were performed in 1989, the conclusion of whether the work of the agencies complied with the law is a determination for this Court to make from the Record. Indeed, the Record is replete with studies, communications from the consultants, and Memoranda prepared *exclusively* for the Administrative Record. *See, e.g.,* AR-122 at 2918; AR-132 at 388. As such, the Record provides a full history of the interchange, the agencies have had multiple opportunities to build their Record, and the Affidavit proffered by the agencies and Mr. Greene serves no other role than to attempt to prejudice this Court with Mr. Greene's defense of his own actions.

Finally, many of the specific issues addressed by Mr. Greene have already been the subject of comments submitted by public and private reviewers during the course of the project. Under the National Environmental Policy Act (NEPA), the agencies were legally required to fully respond to each of those comments. Under 40 CFR §1503.4, agencies are required to "assess and consider comments" and either make corrections or alterations to their analysis or "explain why the comments do not warrant further agency response, citing the sources, authorities, or reasons which support the agency's position." *See* 40 CFR §1503.4(a)(1-5).

Volume 78 of the Administrative Record, prepared in December of 1998, contains responses by the agencies to comments on the Final Environmental Impact Statement submitted by public and private reviewers. Lengthy agency responses to all of the issues contained in Mr. Greene's Affidavit are contained within those responses. *See* AR-78 at 4, 83-85, 87, 91, 177, 179, 187, 240-246, 248, and 250. Indeed, the agencies have

addressed by the agencies "solely by reference to the record." *See Agencies' Brief in Opposition to Motion to Strike* at 2.

### III. The Agencies' Purchase of Farmland from a Franklin County Farming Couple Was First Raised by the Agencies in Their Motion for Summary Judgment. In Response, the Plaintiffs Explained that the Agencies' Removal of that Land from Farming - and Use of That Land for Highway Purposes - Constituted an Impact Not Disclosed or Examined by the Agencies.

To support their attachment of an extra-record Deed Agreement to their *Reply Brief*, the agencies contend that the Plaintiffs *first* raised the issue of the agencies' forced purchase of farmland in the Walker Road area. *See Agencies' Brief in Opposition to Plaintiffs' Motion to Strike* at 4. The agencies are simply incorrect.

As a matter of record, it was the agencies that first raised the transaction in their Summary Judgment Brief filed on June 6, 2002. *See Agencies' Brief in Support of Joint Motion for Summary Judgment* at 28 ("PennDOT has amicably acquired the farmland required for the project."). Ostensibly, the agencies raised the issue to argue that the ALCAB (Agricultural Lands Condemnation Approval Board) proceedings were now moot, because the farmland had been purchased by the agencies. Regardless, it was the agencies that first broached the subject of the land transfer, and now, when the land transfer has been raised by the Plaintiffs as an additional impact, the agencies are attempting to limit their earlier statements.

In addition to that error, the agencies mischaracterize the Plaintiffs' arguments. The Plaintiffs have solely argued that the farmland would not have been transferred from a Franklin County farming couple to the highway agencies *but for* the plans to construct

this interchange. *See Plaintiffs' Answer in Opposition to Joint Motion for Summary Judgment* at 30. Specifically, the Plaintiffs argued that a Supplemental Environmental Impact Statement (SEIS) was necessary because the agencies were forced to purchase an additional twenty-two (22) acres of active farmland as a result of the interchange, and that impact was not reflected in any environmental studies released by the agencies. That additional acreage, added to existing acreage, means that the project will now impact over thirty-two (32) acres – the largest impact of any Alternative location or design examined for this interchange over the past fourteen years.

The agencies refused to recognize or examine this additional impact, even though the agencies signed a Settlement Stipulation with the owners of the farmland – contractually binding the agencies to purchase the entire twenty-two (22) acre parcel of farmland - in return for the agreement by the farming couple not to appeal the decision issued by the ALCAB. That Settlement Stipulation was signed on May 23, 2001, over a month prior to the agencies' issuance of their "Re-evaluation of the ROD." (AR-83). Yet, that "Re-evaluation" failed to disclose or examine this impact, even though the document included a table of Agricultural impacts. (AR-83 at 3).

In many ways, the agencies' production of the Deed Agreement for the farmland supports the Plaintiffs' claims. First, the Deed proves that twenty-two (22) acres of farmland were purchased, and second, that the land is no longer used for farming. The farmland, in addition to being removed from active row crop production, can now be used by the agencies for any "transportation and highway purposes" and the land is not dedicated to agricultural use. The actual language of the Deed severely undercuts the agencies' contention that land "not directly impacted by the project could be used only as